IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 20-30968** |
| **Watson Valve Services, Inc.,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

### DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF MACCO RESTRUCTURING GROUP LLC AS FINANCIAL ADVISOR FOR THE DEBTOR

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:**

Watson Valve Services, Inc. ("**WVS**"), Debtor and Debtor-In-Possession in the above-styled case ("**Debtor**") files this application ("**Application**") for the entry of an order, under Sections 327(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 ("**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of bankruptcy Procedure ("**Bankruptcy Rules**") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of

Texas ("**Local Rules**"), authorizing the employment and retention of MACCO Restructuring Group LLC ("**MACCO**") as financial advisor to the Debtor effective as of the Petition Date (as defined below). In support of this Application, the Debtor relies on the Declaration of Drew McManigle ("**McManigle**") in Support of Debtor's Application to Employ ("**McManigle Declaration**"), attached as **Exhibit A**. In further support of this Application, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's case in this district is proper pursuant to 28 U.S.C. § 1408. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). This Court has the constitutional authority to enter a final order on this application, and if not, the Debtor consents to entry of a final order.

## BACKGROUND FACTS

2.  On February 6, 2020 ("**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**"). On that same date, Watson Grinding & Manufacturing Co. ("**Watson Grinding**") also filed a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case.

3.  On February 10, 2020, the January 24 Claimants Committee ("**Committee**") was appointed by the Office of the United States Trustee ("**United States**

Trustee") in the Watson Grinding bankruptcy case, Case No. 20-30967, pending in this Court.

4. Watson Valve is a relatively young company. It was founded in 2002 to meet the growing needs of the severe service valve industry. Watson Valve has grown exponentially since its inception and serves its clients throughout the world. Watson Valve is headquartered in Houston, Texas. Watson Valve specializes in supplying specialty and custom valves for the severe service ball value market, with a specialty in valves for autoclaves used to mine gold.

5. Watson Valve is owned in the following percentages:

> John Watson 70%
> Robert White 15%
> Jason White 15%

6. John Watson is the Chief Executive Officer of the Debtor and continues to serve in that capacity. Robert White is the Chief Operating Officer of the Debtor and continues to serve in that capacity. Jason White is the Executive Vice President of the Debtor and continues to serve in that capacity. John Watson, Robert White, and Jason White are employees of the Debtor and serve on the Debtor's board of directors.

7. Watson Valve's assets primarily consist of receivables, raw materials/inventory, intellectual property, and insurance proceeds stemming from a tragic explosion at Watson Grinding's thermal coating facility.

8. Additional factual background information regarding the Debtor, including its business operations, and the events leading up to this Chapter 11 filing is set forth in

detail in the Declaration of Robert L. White in Support of Chapter 11 Petition and First Day Motions.

### RELIEF REQUESTED

9. The Debtor seeks entry of an order authorizing it to employ and retain MACCO as financial advisor McManigle as chief restructuring officer during this chapter 11 case, pursuant to and in accordance with the terms and conditions set forth in the engagement agreement, a copy of which is attached as **Exhibit B**. On or about March 6th, 2020 McManigle was asked to serve as CRO for the Debtor, a role he immediately undertook. On or about March 14th, it was determined the services of a CRO were not required by the Debtor and McManigle's service in that role was concluded on March 15, 2020.

### SCOPE OF SERVICES AND QUALIFICATIONS

10. The Debtor has determined, in the exercise of its business judgment, that the size of its business operations and the complexity of the financial difficulties caused by the January 24 explosion and its interruption on the Debtor's business operations, require them to employ a financial advisor with knowledge of the Debtor's industry and business and experience with the chapter 11 process, to advise them with respect to the Debtor's reorganization efforts. The Debtor further believes that MACCO is well-qualified to provide its services to the Debtor on a cost-effective, efficient and timely basis. MACCO will coordinate with the other retained professionals in this chapter 11 case to eliminate unnecessary duplication or overlap of work. Retaining such an advisor

will enable the Debtor to carry out its duties in this chapter 11 case and maximize the value of its estate for the benefit of all stakeholders.

11. McManigle is the Founder and Managing Director of MACCO, a financial advisory services company providing interim-leadership, financial advisory, operational improvement and fiduciary services to middle market companies, which was established in July 2019. McManigle has been a professional in the restructuring industry for more than 25 years serving in roles officer, interim CEO, operating chapter 11 trustee, assignee and receiver (domestically and internationally) where he provided interim management, leadership and advice to companies in a wide variety of industries that include oil and gas, healthcare, pharma & food manufacturing, defense contracting, consumer products and hospitality, among others.  McManigle also has led and supervised complex litigation at the federal, bankruptcy and state levels, including complex worldwide litigation.

12. MACCO specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. MACCO's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including development or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages. MACCO's employees have substantial experience in business restructuring and chapter 11 bankruptcy.

13. Since the Petition Date, McManigle and MACCO have become familiar with the Debtor's businesses, financial affairs, and capital structure. They have worked closely with the Debtor's management and other professionals in assisting with the myriad requirements of this chapter 11 case. Accordingly, the Debtor believes that McManigle and MACCO have developed significant relevant experience and expertise regarding the Debtor and the unique circumstances caused by the tragic January 24 explosion at the Debtor's facility. For these reasons, MACCO is well qualified to deal effectively and efficiently with matters that may arise in the context of this case.

14. Based on the foregoing, the Debtor seeks to employ MACCO as financial advisor effective as of the Petition Date and McManigle as Chief Restructuring Officer (for the period of March 6 to March 15, 2020). The Debtor anticipates that this employment will make the Debtor's respective operations more streamlined and effective and assist in its efforts to reorganize. The efforts are critical to the Debtor's success in this case.

15. As more fully described in the engagement agreement, among other things, MACCO will provide financial advisory services and management assistance to the Debtor, develop a strategy for the Debtor's reorganization, if feasible, and consult with the Debtor's bankruptcy counsel, advisors, creditors and the January 24 Claimants Committee regarding this chapter 11 case. Specifically, MACCO will provide such support services as appropriate and feasible in order to manage and advise the Debtor in the course of this chapter 11 case. These services include:

a. Provide business and debt restructuring advice, including business strategy among key elements of the Debtor's business, as necessary;

b. Assist or prepare a weekly 13-week cash flow forecast and related financial and business models that can be utilized by management, among others, to understand the Debtor's liquidity;

c. Review the inventory and other assets to determine its salability and monetization;

d. Assist in making operational decisions, including those which will or potentially will, affect operations, contracting, accounting, staffing, collection of accounts, cash and cash disbursements, and all similar business undertakings;

e. Assist in or implement cost containment procedures;

f. Direct, supervise, hire and terminate the Company's employees, consultants and professionals (subject to applicable law and contractual obligations of the Debtor);

g. Assist in managing and controlling cash, cash outflows and financing commitments that expend cash;

h. Upon authorization, canceling, committing to, or renegotiating all contracts;

i. Assist in asset redeployment opportunities as deemed appropriate;

j. Assist with negotiating with the Debtor's creditors, the January 24 Claimants Committee, and all other parties-in-interest;

k. Assist in the preparation of a cash collateral budget to be presented to the bankruptcy court; and

l. Evaluate and make recommendations in connection with strategic alternatives as needed to maximize the value of the Debtor's estate.

16. The Debtor believes that the services will not duplicate the services that other professionals will be provided the Debtor in this chapter 11 case. Specifically, MACCO will carry out unique functions and will use reasonable efforts to coordinate

with the Debtor and other professionals retained in this case to avoid the duplication of services.

## PROFESSIONAL COMPENSATION

17. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis. *See* 11 U.S.C. § 328(a).

18. The Debtor, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, and any applicable orders in this case, and subject to approval via final fee application, proposes to employ MACCO as of the Petition Date and McManigle for the period between March 6 and March 15, 2020. MACCO has agreed to not take a retainer in this case. As of the Petition Date, MACCO did not hold a claim against the Debtor. The compensation to be paid to McManigle shall be in accordance with normal billing practices for services rendered and out-of-pocket expenses incurred on the Debtor's behalf. McManigle's hourly rate will be $550.00 per hour. MACCO has agreed to cap McManigle's fees as CRO at $30,000/month. McManigle will be assisted by other MACCO personnel whose hourly rates are below:

| Employee Classification | Hourly Rate |
| --- | --- |
| Engagement Principal | $550/hr. |
| Managing Director | $350/hr. to $475/hr. |
| Director | $250/hr. to $375/hr. |
| Senior Associates | $150/hr. to $300/hr |

19. As a material part of the consideration for which McManigle and MACCO have agreed to provide the services to the Debtor, the Debtor and MACCO have agreed that MACCO's services are subject to indemnification up to the amount of earned fees by MACCO in this bankruptcy case.

20. MACCO and McManigle understand that allowance of fees and expenses is subject to this Court's approval.

### DISINTERESTEDNESS

21. To the best of the Debtor's knowledge and as disclosed in the McManigle Declaration, MACCO and McManigle do not hold or represent an interest adverse to the Debtor or the Debtor's estate with respect to this bankruptcy case.

22. MACCO will continue to conduct periodic analyses to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, MACCO will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

23. To the best of the Debtor's knowledge, and except as otherwise set forth in this Application and the accompanying McManigle Declaration, the directors and associates of MACCO (a) do not have any connection with the Debtor, any affiliates, their creditors, any other party in interest, the United States Trustee or any person employed in the office of the same, or any judge in the United States Bankruptcy Court for the Southern District of Texas or any person employed in the offices of the same; (b) are "disinterested persons," as that term is defined in the Bankruptcy Code Section

101(14), as modified by Bankruptcy Code Section 1107(b); and (c) do not hold or represent any interest adverse to the Debtor's estate.

24. The Debtor understands that MACCO will continue to conduct periodic conflicts analyses to determine whether they are performing or have performed services for any significant parties in interest in this chapter 11 case and will promptly update the McManigle Declaration to disclose any material developments regarding the Debtor or any other pertinent relationship that comes to MACCO and McManigle's attention.

25. The Debtor submits that the engagement and retention of MACCO and McManigle on the terms and conditions set forth herein is necessary and in the best interest of the Debtor, its estate, and its creditors and should be approved.

26. The Debtor seeks retention and employment of MACCO as its financial advisor and McManigle as CRO (for the period between March 6 and March 15, 2020) pursuant to Section 327(a) of the Bankruptcy Code, which provides that a debtor may employ (for a special specified purpose) an attorney that has represented the Debtor.

27. Likewise, Rule 2014(a) requires that an application for retention include facts showing the necessity of employment, the name of the firm to be employed, the reasons for selection, the professional services to be rendered, any proposed arrangement for compensation, and any connections with the debtor, creditors, any party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

28. Generally, McManigle and MACCO have connections through the Turnaround Management Association, and the American Bankruptcy Institute among

other professional organizations including continuing education courses, professional conferences and/or social media through which they may have connections to the Office of the United States Trustee, judges, court staff, and other practitioners who may appear in this case. However, no such connection is known that would give rise to any conflict, potential conflict, or disinterestedness concern.

29. In addition, McManigle and MACCO have identified the following specific connection: Eric Moll, a MACCO Financial Analyst, while in school had an internship at Texas Capital Bank, was aware of and had visited Watson Grinding & met principals with loan officer.

30. The Debtor submits that the retention and employment of McManigle and MACCO under the terms described in this application are appropriate under sections 327(a), 328 and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers a trustee, with the Court's approval, to employee professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons to r, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as: (a) someone that is not a creditor, equity security holder or insider; (b) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

31. The Debtor believes that for all of the reasons stated in this Application and the McManigle Declaration, the employment of MACCO and McManigle is appropriate. Furthermore, as stated in the McManigle Declaration, MACCO (as well as McManigle) is a "disinterested person" within the meaning of section 101(14) and does not hold or represent an interest adverse to the Debtor. Accordingly, the Debtor requests that this Application be approved.

## NOTICE

32. Notice of this application will be provided to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the holders of the 20 largest unsecured claims against the Debtor; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the Southern District of Texas; (v) any other party entitled to notice pursuant to Bankruptcy Rule 2002; (vi) any other party entitled to notice pursuant to Local Rule 9013-1(d); (vii) Husch Blackwell as counsel for Texas Capital Bank; (viii) counsel for state court litigation claimants; (ix) all parties requesting notice in these cases; and (x) the attorney general for the State of Texas; (xi) counsel for the January 24 Claimants Committee in the Watson Grinding case (collectively, with the parties listed in the preceding paragraph, "**Notice Parties**"); and (xii) any known counsel for any entities listed above; and (xii) all those listed on the Master Service List in this case.

WHEREFORE, the Debtor respectfully requests that this Court grant the relief sought by this Application, approve the engagement of MACCO Restructuring Group LLC as financial advisor and Drew McManigle as CRO, and grant such other further relief as is just and proper.

Dated: March 17, 2020

          Respectfully submitted,

          WATSON VALVE SERVICES, INC.

          By: /s/ John Watson
              John Watson,
              President and Chief Executive Officer

          MCDOWELL HETHERINGTON LLP

          By:  /s/ Jarrod B. Martin

          Jarrod B. Martin
          Texas Bar No. 24070221
          1001 Fannin Street
          Suite 2700
          Houston, TX 77002
          P: 713-337-5580
          F: 713-337-8850
          E: Jarrod.Martin@mhllp.com

## **CERTIFICATE OF SERVICE**

I certify that on March 17, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas and upon the entries listed below via United States regular mail, first class postage prepaid by no later than the next business day pursuant to the local rules.

**U.S. Trustee**
United States Trustee
515 Rusk Street, Room 3516
Houston, Texas 77002

/s/ Jarrod B. Martin
Jarrod B. Martin