# Exhibit B



February 25, 2020

Mr. John Watson, President
Watson Valve Services, Inc
4525 Gessner Rd
Houston, TX 77041

      **Re: Engagement of Financial Advisor**

Dear Mr. Watson:

This letter will confirm and set forth the terms of the engagement of MACCO Restructuring Group, LLC, A Delaware Limited Liability Corporation ("MACCO") to act as Financial Advisors ("FA") to Watson Valve Services, Inc. (as defined in the "Agreement" referenced below, and collectively referred to as the "Company" or "Watson Valve"), to advise in its restructuring efforts and provide financial advisory services through its chapter 11 bankruptcy reorganization proceeding.

Drew McManigle, Founder and Managing Director of MACCO ("McManigle") will serves as the engagement leader. MACCO will provide other professionals, as reasonably needed or requested, to provide financial advisory services necessary to support the administration of the debtor's estate and to assist it in its reorganization efforts.

**I. Scope of Engagement**

We understand that the principal purpose is to maximize the value of assets while maintaining stable operations in tandem with structured negotiations with secured and unsecured creditors to assure Watson Valves' viability for all creditor and shareholder constituencies.

Through the debt restructuring and chapter 11 reorganization process, MACCO professionals will provide Watson Valve's management and personnel with financial advice, accounting and related business restructuring advisory services necessary to accomplish the reorganization goals of the debtor-in-possession. These services may include the following:

1. Provide business, debt restructuring and financial advice, including business strategy among other key elements of the business;
2. Assist or prepare a weekly 13-week cash flow forecast and related financial and business models that can be utilized by management and the Board, among others to understand Company liquidity;
3. Preparation of the Statement of Financial Affairs and Schedules, Monthly Operating Reports and similar chapter 11 administrative, financial and accounting reports;
4. If requested by Company, review inventory to determine its salability and to provide monetization alternatives;
5. As requested by Watson Valve's management, suggest redeployment of assets as

        deemed appropriate;

6. In concert with Watson Valve's management, suggest operational decisions, including those which will or potentially will, affect operations, contracting, accounting, collection of accounts, cash and cash disbursements, and all similar business undertakings;
7. Evaluate and make recommendations in connection with strategic alternatives to maximize the value of the Company;
8. As requested by Watson Valve's management, suggest modifications to business decisions or accounting/policy controls, as necessary or required, that may include providing additional professional services; and
9. As requested by Watson Valve's management, provide litigation support services.

The Company recognizes and acknowledges that by performing the consulting services and by acting as financial advisor, MACCO is not serving in any Company operational management capacity. All decisions about the Company's business or operations, including, but not limited to, its decisions as a debtor-in-possession during a Chapter 11 case, concerning the execution of transactions with other entities and/or the establishment of terms for any such transactions, either in or out of a Chapter 11 proceeding, remain the sole responsibility of the Company's management.

**II. Indemnification**

The Company agrees to indemnify, defend, and hold harmless MACCO, McManigle, individually and its affiliates, the respective partners, directors, officers, agents and employees of MACCO and each other person, if any, controlling MACCO or its affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities, or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to MACCO or McManigle, individually while acting for the Company under the Agreement, including, without limitation, in connection with (i) any act or omission by MACCO or McManigle related to their engagement as Financial Advisors under the Agreement or (ii) MACCO or McManigle's acceptance, or his/their performance or non-performance, of his/their obligations under said Agreement. The Company will reimburse the Indemnified Parties for any legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages, or liabilities or any action in respect thereof, whether or not in connection with pending or threatened litigation, and whether or not any Indemnified Party is a party thereto; provided, however, that the Company shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found to have resulted primarily from MACCO'S's, or McManigle's gross negligence, bad faith, or willful misconduct in the performance of its duties under Agreement. The Company agrees that reliance by MACCO or McManigle on any publicly available information, the information supplied by the Company to MACCO or McManigle in connection with said Agreement or any directions furnished by the Company shall not constitute gross negligence, bad faith, or willful misconduct by MACCO or McManigle.

The above indemnification shall be capped at earned and approved fees and expenses of MACCO and McManigle. The provisions herein shall survive any termination of said Engagement Agreement.

### III. Materials Provided

The Company agrees to provide MACCO with such financial and other available information as is reasonably required for MACCO to render the services performed or to be performed hereunder. In providing its services hereunder, MACCO shall be entitled to assume and rely upon the accuracy and completeness of the financial and other information supplied to or otherwise used by it and shall not be obligated to attempt to independently verify, or undertake any obligation to verify, such information; provided that MACCO acknowledges that the Company makes no express or implied representation or warranty as to the accuracy or completeness of the financial and other information supplied, and MACCO agrees that the Company will have no liability relating to the financial and other information supplied or for any errors therein or omissions therefrom. In addition, except as otherwise specifically agreed to in writing signed by the Company, MACCO shall be entitled to assume and shall not be obligated to attempt independently to verify, or undertake any obligation to verify, that forecasts and projections supplied to it by the Company, represent the best current judgments of such parties, and shall be entitled to assume that such forecasts and projections have been reasonably prepared based on such current judgment. The Company will promptly notify MACCO if the Company learns of any material inaccuracy or misstatement in, or material omission from, any information delivered to MACCO.

### Work Product

Any records of the Company obtained by MACCO will be promptly returned to the Company at the end of this engagement and will be kept strictly confidential by MACCO while in its custody, control, or possession, unless subpoenaed by a court of competent jurisdiction.

### IV. Disclosures

The Company shall not disclose any work or analyses of MACCO to any third party without their prior written consent, which shall not be unreasonably withheld, except as required under applicable law. Neither shall MACCO disclose any information respecting the business, properties, books and records of the Company except to professionals hired by the Company for purposes of this engagement, unless subpoenaed by a court of competent jurisdiction.

### Disclosure of Relationships

MACCO is engaged by new clients every day. Therefore, we cannot assure that, following the completion of our internal conflict search, an engagement for or involving your creditors or other parties-in-interest or their respective attorneys and accountants will not be accepted by MACCO or its affiliates. Should any potential conflict come to the attention of MACCO, we will endeavor to resolve such potential conflict and will determine what action needs to be taken. You agree that you will inform us of the parties-in-interest to this matter or of additions to, or name changes for, those parties-in-interest whose names you provided.

MACCO may have provided professional services to, may currently provide professional services to, or may in the future provide such services to, the Client's creditors, other parties-in-interest, and their respective attorneys and accountants in matters or engagements unrelated to this engagement. You agree that MACCO and its personnel will have no responsibility to you relating to such professional services, nor any responsibility to use or disclose information MACCO possesses by reason of such services, whether such information might be considered material to you.

**Conflicts**

MACCO has performed an internal search for any conflict of interest with respect to the Company, its officers, directors, creditors and other parties and has found no conflicts of interests.

**V. Term & Termination**

This agreement shall remain in effect until the earlier of (i) termination of the engagement by either party upon thirty (30) days written notice or (ii) confirmation of a plan of reorganization or similar transaction in a Chapter 11 case.

MACCO may terminate this agreement, without notice, if the Company fails to make payments when due hereunder.

**VI. Compensation**

MACCO shall be compensated for its work at the following rates:

| | |
|---|---|
| Drew McManigle (Engagement Leader) | $550/hr. |
| Managing Directors: | $475/hr. - $550/hr. |
| Directors: | $350/hr. - $500/hr. |
| Senior Financial Analysts: | $350/hr. - $475/hr. |
| Financial Analysts: | $175/hr. – $350/hr. |
| Administrative Staff: | $100/hr. - $200/hr. |

The Company shall be responsible for MACCO's reasonable and necessary out-of-pocket costs and expenses incurred by MACCO in connection with this engagement. MACCO will provide the Company with detailed documentation concerning expense reimbursements.

MACCO acknowledges that, under title 11 of the United States Code (the "Bankruptcy Code"), that it's employment, including payment of its fees and expenses, are subject to Bankruptcy Court approval. The provisions of this paragraph shall not limit or restrict the indemnification and contribution provisions set forth in Section II above.

Detailed invoices reflecting the services of MACCO shall be prepared and submitted to the Company monthly and paid pursuant to Bankruptcy Court orders allowing interim professional fee and expense awards or interim and final fee applications. The Company agrees to pay MACCO promptly upon (i) notice of allowance of each interim fee and expense request or (ii) entry of appropriate orders of the Bankruptcy Court approving interim and final fee applications. Each payment is to be made via wire transfer to the following account:

Name: MACCO Restructuring Group, LLC
Bank: Capital One Bank (USA) N.A.
Account Number: 3027089224
Routing/ABA: 111901014

We must receive an executed copy of this letter before the firm will take any action or be deemed to represent you.

## VII. Amendment and Modification

This letter may not be amended or modified except in a writing signed by the parties hereto and shall be governed by and construed in accordance with the State laws of Delaware.

## VIII. Headings

The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement or the scope of the Engagement.

## IX. Authorization

The Company represents that this Engagement has been approved by resolution of the Company's duly elected board of directors, and that the individual that signs this Engagement Agreement on behalf of the Company, has been duly authorized to do so by the Company's Board of Directors.

It is acknowledged that future economic, operational performance or the confirmation success of a chapter 11 plan of reorganization cannot be guaranteed. The monthly fees and related expenses to be paid by the Company to MACCO are not contingent upon the results of this engagement and MACCO does not warrant or predict results or developments during the term of this engagement.

If you agree to the terms and conditions set forth above, please indicate your acceptance and approval by signing this letter in the space provided below and return it to us at your earliest convenience.

Thank you! We look forward to working with Watson Valve Services, Inc. on this important matter.

[the remainder of this page is left intentionally blank]

**MACCO Restructuring Group, LLC**

Sincerely,

M. Drew McManigle
Founder and Managing Director

I have read the foregoing and agree to its terms and provisions:

_____     2/25/2020
John Watson, President              Date
Watson Valve Services, Inc.

6