## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 20-30968** |
| **Watson Valve Services, Inc.** | § | **Chapter 11** |
| | § | |
| Debtor. | § | **Emergency Relief Requested** |

## DEBTOR'S EMERGENCY MOTION TO ESTABLISH
## BID PROCEDURES AND DEADLINES

Pursuant to Local Rule 9013:

> THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF
> YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE
> MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING
> PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO
> THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN
> 21 DAYS OF THIS BEING SERVED ON YOU. YOUR RESPONSE MUST STATE
> WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A
> TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER
> NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN
> AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES
> AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
> HEARING AND MAY DECIDE THE MOTION AT HEARING.
>
> REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.
>
> EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE
> MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21
> DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU
> BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED,
> YOU SHOULD FILE AN IMMEDIATE RESPONSE.

**To the Honorable Marvin Isgur, United States Bankruptcy Judge:**

Watson Valve Services, Inc. ("**Debtor**") files this Emergency Motion to Establish

Bid Procedures and Deadlines ("**Motion**"), and respectfully represents the following:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This Court has constitutional authority to enter a final order regarding this matter because the sale of assets of a chapter 11 estate has no equivalent in state law, thereby rendering the Supreme Court's opinion in Stern v. Marshall inapplicable to the matter at hand.

## SUMMARY OF RELIEF REQUESTED

2.      On May 27, 2020, the Debtor filed a motion to sell substantially all of its assets to Mogas Industries, Inc. [Doc. No. 183]. The Court denied this motion and asked that the Office of the United States Trustee to investigate whether a chapter 11 trustee should be appointed based upon the conduct of the Debtor's CEO and majority shareholder, John Watson. Despite this key event in the Debtor's case, the bidders requested that a sale go forward with no bid protections. **The Debtor files this motion with the support of the January 24 Claimants Committee**.

## BACKGROUND

### A. The January 24 Explosion and The Bankruptcy Case

3.      On February 6, 2020 ("**Petition Date**"), the Debtor filed its voluntary petition under chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**").  The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     In the early morning hours of January 24, 2020, a tragic explosion occurred at the facility operated by Watson Grinding & Manufacturing Co. ("**Watson Grinding**"). Watson Grinding filed for chapter 11 protection on the same date as the Debtor. From the Debtor's perspective, it is a victim of the same explosion that has harmed so many small businesses and individuals within the community.  From January 24 through the end of March, the Debtor's operations ground to a halt.  Since that time, the Debtor obtained authority from the Court to conduct limited operations to preserve the value of the Debtor's assets,[1] to mitigate liability arising from non-performance of customer obligations to the extent possible.  Further, the Debtor and its representatives have been responsive to the various agencies as they conducted on-going investigations. The Debtor has also worked to process pending insurance claims and collected accounts receivable.

5.     The Debtor and its professionals have worked tirelessly to try and save the business. However, the disruption to the Debtor's business has created an impossible scenario for long-term viability. The Debtor will therefore pursue a plan of liquidation. This plan will center around three key components: (1) insurance proceeds from the Debtor's insurance towers; (2) pursuit of litigation, including causes of action the Debtor holds against those responsible for the explosion; and (3) proceeds from the liquidation of assets.

---

[1] This authority included the use of cash collateral and the authority to operate outside of the ordinary course of business.

**B. The Debtor's Business**

6.     Watson Valve is a relatively young company. It was founded in 2002 to meet the growing needs of the severe service valve industry.  Watson Valve has grown exponentially since its inception and serves its clients throughout the world.  Watson Valve is headquartered in Houston, Texas.  Watson Valve specializes in supplying specialty and custom valves for the severe service ball value market, with a specialty in valves for autoclaves used to mine gold. Its business is relatively insulated from the recent disruption in the oil and gas industry.

7.     Watson Valve is owned in the following percentages:

- John Watson 70%

- Robert White 15%

- Jason White 15%

8.     The Debtor has consented to the appointment of a chapter 11 trustee.

9.     Watson Valve's assets primarily consist of receivables, raw materials/inventory, intellectual property, and the going concern value of its ongoing business operations.

**C. The Mogas Offer**

10.     The Debtor received an offer to purchase the Debtor's assets from Mogas Industries. ("**Mogas**"), subject to the Court's approval and the establishment of bidding procedures.  The Debtor executed a Letter of Intent on the evening of May 13, 2020 ("**LOI**").

11.     Mogas had offered to purchase certain of the Debtor's assets for $2 million, subject to certain contingencies. That offer has been withdrawn.

### D. The JB Valve Offer

12.     After the Debtor accepted the Mogas LOI, the Debtor received a competing offer on the following Friday afternoon, May 15, 2020.  The Debtor received a draft Asset Purchase Agreement ("**APA**") from JB Valve, LLC ("**JB Valve**"), signed by its President, Robert White.  The Debtor also became aware that Jason White, also an officer of the Debtor, was also a member of JB Valve. Shortly after receiving this competing offer, the Debtor relieved Robert White and Jason White of their responsibilities relating to the Debtor.

13.     The JB Valve offer contains a similar price structure ($2 million), but there are other key differences between the offers.  The JB Valve offer contains fewer conditions to closing.  The JB Valve offer also contains fewer events that could result in a purchase price reduction.   Both offers contain bid protections, including breakup fees and expense reimbursements.  The Debtor does not propose to offer either party bid protections.

14.     The APA requires a closing no later than June 1, 2020. This cannot be effectuated.

15.     Given the short time frame both parties require to close, and the competing offers, the Debtor believes it is in the best interest of the estate to pursue an expedited auction. The Debtor's investment bankers have engaged in a thorough marketing process, and do not believe additional value can be extracted for the estate by otherwise delaying the sales process.

## RELIEF REQUESTED

16.     Subject to the Court's approval, the Debtor seeks entry of any order setting bid procedures and deadlines for potential bidders to submit offers. Because of the nature of

the assets to be purchased and the offers to date, the Debtor does not believe a form asset purchase agreement should be approved as part of the procedures. However, the Debtor would require that any offer contain certain minimum information in order to be considered a qualified bid. Accordingly, the Debtor proposes the following bid procedures:

    a. <u>Marketing</u>. Upon entry of an order establishing bid procedures, the Debtor will seek offers from any and all prospective buyers. At this time, the Debtor knows of two parties/groups who may be interested in participating in the bid process: (1) Mogas; and (2) JB Valve. The Debtor will also serve the bid procedures order on the master service list for this case. Potential bidders have until the Bid Deadline (as defined herein) to conduct any due diligence and submit a qualifying bid.

    b. <u>Initial bid</u>. Any person or entity wishing to participate in the bidding process shall deliver via email to Walter Tomlinson (<u>waltert@statesmanbiz.com)</u> with copy to Jarrod Martin (<u>Jarrod.Martin@mhllp.com)</u> a written offer to purchase any assets of the Debtor no later than June 3, 2020 at 5:00 p.m. prevailing central time. A chapter 11 trustee may be appointed prior to this time. If so, notice should be provided to that trustee and his or her counsel. In order to be a qualified bid, a prospective bidder must provide the following to the Debtor: (1) the name of the acquiring entity. If the acquiring person or entity is an insider within the meaning of Bankruptcy Code §101 (31) or is in any way affiliated with an insider, such disclosure must be made to the Debtor or trustee; (2) the details of the purchase price, including how the transaction will be funded; (3) a specific list of all assets to be acquired; (4) acknowledgement that the Debtor or trustee is not selling the cash on hand or causes of action; (5) the proposed closing date; (6) disclosure of any contingencies to closing, including but not limited to financing or board approval; (7) acknowledgment that due diligence has been conducted; (8) a valid email address to receive notifications regarding the auction process; and (9) acknowledgment that any offer made shall remain open, binding, and irrevocable as to the potential bidder through consummation of the sale to a successful bidder. Any written offer must include sufficient detail and adequate information to the sole and absolute satisfaction of the Debtor, that such bidder has the ability to consummate the transaction or otherwise perform under the terms of any proposal. Offers containing the foregoing information, shall be considered a "**Qualified Bid**." Any person or entity submitting a Qualified Bid shall be a "**Qualified Bidder**."

    c.  <u>Notification to Qualified Bidders</u>: Once a bid is deemed to be a Qualified Bid, the Qualified Bidder will receive notification via email from the Debtor or a trustee, its investment banker, or Debtor's counsel or trustee's counsel that it has submitted a Qualified Bid and may participate in the Auction (as that term is defined herein). The Debtor or its counsel will notify Qualified Bidders no later than June 3, 2020 at 10:00 p.m. that they have submitted a Qualified Bid.

    d.  <u>Live Auction</u>.  The Debtor will conduct a live auction on June 4 2020 at _____:____ ___.m. central standard time ("**Auction**") before the Honorable Marvin Isgur, United States Bankruptcy Judge, United States Federal Courthouse, 515 Rusk Avenue, Houston, Texas 77002, Courtroom 600, 4th Floor.  The following rules shall apply"

        i.  The trustee or Debtor will commence the Auction by announcing the highest and best offer received as of the commencement of the Auction.

        ii.  All Qualified Bidders will have an opportunity to revise their bid to a higher and better bid.

        iii.  The Auction will continue until no additional higher or better bids are received.

        iv.  Subsequent bids must be submitted within 5 minutes of an overbid.

        v.  The Debtor will select the highest and best bid and proceed immediately to a hearing to approve the sale to the "Successful Bidder."

        vi.  Only Qualified Bidders or their counsel may participate in the Auction along with the Debtor, Debtor's counsel, and any representative of the United States Trustee's Office.

    e.  <u>Bid Increments</u>.  To the extent that the bidding involves cash consideration, the minimum bid increments will be $50,000 at the auction.

    f.  <u>Back Up Bidder</u>.  The Debtor or trustee may, but is not required to, select a back-up bidder ("**Back-up Bidder**") to the Successful Bid in the event that the Successful Bidder is unable or unwilling to consummate the sale.

    g.  <u>Initial Bid</u>. The initial bid shall be $2 million.

    h.  <u>Sale Free and Clear</u>.  Subject to Bankruptcy Court approval following the

Auction, the Successful Bidder shall purchase the property AS IS WHEREIS WITH ALL FAULTS free and clear of all liens, claims, and encumbrances pursuant to a sale motion and corresponding order approving the sale. A hearing to approve the sale of the Debtor's assets to the Successful Bidder shall be held on June ___, 2020 at __:___ __.m. prevailing central time immediately after the Auction.

i. <u>No Reimbursement</u>. No bidder shall be entitled to reimbursement of its costs, expenses, or professional fees incurred in connection with the sale and bidding processing, including formulation and submission of any bid or any due diligence efforts. There shall be no breakup fee.

17.     The Debtor formulated bid procedures that it believes will encourage prospective purchasers to invest the time, energy, and resources necessary to submit a qualified bid and that will maximize the proceeds from the sale of the Debtor's assets. Given the specialized nature of the assets and the fact that a closing of any sale is time sensitive, the Debtor believes the proposed bid procedures are in the best interest of the estate to maximize value to the estate. The Debtor believes the proposed procedures are fair, transparent, and designed to achieve the highest and best price for the Debtor's assets in view of the nature of assets to be sold. The Debtor believes based upon reasonable business judgment that the procedures are in the best interests of the estate and should be approved. **These procedures are filed with the support of the January 24 Claimants' Committee.**

18.     Historically, the courts have approved bid procedures similar to those proposed herein under the "business judgment" rule. As stated in *In re Crowthers v. McCall Partners, Inc.*, 14 B.R. 877, 888 (Bankr. S.D.N.Y. 1990), "[T]he court is not to second guess the inclusion of some provisions as long as the Agreement as a whole is within reasonable business judgment, and the subject provisions do not disturb the balance Congress struck in

Chapter 11." *See* also *Official Comm. Of Subordinated Bondholders v. Integrated Resources, Inc.* (*In re Integrated Resources, Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992) (applying business judgment rule to agreement between debtor and initial bidder providing for bidding incentives).

19.    The proposed bid procedures are fair, reasonable, and will assist the Debtor in administering the assets of the estate in a manner that maximizes value to the estate. For the foregoing reasons, the Debtor respectfully requests approval of the bid procedures set forth herein.

BASIS FOR EMERGENCY RELIEF

20.    The Debtor seeks expedited relief because the bidders seek an expedited closing date. The Debtor believes that market interest will dissipate the longer the sales process drags on. These bid procedures are being sought on an expedited basis to maximize value that can be obtained from the sale of the Debtor's assets.

21.    The Debtor requests an auction be held on June 4, 2020.

NOTICE

22.    Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the holders of the 20 largest unsecured claims against the Debtor; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the Southern District of Texas; (v) any other party entitled to notice pursuant to Bankruptcy Rule 2002; (vi) any other party entitled to notice pursuant to Local Rule 9013-1(d); (vii) Husch Blackwell as counsel for Texas Capital Bank; (viii) counsel for state court

litigation claimants; (ix) all parties requesting notice in these cases; and (x) the attorney general for the State of Texas (collectively, with the parties listed in the preceding paragraph, "Notice Parties"); (xi) any known counsel for any entities listed above; and (xii) all those listed on the Master Service List in this case.

## PRAYER

WHEREFORE, the Debtor prays that the Court enter an order establishing bid procedures and deadlines and for such other and further relief as is just and proper.

Dated: May 31, 2020

Respectfully submitted,

MCDOWELL HETHERINGTON LLP

By:  /s/ Jarrod B. Martin
Jarrod B. Martin
Texas Bar No. 24070221
Kate H. Easterling
Texas Bar No. 24053257
Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street
Suite 2700
Houston, TX 77002
P: 713-337-5580
F: 713-337-8850
E: Jarrod.Martin@mhllp.com
E: Kate.Easterling@mhllp.com
E: Avi.Moshenberg@mhllp.com

***COUNSEL FOR DEBTOR***

## CERTIFICATION PURSUANT TO LOCAL RULE 9013-1(i)

I certify that the facts underlying the request for Emergency relief are accurate to the best of my knowledge. The Debtor has conferred with counsel for the January 24 Claimants' Committee and they are not opposed to the relief requested.

/s/ Jarrod B. Martin
Jarrod B. Martin

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 31, 2020 a true and correct copy of the foregoing Motion was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system and via email on Counsel for the State Court Litigation Claimants (as provided below). The undersigned further certifies that the foregoing Notice was served upon all parties listed on the attached Service Lists by no later than the next day after the filing in accordance with Bankruptcy Local Rule 9013-1(f).

Further, in addition to the foregoing the undersigned certifies that on May 31, 2020, a true and correct copy of the following documents were served via email on Counsel for the State Court Litigation Claimants at the email addresses provided below:

lthweatt@terrythweatt.com; jterry@terrythweatt.com; akamins@kamins-law.com; swalker@manuelsolis.com; gfinney@manuelsolis.com; jusolis@manuelsolis.com; Byron@alfredfirm.com; rzehl@zehllaw.com; mgreenberg@zehllaw.com; mmartin@zehllaw.com; gfcdocketefile@mostynlaw.com; filing@mcmillanfirm.com; cam@mcmillanfirm.com; mem@mcmillanfirm.com; tbuzbee@txattorneys.com; cleavitt@txattorneys.com; rpigg@txattorneys.com; maziz@awtxlaw.com; klong@awtxlaw.com; bilaalbadat.law@outlook.com; cameron.tebo@mherringlaw.com; martyherring@hotmail.com; tate@bainlaw.net; Karl@bainlaw.net; banthony@anthony-peterson.com; dpeterson@anthony-peterson.com; Sarah.Utley@cao.hctx.net; Kathy.Porter@pcs.hctx.net; rkwok@kwoklaw.com; rloya@kwoklaw.com; jleal@kwoklaw.com; aboylhart@kwoklaw.com; whoke@whokelaw.com; swalker@manuelsolis.com; gfinney@manuelsolis.com; jusolis@manuelsolis.com; litigation@thehadilawfirm.com; ebdick@gmail.com; banthony@anthony-peterson.com; aanthony@anthony-peterson.com; rbon1@swbell.net; joel.simon@trialattorneytx.com; steve.fernelius@trialattorneytx.com; ryan.perdue@trialattorneytx.com; dpotts@potts-law.com; mbins@potts-law.com; rburnett@rburnettlaw.com; prahgozar@rahgozarlaw.com; lnichols@rahgozarlaw.com; e-service@arnolditkin.com; karnold@arnolditkin.com; jitkin@arnolditkin.com; kfindley@arnolditkin.com; alewis@arnolditkin.com; ksellers@arnolditkin.com; Richard.Kincheloe@usdoj.gov; Abigail.Ryan@oag.texas.gov; jsd@aol.com; hflores@rappandkrock.com; kkrock@rappandkrock.com; Houston_bankruptcy@publicans.com; jason.binford@oag.texas.gov; Abigain.ryan@oag.texas.gov; gene@shraderlaw.com

*/s/ Jarrod B. Martin*
Jarrod B. Martin