# EXHIBIT B

# LOAN AND SECURITY AGREEMENT

**THIS LOAN AND SECURITY AGREEMENT** (including all schedules, exhibits and appendices attached or otherwise identified therewith, as amended, modified or restated from time to time, this "*Agreement*") dated as of **JULY 13, 2018** (the "*Effective Date*"), is between (a) **TEXAS CAPITAL BANK, NATIONAL ASSOCIATION**, a national banking association (together with its successors and assigns, "*Lender*"), (b) **4512 STEFFANI PROPERTY, LLC**, a Texas limited liability company ("*Debtor*"), and (c)(i) **ROBERT WHITE**, an individual residing in the State of Texas ("*R. White*"), and (ii) **JASON M. WHITE**, an individual residing in the State of Texas ("*J. White*," and together with R. White, jointly and severally, "*Guarantor*").

## *RECITALS*

**WHEREAS**, Obligor (a) has determined that Obligor will benefit specifically and materially from the Credit Facility contemplated by this Agreement, and (b) has requested and bargained for the structure, terms and obligations set forth in the Loan Documents.

**WHEREAS**, Lender is willing to make the Credit Facility available upon and subject to the provisions, terms and conditions set forth in the Loan Documents.

**NOW THEREFORE**, the parties hereto, intending to be legally bound, agree as follows:

1.      **Definitions**.  As used in this Agreement, all exhibits, appendices and schedules hereto, and in any other Loan Documents made or delivered pursuant to this Agreement, the following terms will have the meanings given such terms in this Section 1 or in the provisions, sections or recitals herein:

"*Advance*" means any advance under the Credit Facility, which advance shall be part of the Loan.

"*Affiliate*" means, with respect to a specified Person, another Person that directly or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"*Authorizing Entity*" means the board of directors, shareholders, members, managers, trustee, general partner or other Person authorized or empowered to act on behalf of an Obligor pursuant to the Constituent Documents of such Person.

"*Business Day*" means any day other than a Saturday, Sunday or any other day on which the Federal Reserve Bank of Dallas, Texas, is closed.

"*Collateral*" means (a) the Property, all depository accounts now or hereafter held with Lender, and any other property or assets, real or personal, tangible or intangible, now existing or hereafter acquired, of Debtor that may at any time be or become subject to a security interest or lien in favor of Lender as security for the Indebtedness, and (b) all **SUPPORTING OBLIGATIONS, PRODUCTS** and **PROCEEDS** of all of the foregoing (including without limitation, insurance payable by reason of loss or damage to the foregoing property) and any property, assets securities, guaranties or monies of Debtor which may at any time come into the possession of Lender.

"*Compliance Certificate*" means a certificate, substantially in the form of Exhibit A, prepared by and certified by a Responsible Officer.

"*Constituent Documents*" means (a) in the case of a corporation, its articles or certificate of incorporation and bylaws; (b) in the case of a general partnership, its partnership agreement; (c) in the case of a limited partnership, its certificate of limited partnership and partnership agreement; (d) in the case of a trust, its trust agreement; (e) in the case of a joint venture, its joint venture agreement; (f) in the case of a limited liability company, its articles of organization or certificate of formation and operating agreement or regulations; and (g) in the case of any other entity, its organizational and governance documents and agreements.

"*Control*" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise. "*Controlling*" and "*Controlled*" have meanings correlative thereto.

"*Credit Facility*" means (individually and collectively) the Term Loan Facility and any other credit facility extended by Lender to Debtor from time to time.

"*Debt*" means, of any Person as of any date of determination (without duplication): (a) all obligations of such Person for borrowed money; (b) all obligations of such Person evidenced by bonds, notes, debentures, or other similar instruments; (c) all obligations of such Person to pay the deferred purchase price of property, assets or services, except trade accounts payable of such Person arising in the ordinary course of business that are not past due by more than **NINETY (90)** days; (d) all capitalized lease obligations of such Person; (e) all debt or other obligations of others guaranteed by such Person; (f) all obligations secured by a Lien existing on property or assets owned by such Person, whether or not the obligations secured thereby have been assumed by such Person or are non-recourse to the credit of such Person; (g) any other obligation for borrowed money or other financial accommodations which in accordance with GAAP would be shown as a liability on the balance sheet of such Person; (h) any repurchase obligation or liability of a Person with respect to accounts, chattel paper or notes receivable sold by such Person; (i) any liability under a sale and leaseback transaction that is not a capitalized lease obligation; (j) any obligation under any so-called "synthetic leases;" (k) any obligation arising with respect to any other transaction that is the functional equivalent of borrowing but which does not constitute a liability on the balance sheets of a Person; (l) all payment and reimbursement obligations of such Person (whether contingent or otherwise) in respect of letters of credit, bankers' acceptances, surety or other bonds and similar instruments; (m) all liabilities of such Person in respect of unfunded vested benefits under any "Plan" (within the meaning of Section 3(3) of ERISA); and (n) all obligations of such Person to purchase, redeem, retire, defease or otherwise make any payment in respect of any equity interests in such Person or any other Person, valued, in the case of redeemable preferred stock interests, at the greater of its voluntary or involuntary liquidation preference plus all accrued and unpaid dividends.

"*Deed of Trust*" means the **DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES, ASSIGNMENT OF RENTS, AND FINANCING STATEMENT** dated as of the Effective Date, executed by Debtor for the benefit of Lender (as the same may be amended, modified or restated from time to time), covering the Property.

"*Default*" means any Event of Default or event which with notice and/or the passage of time would be an Event of Default.

"*Dollars*" and "$" mean lawful money of the United States of America.

"*Environmental Laws*" means all laws, rules, regulations, codes, ordinances, orders, decrees, judgments, injunctions, notices or binding agreements issued, promulgated or entered into by any Governmental Authority, relating in any way to the environment, preservation or reclamation of natural resources, the management, release or threatened release of any Hazardous Material or to health and safety matters.

"*Environmental Liabilities*" means, as to any Person, all liabilities, obligations, responsibilities, remedial actions, losses, damages, punitive damages, consequential damages, treble damages, costs, expenses (including, without limitation, all reasonable fees, disbursements and expenses of counsel, expert and consulting fees and costs of investigation and feasibility studies), fines, penalties, sanctions, and interest incurred as a result of any claim or demand, by any Person, whether based in contract, tort, implied or express warranty, strict liability, criminal or civil statute, including any Environmental Law, permit, order or agreement with any Governmental Authority or other Person, arising from environmental, health or safety conditions or the release or threatened release of a Hazardous Material into the environment, resulting from the past, present or future operations of such Person or its Affiliates.

"*Event of Default*" has the meaning set forth in Section 12.

"*GAAP*" means generally accepted accounting principles, applied on a consistent basis, as set forth in Opinions of the Accounting Principles Board of the American Institute of Certified Public Accountants and/or in statements of the Financial Accounting Standards Board and/or their respective successors and which are applicable in the circumstances as of the date in question. Accounting principles are applied on a "consistent basis" when the accounting principles applied in a current period are comparable in all material respects to those accounting principles applied in a preceding period.

"*Governmental Authority*" means the government of the United States of America, any other nation or any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"*Guarantor*" means any Person, whether one or more, who from time to time guarantees all or any part of the Indebtedness.

"*Guaranty*" means a **GUARANTY AGREEMENT**, whether one or more, executed by Guarantor (as the same may be amended, restated or modified from time to time).

"*Hazardous Materials*" means all explosive or radioactive substances or wastes and all hazardous or toxic substances, wastes or other pollutants, and all other substances or wastes of any nature regulated pursuant to any Environmental Law.

"*Indebtedness*" means (a) all indebtedness, obligations and liabilities of Debtor to Lender of any kind or character, now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several or joint and several, and regardless of whether such indebtedness, obligations and liabilities may, prior to their acquisition by Lender, be or have been payable to or in favor of a third party and subsequently acquired by Lender (it being contemplated that Lender may make such acquisitions from third parties), including without limitation, the Loan and all indebtedness, obligations and liabilities of Debtor to Lender now existing or hereafter arising under the Note, this Agreement, any one or more of the other Loan Documents or any draft, acceptance, guaranty, endorsement, letter of credit, assignment, purchase, overdraft, discount or indemnity agreement; (b) all accrued but unpaid interest on any of the indebtedness described in (a) above; (c) all other obligations of Debtor to Lender under the Loan Documents; (d) all obligations of Obligors (other than Debtor) to Lender under the Loan Documents; (e) all costs and expenses incurred by Lender in connection with the collection and administration of all or any part of the indebtedness and obligations described in (a), (b), (c) and (d) above or the protection or preservation of, or realization upon, the collateral securing all or any part of such indebtedness and obligations, including without limitation all reasonable attorneys' fees; and (f) all renewals, extensions, modifications and rearrangements of all or any part of the indebtedness and obligations described in (a), (b), (c), (d) and (e) above.

"*Lender's Counsel*" is defined on the signature pages hereto.

"*Lien*" means any lien, mortgage, security interest, tax lien, pledge, charge, hypothecation, assignment, preference, priority, or other encumbrance of any kind or nature whatsoever (including, without limitation, any conditional sale or title retention agreement), whether arising by contract, operation of law, or otherwise.

"*Loan*" means all Advances (whether one or more) under the Credit Facility as established pursuant to the Loan Documents from time to time.

"*Loan Documents*" means this Agreement, the Note, the Guaranty, the Deed of Trust, and the other agreements, instruments and documents evidencing, securing, governing, guaranteeing or pertaining to the Loan.

"*Material Adverse Effect*" means any act, event, condition, or circumstance which would materially and adversely affect: (a) the operations, business, properties, liabilities (actual or contingent), condition (financial or otherwise) or prospects of Debtor; (b) the ability of any Obligor to perform its obligations under any Loan

Document to which it is a party; or (c) the legality, validity, binding effect or enforceability against any Obligor of any Loan Document to which it is a party.

"*Note*" means, collectively, any promissory note evidencing all or part of the Indebtedness from time to time (as any such promissory note may be amended, modified or restated from time to time).

"*Obligors*" means Debtor, Guarantor or any other Person who guaranteed or is otherwise obligated to pay or perform all or any portion of the Indebtedness.

"*Permitted Discretion*" means, with respect to Lender, a determination made in the exercise of Lender's commercially reasonable (from the perspective of a secured Lender) business judgment.

"*Permitted Encumbrances*" means the following encumbrances: (a) Liens for taxes, assessments or governmental charges or levies not yet due and payable or Liens for taxes, assessments or governmental charges or levies being contested in good faith and by appropriate proceedings for which adequate reserves have been established in accordance with GAAP; (b) Liens in respect of property of a Person imposed by law which were incurred in the ordinary course of business and which have not arisen to secure Debt for borrowed money, such as carriers', materialmen's, warehousemen's and mechanics' Liens, statutory and common law landlord's Liens, and other similar Liens arising in the ordinary course of business, and which either (i) do not in the aggregate materially detract from the value of such property or materially impair the use thereof in the operation of the business of a Person, or (ii) are being contested in good faith by appropriate proceedings, which proceedings have the effect of preventing the forfeiture or sale of the property subject to such Lien; (c) Liens created by or pursuant to the Loan Documents; and (d) Liens, charges, encumbrances, security interests, and adverse claims whatsoever, if any, set forth on <u>Schedule B</u> to the loan policy of title insurance issued to Lender to the extent the same are valid and subsisting and affect the Property.

"*Permitted Tax Distributions*" means, with respect to any Person, any dividend or distribution to any holder of such Person's stock or other equity interests to permit such holders to pay federal income taxes and all relevant state and local income taxes at a rate equal to the highest marginal applicable tax rate for the applicable tax year, however denominated (together with any interest, penalties, additions to tax, or additional amounts with respect thereto) imposed as a result of taxable income attributed to such holder as a partner of such Person under federal, state, and local income tax laws, determined on a basis that combines those liabilities arising out of the net effect of the income, gains, deductions, losses, and credits of such Person and attributable to it in proportion and to the extent in which such holders hold stock or other equity interests of such Person.

"*Person*" means any individual, corporation, limited liability company, trust (business or otherwise), association, company, partnership (general or limited), joint venture, Governmental Authority, or other entity, and shall include such Person's heirs, administrators, personal representatives, executors, successors and assigns.

"*Property*" has the meaning set forth in the Deed of Trust.

"*Responsible Officer*" means the Person designated by any Person to act on behalf of such Person; provided that such designated Person may not designate any other Person to be a Responsible Officer. Any document delivered hereunder that is signed by a Responsible Officer of such Person shall be conclusively presumed to have been authorized by all necessary corporate, partnership and/or other action on the part of Person and such Responsible Officer shall be conclusively presumed to have acted on behalf of such Person.

"*Subsidiary*" means any entity (a) of which at least a majority of the ownership, equity or voting interest is at the time directly or indirectly owned or controlled by a Person and/or its Subsidiaries, and (b) which is treated as a subsidiary in accordance with GAAP.

"*UCC*" means the Uniform Commercial Code as the same may, from time to time, be enacted and in effect in the State of Texas; provided, that to the extent the UCC is used to define any term herein or in any Loan Document and such term is defined differently in different articles or divisions of the UCC, the definition of such term contained in Article 9 shall govern; provided further, that in the event that, by reason of mandatory provisions

of law, any or all of the attachment, perfection or priority of, or remedies with respect to, Lender's Lien on any Collateral is governed by the Uniform Commercial Code as enacted and in effect in a jurisdiction other than the State of Texas, the term "*UCC*" shall mean the Uniform Commercial Code as enacted and in effect in such other jurisdiction solely for purposes of the provisions thereof relating to such attachment, perfection, priority or remedies and for purposes of definitions related to such provisions.

All words and phrases used herein shall have the meaning specified in the UCC except to the extent such meaning is inconsistent with this Agreement. All definitions contained in this Agreement are equally applicable to the singular and plural forms of the terms defined. The words "hereof," "herein" and "hereunder" and words of similar import referring to this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement. Any accounting term used in the Loan Documents shall have, unless otherwise specifically provided therein, the meaning customarily given such term in accordance with GAAP, and all financial computations thereunder shall be computed, unless otherwise specifically provided therein, in accordance with GAAP consistently applied; provided, that all financial covenants and calculations in the Loan Documents shall be made in accordance with GAAP as in effect on the Effective Date unless Debtor and Lender shall otherwise specifically agree in writing. That certain items or computations are explicitly modified by the phrase "in accordance with GAAP" shall in no way be construed to limit the foregoing.

2. **Credit Facility**.

   (a) **Term Loan Facility**. Subject to the terms and conditions set forth in this Agreement and the other Loan Documents, Lender hereby agrees to lend to Debtor in a single Advance the sum of **ONE MILLION FOUR HUNDRED TWENTY-THREE THOUSAND SEVEN HUNDRED FIFTY AND NO/100 DOLLARS ($1,423,750.00)** (the "*Term Loan Facility*"), which shall be due and payable on the **EARLIER** of: (i) the acceleration of the Indebtedness pursuant to the terms of the Loan Documents; and (ii) **JULY 13, 2028**. Amounts borrowed under the Term Loan Facility may not be reborrowed.

   (b) **Use of Proceeds**. The Advance under the Term Loan Facility shall be used by Debtor for the acquisition of the Property.

   (c) **Fees**. Debtor agrees to pay to Lender:

      (i) **Origination Fee**. An origination fee (the "*Origination Fee*") equal to **SEVEN THOUSAND ONE HUNDRED TWENTY AND NO/100 DOLLARS ($7,120.00)** for the establishment of the Credit Facility. The Origination Fee shall be due and payable on the Effective Date and shall be deemed fully earned as of the Effective Date.

      (ii) Each fee due hereunder shall compensate Lender for its costs and expenses in the structuring of the Credit Facility and (to the maximum extent permitted by applicable law) shall not be deemed interest.

3. **Note, Rate and Computation of Interest**. Each Credit Facility established pursuant to the Loan Documents shall be evidenced by a Note duly executed by Debtor and payable to the order of Lender, in form and substance acceptable to Lender. Interest on each Note shall accrue at the rates set forth therein. The principal of and interest on each Note shall be due and payable in accordance with the terms and conditions set forth in such Note and in this Agreement. All payments under this Agreement and the other Loan Documents shall be made to Lender at Lender's offices as set forth herein in Dollars and immediately available funds, without setoff, deduction or counterclaim, and free and clear of all taxes, at the time and in the manner provided in each such Note.

4. **Collateral**.

   (a) **Grant of Security Interest**. As collateral security for the prompt payment in full when due (whether at stated maturity, by acceleration or otherwise) of the Indebtedness, Debtor hereby pledges to and grants Lender, a security interest in, all of Debtor's right, title and interest in the Collateral, whether now owned by Debtor or hereafter acquired and whether now existing or hereafter coming into existence.

If Debtor at any time holds or acquires a commercial tort claim, Debtor shall notify Lender in writing within **FIVE (5)** Business Days of such occurrence with the details thereof and grant to Lender a security interest therein or Lien thereon and in the proceeds thereof, in form and substance satisfactory to Lender. If the security interest granted hereby in any rights of Debtor under any contract or other agreement included in the Collateral is expressly prohibited by such contract, then the security interest hereby granted therein nonetheless remains effective to the extent allowed by Article 9 of the UCC or other applicable law, but is otherwise limited by that prohibition.

(b) **Debtor Remains Liable**. Notwithstanding anything to the contrary contained herein, (i) Debtor shall remain liable under the contracts and agreements included in the Collateral to the extent set forth therein to perform all of Debtor's respective duties and obligations thereunder to the same extent as if this Agreement had not been executed; (ii) the exercise by Lender of any of its rights hereunder shall not release Debtor from any of its duties or obligations under the contracts and agreements included in the Collateral and (iii) Lender shall not have any obligation or liability under any of the contracts and agreements included in the Collateral by reason of this Agreement, nor shall Lender be obligated to perform any of the obligations or duties of Debtor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

(c) **Additional Documents; Errors and Omissions**. **TO SECURE FULL AND COMPLETE PAYMENT AND PERFORMANCE OF THE INDEBTEDNESS, EACH OBLIGOR SHALL EXECUTE AND DELIVER OR CAUSE TO BE EXECUTED AND DELIVERED ALL OF THE LOAN DOCUMENTS REASONABLY REQUIRED TO CARRY OUT THE PROVISIONS AND PURPOSES OF THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS AND TO CREATE, PRESERVE, AND PERFECT THE LIENS OF LENDER IN THE COLLATERAL. IN THE EVENT ANY OF THE LOAN DOCUMENTS EVIDENCING OR SECURING THE INDEBTEDNESS MISREPRESENTS OR INACCURATELY REFLECTS THE CORRECT TERMS AND/OR PROVISIONS OF THE INDEBTEDNESS, EACH OBLIGOR SHALL UPON REQUEST BY LENDER AND IN ORDER TO CORRECT SUCH MISTAKE, EXECUTE SUCH NEW DOCUMENTS OR INITIAL CORRECTED, ORIGINAL DOCUMENTS AS LENDER MAY DEEM REASONABLY NECESSARY TO REMEDY SAID ERRORS OR MISTAKES. EACH OBLIGOR SHALL EXECUTE SUCH OTHER DOCUMENTS AS LENDER SHALL DEEM REASONABLY NECESSARY TO CORRECT ANY DEFECTS OR DEFICIENCIES IN THE LOAN DOCUMENTS. ANY OBLIGOR'S FAILURE TO EXECUTE SUCH DOCUMENTS AS REQUESTED SHALL CONSTITUTE AN EVENT OF DEFAULT UNDER THIS AGREEMENT.**

(d) **Setoff**. As further security for the Indebtedness, Debtor grants to Lender a **FIRST (1st)** Lien and contractual right of set-off in and to all money and property of Debtor now or at any time hereafter coming within the custody or control of Lender, including (without limitation) all deposit accounts held by Lender, whether such deposit accounts have matured or not, and whether the exercise of such right of set-off results in loss of interest or other penalty under the terms of the deposit account agreement. It is further agreed that Lender shall have a **FIRST (1st)** Lien on all deposits and other sums coming within the custody or control of Lender at any time credited by or due from Lender to Debtor as security for the payment of the Indebtedness, and Lender, at its option after the occurrence of a Default may without notice and without any liability, hold all or any part of any such deposits or other sums until all amounts owing under the Loan Documents have been paid in full, and/or Lender may apply or set-off all or any part of any such deposits or other sums credited by or due from Lender to or against any sums due under the Loan Documents in any manner and in any order of preference which Lender, in its sole discretion, chooses. The rights and remedies of Lender hereunder are in addition to any other rights and remedies (including, without limitation, other rights of setoff) which Lender may have.

(e) **Satisfaction of Indebtedness**. Until the Indebtedness has been indefeasibly paid and fully satisfied (other than contingent indemnification obligations to the extent no unsatisfied claim has been asserted) and the commitments of Lender under the Credit Facility have been terminated, Lender shall be entitled to retain the security interests in the Collateral granted under the Loan Documents and the ability to exercise all rights and remedies available to Lender under the Loan Documents and applicable laws.

5.  **Conditions Precedent**.  The obligation of Lender to make the Advance under the Credit Facility is subject to the condition precedent that Lender shall have received, or such condition shall be otherwise satisfied, as of the Effective Date, to Lender's satisfaction in the exercise of its Permitted Discretion:

(a)  **Closing Certificate**.  A **CLOSING CERTIFICATE** executed by a Responsible Officer of each Obligor that is not a natural Person, or a Responsible Officer of the Authorizing Entity of such Obligor, which certifies: (1) the resolutions of such Person as adopted by such Person's Authorizing Entity authorizing the execution, delivery, and performance of the Loan Documents that such Obligor is a party to; (2) certificates of the appropriate government officials of the state of organization of each such Obligor and any Authorizing Entity of such Obligor, and any state any such Person is currently doing business as to the existence, qualification and good standing of such Person, dated no more than **TEN (10)** days prior to the Effective Date; (3) the true and correct Constituent Documents of each such Obligor and any Authorizing Entity of such Obligor and (4) the names of the Responsible Officer authorized to sign the Loan Documents that such Obligor is a party to, together with specimen signatures of such Persons.

(b)  **Loan Documents**.  The Loan Documents executed by each Obligor party thereto.

(c)  **Lien Search**.  The results of a UCC or other Lien search showing all financing statements and other documents or instruments on file against Debtor in such locations as Lender may reasonably request, dated no more than **TEN (10)** days prior to the Effective Date.

(d)  **Financing Statements**.  UCC financing statements covering the Collateral shall have been filed with such filing offices as Lender may request.

(e)  **Insurance Matters**.  Copies of insurance certificates describing all insurance policies as may be required by Lender, together with loss payee and lender endorsements in favor of Lender with respect to all insurance policies covering the Collateral.

(f)  **Fees and Expenses**.  Evidence that the costs and expenses of Lender (including reasonable attorneys' fees) and all fees owing to Lender, shall have been paid in full by Debtor.

(g)  **Real Property**.  (1) A binding commitment for title insurance policy in form and substance and from a title insurance company satisfactory to Lender, agreeing to issue a mortgagee policy of title insurance insuring the Lien of Lender on the Property, with such endorsements and affirmative coverage as Lender may reasonably request, and (2) evidence satisfactory to Lender that the Property is not located within a "special flood hazard area" as designated on maps prepared by the Federal Emergency Management Agency (FEMA) or within any "wetlands" area as designated and defined by The Federal Manual for Identifying and Delineating Jurisdictional Wetlands (or successor standard specified by Lender).

(h)  **Phase I**.  A Phase I environmental report (jointly addressed to Debtor and Lender or an appropriate reliance letter addressed to Lender) covering the Property, in form and content and conducted and prepared by an environmental consultant acceptable to Lender.  Debtor agrees that Lender may disclose the contents of such environmental report to Governmental Authorities and Debtor shall deliver to Lender the written consent to such disclosure from the respective environmental consultant.

(i)  **Appraisal**.  An appraisal covering the Property addressed to Lender, in form and content acceptable to Lender, in its Permitted Discretion, and conducted and prepared by an appraiser acceptable to Lender.  The appraisal shall comply with all appraisal requirements of the Lender and any Governmental Authority and shall reflect a fair value for the Property equal to or in excess of that specified by the Lender as a condition to making credit and other financial accommodations available pursuant to this Agreement.

(j)  **Other Matters**.  Such other documents and agreements as may be required by Lender in its Permitted Discretion.

Each Advance hereunder shall be deemed to be a representation and warranty by Debtor that the conditions specified in this Section have been satisfied on and as of the date of the applicable Advance.

6.    **Representations and Warranties**.    Upon each Advance hereunder, each Obligor hereby represents and warrants to Lender as follows:

(a)    **Existence; Location**.    Each Obligor that is not a natural person (i) is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its organization; (ii) has all requisite power and authority to own its assets and carry on its business as now being or as proposed to be conducted; and (iii) is qualified to do business in all jurisdictions in which the nature of its business makes such qualification necessary and where failure to so qualify would have a Material Adverse Effect.  Each Obligor has the power and authority to execute, deliver, and perform its obligations under the Loan Documents to which it is or may become a party.  Debtor's exact legal name, jurisdiction of organization, type of entity, state issued organizational identification number and the location of its principal place of business, or chief executive office (or the principal residence if Debtor is a natural person) and of the books and records relating, are disclosed as set forth in this Agreement.  Debtor has no places of business except those disclosed in writing to Lender.  Debtor has not changed its name, jurisdiction of organization, principal place of business, or chief executive office (or principal residence if such Debtor is a natural person) or its corporate structure in any way (e.g., by merger, consolidation, change in corporate form or otherwise) within the past **FIVE (5)** years.  Debtor's exact legal name is set forth in the introductory paragraph hereto.

(b)    **Binding Obligations**.    The execution, delivery, and performance of the Loan Documents by each Obligor have been duly authorized by all necessary action by such Obligor, and constitute legal, valid and binding obligations of such Obligor, enforceable in accordance with their respective terms, except as limited by bankruptcy, insolvency or similar laws of general application relating to the enforcement of creditors' rights and except to the extent specific remedies may generally be limited by equitable principles.

(c)    **No Consent**.    The execution, delivery and performance of the Loan Documents, and the consummation of the transactions contemplated thereby, do not (i) conflict with, result in a violation of, or constitute a default under (1) any provision of the Constituent Documents (if any) or other instrument binding upon any Obligor, (2) any law, governmental regulation, court decree or order applicable to any Obligor, or (3) any contractual obligation, agreement, judgment, license, order or permit applicable to or binding upon any Obligor, (ii) require the consent, approval or authorization of any third party, or (iii) result in or require the creation of any Lien, charge or encumbrance upon any property or asset of any Obligor except as may be expressly contemplated in the Loan Documents.  No consent is required for the exercise by Lender of the rights provided for in the Loan Documents or the remedies in respect of the Collateral pursuant to the Loan Documents (except as may be required in connection with the disposition of certain Collateral by applicable law, regulation or judicial decision).

(d)    **Financial Condition**.    Each financial statement of each Obligor supplied to Lender truly discloses and fairly presents such Person's financial condition as of the date of each such statement.  There has been no material adverse change in such financial condition or results of operations of any Obligor subsequent to the date of the most recent financial statement supplied to Lender.  All projections delivered by each Obligor to Lender have been prepared in good faith, with care and diligence and use assumptions that are reasonable under the circumstances at the time such projections were prepared and delivered to Lender and all such assumptions are disclosed in the projections.

(e)    **Operation of Business**.    Debtor possesses all contracts, licenses, permits, franchises, patents, copyrights, trademarks, and tradenames, or rights thereto, necessary to conduct its businesses substantially as now conducted and as presently proposed to be conducted, and Debtor is not in violation of any valid rights of others with respect to any of the foregoing, except any violations that would not reasonably be expected to have a Material Adverse Effect.

(f)    **Litigation and Judgments**.    There is no action, suit, investigation, or proceeding before or by any Governmental Authority or arbitrator pending, or to the knowledge of any Obligor, threatened

against or affecting such Obligor that would, if adversely determined, have a Material Adverse Effect. There are no outstanding judgments against any Obligor.

(g)     **Debt**. Debtor has no Debt other than the Permitted Debt.

(h)     **Disclosure**. No statement, information, report, representation, or warranty made by any Obligor in the Loan Documents or furnished to Lender in connection with the Loan Documents or any of the transactions contemplated hereby contains any untrue statement of a material fact or omits to state any material fact necessary to make the statements herein or therein not misleading. There is no fact known to any Obligor which would reasonably be expected to have a Material Adverse Effect that has not been disclosed in writing to Lender.

(i)     **Subsidiaries, Ventures, Etc**. Debtor has no Subsidiaries or joint ventures or partnerships other than those disclosed to Lender in writing setting forth the jurisdiction of organization of each such Person and the percentage of Debtor's ownership interest in such Person.

(j)     **Agreements**. Debtor is not a party to any indenture, loan, or credit agreement, or to any lease or other agreement or instrument, or subject to any charter or corporate or other organizational restriction which would reasonably be expected to have a Material Adverse Effect. No Obligor is in default in any material respect in the performance, observance, or fulfillment of any of the obligations, covenants, or conditions contained in any agreement or instrument material to its business.

(k)     **Compliance with Laws**. No Obligor is in violation of any law, rule, regulation, order, or decree of any Governmental Authority or arbitrator, the violation of which would reasonably be expected to have a Material Adverse Effect.

(l)     **Taxes; Governmental Charges**. Each Obligor has filed all federal, state and local tax reports and returns required by any law or regulation to be filed by it and has either duly paid all taxes, duties and charges indicated due on the basis of such returns and reports, or made adequate provision for the payment thereof, and the assessment of any material amount of additional taxes in excess of those paid and reported is not reasonably expected. No Obligor has knowledge of any pending investigation of such Obligor by any taxing authority or any pending but unassessed tax liability.

(m)     **Use of Proceeds; Margin Securities**. Debtor is not engaged principally, or as one of its important activities, in the business of extending credit for the purpose of purchasing or carrying margin stock (within the meaning of regulations of the Board of Governors of the Federal Reserve System), and no part of the proceeds of any Advance will be used to purchase or carry any margin stock or to extend credit to others for the purpose of purchasing or carrying margin stock.

(n)     **ERISA**. Debtor is in compliance in all material respects with all applicable provisions of the Employee Retirement Income Security Act of 1974, as amended from time to time, and the regulations and published interpretations thereunder ("*ERISA*"). Neither a reportable event nor a prohibited transaction has occurred and is continuing with respect to any plan. No notice of intent to terminate a plan has been filed, nor has any plan been terminated. No circumstances exist which constitute grounds entitling the Pension Benefit Guaranty Corporation or any entity succeeding to all or any of its functions under ERISA (the "*PBGC*") to institute proceedings to terminate, or appoint a trustee to administer, a plan, nor has the PBGC instituted any such proceedings. Neither Debtor nor any ERISA Affiliate (as defined below) has completely or partially withdrawn from a multiemployer plan. Debtor and each ERISA Affiliate have met their minimum funding requirements under ERISA with respect to all of their plans, and the present value of all vested benefits under each plan do not exceed the fair market value of all plan assets allocable to such benefits, as determined on the most recent valuation date of the plan and in accordance with ERISA. Neither Debtor nor any ERISA Affiliate has incurred any liability to the PBGC under ERISA. "*ERISA Affiliate*" means each trade or business (whether or not incorporated) which together with Debtor would be deemed to be a "single employer" within the meaning of section 4001(b)(1) of ERISA or subsections (b), (c), (m) or (o) of section 414 of the Internal Revenue Code of 1986.

    (o)    **Regulated Entities**.  Debtor is not (i) an "investment company" or a company "controlled" by an "investment company" within the meaning of the Investment Company Act of 1940 or (ii) subject to regulation under the Federal Power Act, the Interstate Commerce Act, any state public utilities code, or any other federal or state statute, rule or regulation limiting its ability to incur Debt, pledge its assets or perform its obligations under the Loan Documents.

    (p)    **Foreign Assets Control Regulations and Anti-Money Laundering**.  Each Obligor and each Subsidiary of such Obligor is and will remain in compliance in all material respects with all United States economic sanctions laws, Executive Orders and implementing regulations as promulgated by the United States Treasury Department's Office of Foreign Assets Control ("*OFAC*"), and all applicable anti-money laundering and counter-terrorism financing provisions of the Bank Secrecy Act and all regulations issued pursuant to it.

    (q)    **Solvency**.  On the Effective Date and on the date of each Advance, Debtor will be and after giving effect to the requested Advance, will be, solvent.

    (r)    **Environmental Matters**.  Except for matters disclosed in writing to Lender:

        (i)    **Notice of Non-Compliance**.  Debtor and the Property are in full compliance with all Environmental Laws, except where non-compliance would not reasonably be expected to have a Material Adverse Effect.  Debtor is not aware of, nor has Debtor received notice of, any past, present, or future conditions, events, activities, practices, or incidents which may interfere with or prevent the compliance or continued compliance of Debtor with all Environmental Laws except where non-compliance would be reasonably be expected to have a Material Adverse Effect;

        (ii)    **Permits**.  Debtor and or any tenant with respect to the Property has obtained all permits, licenses, and authorizations that are required under applicable Environmental Laws, and all such permits are in good standing and such Person is in compliance with all of the terms and conditions of such permits, except where non-compliance would not reasonably be expected to have a Material Adverse Effect;

        (iii)    **Hazardous Materials**.  To the knowledge of Debtor, no Hazardous Materials exist on, about, or within or have been used, generated, stored, transported, disposed of on, or released by Debtor or any tenant from the Property, except to the extent in compliance with Environmental Laws or where such action would not reasonably be expected to have a Material Adverse Effect.  The use which Debtor or any tenant makes and intends to make of the Property will not result in the use, generation, storage, transportation, accumulation, disposal, or release of any Hazardous Material on, in, or from any of its properties or assets, except to the extent in compliance with Environmental Laws or where such action would not reasonably be expected to have a Material Adverse Effect;

        (iv)    **No Pending or Threatened Actions**.  To the knowledge of Debtor, neither Debtor or the Property is subject to any outstanding or threatened order from or agreement with any Governmental Authority or other Person or subject to any judicial or docketed administrative proceeding with respect to failure to comply with Environmental Laws; and

        (v)    **No Conditions**.  To the knowledge of Debtor, there are no conditions or circumstances associated with the Property or operations conducted thereon that would reasonably be expected to give rise to any Environmental Liabilities of Debtor.

    (s)    **Representations and Warranties Relating to the Collateral**.

        (i)    **Information**.  All information supplied by Debtor to Lender with respect to the Collateral is true, correct, and complete in all material respects.

(ii)     **Security Interest**.  Debtor has and will have at all times (1) good and valid rights in and title to the Collateral with respect to which it has purported to grant a security interest hereunder, (2) full right, power and authority to grant a security interest in the Collateral to Lender in the manner provided herein, free and clear of any Lien, security interest or other charge or encumbrance other than for the Permitted Encumbrances.  The Loan Documents create a legal, valid and binding security interest in favor of Lender in all now owned and hereafter acquired Collateral securing the Indebtedness, and upon all necessary recordings and execution, the security interests granted to Lender thereunder constitute valid and perfected **FIRST (1ˢᵗ)** priority Lien.

(iii)     **No Financing Statements or Control Agreements**.  Other than the financing statements and control agreements with respect to this Agreement, there are no other financing statements or control agreements covering any Collateral, other than those evidencing Permitted Encumbrances.

(iv)     **Maintenance of Collateral**.  All tangible Collateral which is material to Debtor's business is in good repair and condition, ordinary wear and tear excepted.

The foregoing representations and warranties will be true and correct in all respects with respect to any additional Collateral or additional specific descriptions of certain Collateral delivered to Lender in the future by Debtor.  The failure of any of these representations or warranties or any description of Collateral therein to be accurate or complete shall not impair the security interest in any such Collateral.

7.     **Covenants**.  Until all Indebtedness is indefeasibly paid or performed, and Lender has no further commitment to lend under the Credit Facility, each Obligor agrees and covenants as follows:

(a)     **Compliance**.  EACH OBLIGOR SHALL (i) COMPLY WITH, PERFORM, AND BE BOUND BY ALL COVENANTS AND AGREEMENTS IN THE LOAN DOCUMENTS THAT ARE APPLICABLE TO SUCH OBLIGOR, ITS ASSETS, OR ITS OPERATIONS, EACH OF WHICH IS HEREBY RATIFIED AND CONFIRMED INCLUDING THE INDEMNIFICATION AND RELATED PROVISIONS OF ANY LOAN DOCUMENT; AND (ii) CONSENT TO AND APPROVE OF THE VENUE, SERVICE OF PROCESS, AND WAIVER OF JURY TRIAL PROVISIONS IN THIS AGREEMENT.

(b)     **Maintenance of Existence; Conduct of Business**.  Each Obligor shall preserve and maintain its existence and all of its leases, privileges, licenses, permits, franchises, qualifications, and rights that are necessary or desirable in the ordinary conduct of its business.  Debtor shall conduct its business in accordance with existing business practices.

(c)     **Maintenance of Properties**.  Debtor shall maintain, keep, and preserve all of its properties and assets (tangible and intangible) material to the proper conduct of its business in good working order and condition.

(d)     **Taxes and Claims**.  Each Obligor shall pay or discharge at or before maturity or before becoming delinquent (i) all taxes, levies, assessments, and governmental charges imposed on it or its income or profits or any of its property or assets, and (ii) all lawful claims for labor, material, and supplies, which, if unpaid, might become a Lien upon any of its property or assets; provided, however, that such Person shall not be required to pay or discharge any tax, levy, assessment, or governmental charge which is being contested in good faith by appropriate proceedings diligently pursued, and for which adequate reserves in accordance with GAAP have been established.

(e)     **Ownership and Liens; Impairment of Collateral**.  Debtor will maintain good and indefeasible title to the Collateral free and clear of all Liens, security interests, encumbrances or adverse claims, except for Permitted Encumbrances.  Debtor will cause any financing statement or other security instrument with respect to the Collateral to be terminated, except for Permitted Encumbrances.  Debtor will defend at its expense Lender's right, title and security interest in and to the Collateral against the claims of any third party.  Debtor will not take any action that would in any manner impair the enforceability of

Lender's security interest in any Collateral. Debtor will not adjust, settle, compromise, amend or modify any Collateral, except an adjustment, settlement, compromise, amendment or modification in good faith and in the ordinary course of business; provided, however, this exception shall terminate following written notice from Lender upon the occurrence and during the continuation of an Event of Default. Debtor shall provide to Lender such information concerning (i) any adjustment, settlement, compromise, amendment or modification of any Collateral, and (ii) any claim asserted by any account debtor for credit, allowance, adjustment, dispute, setoff or counterclaim, as Lender may reasonably request from time to time.

(f)   **Inspection Rights**.  Upon at least **FORTY-EIGHT (48)** hours' prior written notice, unless an Event of Default exists and is continuing, then at any reasonable time and from time to time, Debtor shall (i) permit representatives of Lender to examine, inspect, review, evaluate and make physical verifications and appraisals of (1) the Collateral, or (2) other property and assets of Debtor in any manner and through any medium that Lender considers advisable, (ii) to examine, copy, and make extracts from its books and records, (iii) to visit and inspect its properties and assets, and (iv) to discuss its business, operations, and financial condition with its officers, employees, and independent certified public accountants, in each instance, at the Debtor's expense.

(g)   **Keeping Books and Records**.  Debtor shall maintain proper books of record and account in which full, true, and correct entries in conformity with GAAP shall be made of all dealings and transactions in relation to its business and activities.

(h)   **Compliance with Laws**.  Each Obligor shall, and shall cause each of its Subsidiaries to, comply in all material respects with all applicable laws, rules, regulations, orders, and decrees of any Governmental Authority or arbitrator, where the failure to comply would reasonably be expected to have a Material Adverse Effect.

(i)   **Compliance with Agreements**.  Each Obligor shall comply in all material respects with all agreements, contracts, and instruments binding on it or affecting its properties or business, where the failure to comply would reasonably be expected to have a Material Adverse Effect.

(j)   **ERISA**.  Debtor shall, and shall cause each of its Subsidiaries to, comply with all minimum funding requirements, and all other material requirements, of ERISA, if applicable, so as not to give rise to any liability thereunder.

(k)   **Depository Relationship**.  Debtor shall, and shall cause each of its Subsidiaries to, use Lender as its principal depository bank for the maintenance of any business, cash management, operating and administrative deposit accounts.

(l)   **Intentionally Deleted**.

(m)   **Debt**.  Debtor shall not, and shall not permit any of its Subsidiaries to, directly or indirectly, incur, create, assume, or permit to exist any Debt, except (the "*Permitted Debt*"):

(i)   Debt to Lender; and

(ii)   Trade payable incurred in the ordinary course of business.

(n)   **Other Changes**.  **DEBTOR WILL NOT, WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER, (i) CREATE, INCUR OR ASSUME INDEBTEDNESS FOR BORROWED MONEY, INCLUDING CAPITAL LEASES, OTHER THAN INDEBTEDNESS EXPRESSLY PERMITTED BY THE LOAN DOCUMENTS, (ii) SELL, TRANSFER, MORTGAGE, ASSIGN, PLEDGE, LEASE (OTHER THAN IN THE ORDINARY COURSE OF BUSINESS), GRANT A SECURITY INTEREST IN OR ENCUMBER ANY OF DEBTOR'S ASSETS (EXCEPT AS EXPRESSLY PERMITTED BY THE LOAN DOCUMENTS), OR (iii) SELL ANY OF DEBTOR'S ACCOUNTS, EXCEPT TO LENDER.**

(o)     **Intentionally Deleted**.

(p)     **Fundamental Change**.  Debtor will not (i) make any material change in the nature of its business as carried on as of the Effective Date, (ii) amend or permit the amendment of any of its Constituent Documents except upon not less than **THIRTY (30)** days prior written notice to Lender, (iii) liquidate, merge or consolidate with or into any other Person, (iv) make a change in organizational structure or the jurisdiction in which it is organized, or (v) permit **ANY** change in Debtor's legal name or the state of Debtor's organization.  Debtor shall execute and deliver all such additional documents and perform all additional acts as Lender, in its sole discretion, may request in order to continue or maintain the existence and priority of its security interest in all of the Collateral.

(q)     **Loans**.  Debtor will not make loans or guarantee any obligation of any other Person or entity other than (i) loans or advances to employees of Debtor not to exceed **FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00)** in the aggregate outstanding at any time, including such loans and advances outstanding on the Effective Date, and (ii) accounts receivable for sales of inventory and other products and services provided by Debtor to its respective customers in the ordinary course of business of Debtor.

(r)     **Transactions with Affiliates**.  Debtor will not enter into any transaction, including, without limitation, the purchase, sale or exchange of property or the rendering of any service, with any Affiliate of Debtor, except in the ordinary course of and pursuant to the reasonable requirements of Debtor's business (upon prior written notice to Lender) and upon fair and reasonable terms no less favorable to Debtor than would be obtained in a comparable arm's-length transaction with a Person or entity not an Affiliate of Debtor.

(s)     **Waivers and Consents Relating to Real Property Interests**.  Upon the request of Lender, Debtor shall cause each mortgagee of real property owned by Debtor and each landlord of real property leased by Debtor to execute and deliver agreements satisfactory in form and substance to Lender by which such mortgagee or landlord (i) waives or subordinates any rights it may have in the Collateral, or (ii) consents to the mortgage or other encumbrance of Debtor's interest in such real property.  Debtor shall not keep any tangible personal property Collateral at any location other than on the Property.

(t)     **Change in Control**.  Debtor shall not permit any change in Control of Debtor.

(u)     **Investments**.  Debtor will not purchase any stock, equity interests or debt obligations (except obligations of the U.S. government) in any Person.

(v)     **Disposition of Assets**.  Debtor shall not directly or indirectly, sell, lease, assign, transfer, or otherwise dispose of any of its assets, except (i) dispositions of inventory in the ordinary course of business or (ii) dispositions, for fair value, of worn-out and obsolete equipment not necessary or useful to the conduct of business.  Debtor shall not, directly or indirectly, enter into any arrangement with any Person pursuant to which it leases from such Person real or personal property that has been or is to be sold or transferred, directly or indirectly, by it to such Person without the prior written consent of Lender (such consent not to be unreasonably withheld, conditioned or delayed).

(w)     **Prepayment of Debt**.  Debtor shall not, directly or indirectly, make any optional or voluntary payment, prepayment, repurchase or redemption of any Debt for borrowed money, except the Indebtedness.

(x)     **Environmental Protection**.  Debtor shall not conduct any activity or use any of its properties or assets in any manner that is likely to violate any Environmental Law or create any Environmental Liabilities for which Debtor would be responsible.

(y)  **Accounting**.  Debtor shall not change its fiscal year or make any change (i) in accounting treatment or reporting practices, except as required by GAAP and disclosed to Lender, or (ii) in tax reporting treatment, except as required by law and disclosed to Lender.

(z)  **Insurance**.  Debtor will maintain insurance, including but not limited to, fire insurance, comprehensive property damage, public liability, worker's compensation, business interruption and other insurance deemed reasonably necessary by Lender.  Debtor will, at its own expense, maintain insurance with respect to all Collateral in such amounts, against such risks, in such form and with such insurers, as shall be satisfactory to Lender from time to time.  Each policy of insurance maintained by Debtor shall (i) name Debtor and Lender as insured parties thereunder (without any representation or warranty by or obligation upon Lender) as their interests may appear, (ii) contain the agreement by the insurer that any loss thereunder shall be payable to Lender notwithstanding any action, inaction or breach of representation or warranty by Debtor, and (iii) provide prior written notice of cancellation or of lapse shall be given to Lender by the insurer in accordance with the insurer's commercial practices as adopted from time to time.  Debtor will deliver to Lender original or duplicate policies of such insurance.  Debtor will also, at the request of Lender, duly execute and deliver instruments of assignment of such insurance policies and cause the respective insurers to acknowledge receipt of such assignment.  All insurance payments in respect of loss of or damage to any Collateral shall be paid to Lender and applied by Lender in accordance with the Loan Documents, provided, however, that so long as no Default exists, Debtor may use such insurance payments for the repair or replacement of such lost or damaged property.

(aa)  **Notices of Material Events**.  Debtor will furnish to Lender prompt written notice of the following:

(i)  the occurrence of any Default;

(ii)  the filing or commencement of any action, suit or proceeding by or before any arbitrator or Governmental Authority against any Obligor that, if adversely determined, would reasonably be expected to result in a Material Adverse Effect; and

(iii)  any and all material adverse changes in any Obligor's financial condition and all claims made against any Obligor that would materially affect the financial condition of such Obligor.

Each notice delivered under this Section shall be accompanied by a statement of a Responsible Officer of Debtor setting forth the details of the event or development requiring such notice and any action taken or proposed to be taken with respect thereto.

(bb)  **Accounts and General Intangibles**.  Debtor will, except as otherwise provided herein, collect, at Debtor's own expense, all amounts due or to become due under each of the accounts and general intangibles.  In connection with such collections, Debtor may and, at Lender's direction, will take such action not otherwise forbidden herein as Debtor or Lender may deem reasonably necessary or advisable to enforce collection or performance of each of the accounts and general intangibles.  Debtor will also duly perform and cause to be performed all of its material obligations with respect to the goods or services, the sale or lease or rendition of which gave rise or will give rise to each account and all of its obligations to be performed under or with respect to the general intangibles.  Debtor also covenants and agrees to take any action and/or execute any documents that Lender may reasonably request in order to comply with law relating to the assignment of the accounts.

(cc)  **Limitation on Issuance of Equity**.  Debtor shall not, and shall not permit any of its Subsidiaries to, directly or indirectly, issue, sell, assign, or otherwise dispose of (i) any of its stock or other equity interests, (ii) any securities exchangeable for or convertible into or carrying any rights to acquire any of its stock or other equity interests, or (iii) any option, warrant, or other right to acquire any of its stock or other equity interests.

(dd)    **Chattel Paper, Documents and Instruments**. Debtor will take such action as may be reasonably requested by Lender in order to cause any chattel paper, documents or instruments to be valid and enforceable and will cause all chattel paper, and instruments to have only one original counterpart. Upon request by Lender, Debtor will deliver to Lender all originals of chattel paper, documents or instruments and unless such request is made, Debtor will not deliver possession of such chattel paper, documents or instruments to any Person and will mark all chattel paper, documents or instruments with a legend indicating that such chattel paper, document or instrument is subject to the security interest granted hereunder.

(ee)    **Uncertificated Securities and Certain Other Investment Property**. Debtor will permit Lender from time to time to cause the appropriate issuers (and, if held with a securities intermediary, such securities intermediary) of uncertificated securities or other types of investment property not represented by certificates which are Collateral to mark their books and records with the numbers and face amounts of all such uncertificated securities or other types of investment property not represented by certificates and all rollovers and replacements therefor to reflect the Lien of Lender granted pursuant to this Agreement. Debtor will take any actions necessary to cause (i) the issuers of uncertificated securities which are Collateral and which are securities and (ii) any financial intermediary which is the holder of any investment property, to cause Lender to have and retain control over such securities or other investment property. Without limiting the foregoing, Debtor will, with respect to investment property held with a financial intermediary, cause such financial intermediary to enter into a control agreement with Lender in form and substance satisfactory to Lender.

(ff)    **Certificates of Title**. With respect to any item of equipment which is covered by a certificate of title and indication of a security interest on such certificate is required as a condition of perfection, upon the request of Lender, Debtor shall cause Lender's security interest to be properly indicated thereon.

(gg)    **Single Purpose Entity**. Debtor hereby represents warrants and covenants that Debtor is, and shall be until payment in full of the Indebtedness, a single purpose entity, and Debtor shall engage in no other business but those reasonably related to its ownership of the Property.

(hh)    **HVCRE Compliance**. Debtor shall at all times cause the Property to remain in full compliance with all required equity thresholds and capital retention obligations set forth in Part 217 of Chapter II of title 12 of the Code of Federal Regulations (the "*HVCRE Regulations*") such that the Property does not, in the determination of Lender, need to be classified as High Volatility Commercial Real Estate.

(ii)    **Phase I**. Debtor agrees that it will promptly reimburse the Lender for the cost of obtaining a new Phase I environmental report (jointly addressed to Debtor and Lender or an appropriate reliance letter addressed to Lender) covering the Property, in form and content and conducted and prepared by an environmental consultant acceptable to Lender. Debtor agrees that Lender may disclose the contents of such environmental report to Governmental Authorities and Debtor shall deliver to Lender the written consent to such disclosure from the respective environmental consultant.

8.    **Financial Covenants**. Until all Indebtedness is indefeasibly paid or satisfied and Lender has no further commitment to lend under the Credit Facility, each Obligor agrees and covenants that it will, unless Lender shall otherwise consent in writing:

(a)    **Debt Service Coverage Ratio**. Debtor shall maintain, on a consolidated basis and as of the last day of each fiscal year and for the trailing **TWELVE (12)** months ending on such last day, a Debt Service Coverage Ratio of at least 1.25 to 1.00.

(b)    **Defined Terms**. The following terms will have the meanings given such terms in this Section:

"*Debt Service*" means, for any applicable period of determination, the principal and interest payments based on the actual debt service requirements of the Credit Facility.

"*Debt Service Coverage Ratio*" means the ratio of (i) Net Operating Income, to (ii) Debt Service.

"*Net Operating Income*" means, for any applicable period of determination, (i) the income actually collected and derived from ongoing operations of the Property plus reimbursements minus (ii) the actual operating expenses incurred, which shall not include any non-reoccurring capital expenditures, depreciation, amortization, or interest expense and shall be calculated in a matter satisfactory to Lender.

A breach of a financial covenant contained in this Section shall be deemed to have occurred as of any date of determination thereof by Lender or as of the last day of any specified measuring period, regardless of when the financial statements or any certificate reflecting such breach are delivered to Lender. Debtor shall provide Lender such calculations and certificates as Lender shall reasonably require in calculating compliance with the financial covenants set forth herein.

9.      **Reporting Requirements**.  Until all Indebtedness is indefeasibly paid and satisfied, and Lender has no further commitment to lend under the Credit Facility, each Obligor agrees and covenants that it will furnish or cause to be furnished the following:

(a)      **Debtor's Tax Returns**.  As soon as available and in any event within **SIXTY (60)** days of filing (and in any event by **NOVEMBER 15** of the calendar year immediately following the year for which such returns are filed), a copy of the annual income tax returns for Debtor.

(b)      **Compliance Certificate**.  Concurrently with the delivery of each of the financial statements of Debtor referred to in Section 9(a), a certificate of a Responsible Officer of Debtor (i) stating that to such officer's knowledge, no Default has occurred and is continuing, or if a Default has occurred and is continuing, a statement as to the nature thereof and the action which is proposed to be taken with respect thereto, and (ii) showing in reasonable detail the calculations demonstrating compliance with the financial covenants set forth in Section 8 of this Agreement.

(c)      **Guarantor Financial Statements and Tax Returns**.  As soon as available and in any event within (i) **NINETY (90)** days after the annual anniversary of the date of the annual financial statement most recently delivered to Lender, an unaudited annual financial statement for each Guarantor, in such form and detail as Lender shall reasonably require, including, without limitation, a balance sheet, cash flow statement, and contingent liabilities statement, and (ii) **SIXTY (60)** days of the day it is filed with the Internal Revenue Service or other applicable taxing entity, a copy of each Guarantor's filed tax return.

(d)      **Management Letters**.  Promptly upon receipt thereof Debtor shall furnish to Lender, a copy of any management letter or written report submitted to Debtor by independent certified public accountants with respect to the business, condition (financial or otherwise), operations, prospects, or properties of Debtor.

(e)      **ERISA Reports**.  Promptly after the filing or receipt thereof, copies of all reports, including annual reports, and notices which Debtor files with or receives from the PBGC or the U.S. Department of Labor under ERISA; and as soon as possible and in any event within **FIVE (5)** Business Days after Debtor knows or has reason to know that any reportable event or prohibited transaction has occurred with respect to any plan or that the PBGC or Debtor has instituted or will institute proceedings under Title IV of ERISA to terminate any plan, a certificate of an officer of Debtor setting forth the details as to such reportable event or prohibited transaction or plan termination and the action that Debtor proposes to take with respect thereto.

(f)      **Notice of Default and Events of Default**.  As soon as possible and in any event within **TEN (10)** calendar days after the occurrence of each Default, a written notice setting forth the details of such Default and the action which is proposed to be taken by Debtor with respect thereto.

(g)    **General Information**.  Debtor shall promptly deliver such other information concerning any Obligor or the Collateral as Lender may request.

10.    **Insurance and Casualty**.

(a)    **Required Insurance Coverage**.  Debtor, at its expense, shall maintain and provide to Lender copies of policies or other satisfactory evidence of insurance providing the following:

(i)    Commercial General Liability Insurance with limits of not less than **ONE MILLION DOLLARS ($1,000,000.00)** per occurrence combined single limit and **TWO MILLION DOLLARS ($2,000,000.00)** in the aggregate for the policy period, or in whatever higher amounts as may be required by Lender from time to time by notice to Debtor (with deductibles acceptable to Lender), and extended to cover: (1) contractual liability assumed by Debtor with defense provided in addition to policy limits for indemnities of the named insured, (2) if any of the work is subcontracted, independent contractors liability providing coverage in connection with such portion of the work which may be subcontracted, (3) broad form property damage liability, (4) products & completed operations for coverage, such coverage to apply for two years following completion of construction, (5) waiver of subrogation against all parties named additional insured, (6) severability of interest provision, and (7) personal injury & advertisers liability.

(ii)    Umbrella/Excess Liability in excess of Commercial General Liability, Automobile Liability and Employers' Liability coverages which is at least as broad as these underlying policies with a limit of liability of **ONE MILLION DOLLARS ($1,000,000.00)**.

(iii)    All-Risk Property (Special Cause of Loss) Insurance including, without limitation, coverage for loss or damage to the Property and Improvements by fire and other perils including windstorm, malicious mischief, building ordinance extension endorsement (including cost of demolition, increased costs of construction and the value of the undamaged portion of the building and soft costs coverage), and boiler and machinery coverage (if separate policy, that policy must include loss of rents or business interruption coverage), as specified by Lender.  The policy shall be in an amount not less than the full insurable value on a replacement cost basis of the insured Property and Improvements and personal property related thereto (without deduction for depreciation).  If the policy is a blanket policy covering the Property and Improvements and one or more other properties, the policy must specify the dollar amount of the total blanket limit of the policy that is allocated to each property, and the amount so allocated to the Property and Improvements must not be less than the full insurable value on a replacement cost basis.  Such policy shall not contain an exclusion for terrorist losses.  However, if such an exclusion exists in the All-Risk policy, a separate terrorism policy covering Certified Acts of Terrorism must be evidenced to Lender in an amount equal to the full replacement cost of the Property and Improvements, or the amount of the Loan, whichever is less.  This policy must also list Lender as mortgagee and loss payee.

(iv)    If the Property, or any part thereof, lies within a "special flood hazard area" as designated on maps prepared by the Federal Emergency Management Agency (FEMA), a National Flood Insurance Program Standard Flood Insurance Policy and/or insurance from a private insurance carrier (which may substitute for or supplement such standard flood insurance policy) in form and substance acceptable to Lender covering the Improvements and contents, if applicable, for the duration of the Loan in the amount of the full insurable value of the Improvements and contents, if applicable, or the amount of the Loan, whichever is less.

(v)    Rent loss or business interruption insurance against loss of income arising out of damage to or destruction of the Property and Improvements by fire or other peril insured against under each policy; provided, however, such insurance need not be effective prior to the time a tenant occupies the Project for the purposes of conducting business.  The amount of the policy shall be reasonably satisfactory to Lender.

(vi)      Such other insurance coverages in such amounts as Lender may require either in response to any legal or regulatory change or any internally generated set of insurance guidelines generally applicable to construction or real estate loans made or held by Lender.

(b)      **Policy Requirements; Insurance Consultant.**  All insurance policies shall (i) be issued by an insurance company licensed to do business in the state where the Project is located having a rating of "A-" VIII or better by A.M. Best Co., in Best's Rating Guide, (ii) name Lender and any and all subsidiaries and their successors and/or assigns as their interests may appear" as additional insureds on all liability insurance and as mortgagee and loss payee on all All-Risk Property, flood insurance, and rent loss or business interruption insurance, (iii) be endorsed to show that Debtor's insurance shall be primary and all insurance carried by Lender is strictly excess and secondary and shall not contribute with Debtor's insurance, (iv) provide that Lender is to receive **THIRTY (30)** days written notice prior to non-renewal or cancellation, (v) be evidenced by a certificate of insurance to be provided to Lender along with a copy of the policy for All-Risk Property coverage or such other evidence of insurance acceptable to Lender in its reasonable discretion, (vi) include either policy or binder numbers on the ACORD form, and (vii) be in form and amounts acceptable to Lender; provided, however, that with respect to any flood insurance required hereunder, acceptable proof of coverage shall not include certificates of insurance.  Lender, at its option and upon notice to Debtor, may retain, at Debtor's expense, an insurance consultant to review the insurance for the Property and Improvements to confirm that it complies with the terms and conditions set forth herein.

(c)      **Evidence of Insurance; Payment of Premiums.**  Debtor shall deliver to Lender, at least **FIVE (5)** days before the expiration of an existing policy, evidence acceptable to Lender of the continuation of the coverage of the expiring policy.  If Lender has not received satisfactory evidence of such continuation of coverage in the time frame herein specified, Lender shall have the right, but not the obligation, to purchase such insurance for Lender's interest only.  Any amounts so disbursed by Lender pursuant to this Section shall be repaid by Debtor within **TEN (10)** days after written demand therefor.  Nothing contained in this Section shall require Lender to incur any expense or take any action hereunder, and inaction by Lender shall never be considered a waiver of any right accruing to Lender on account on this Section.  The payment by Lender of any insurance premium for insurance which Debtor is obligated to provide hereunder but which Lender believes has not been paid, shall be conclusive between the parties as to the legality and amounts so paid.  Debtor agrees to pay all premiums on such insurance as they become due, and will not permit any condition to exist on or with respect to the Property which would wholly or partially invalidate any insurance thereon.

(d)      **Disclosure Relating to Collateral Protection Insurance.**  As of the date of this disclosure, Debtor and Lender have consummated a transaction pursuant to which Lender has agreed to make Loans to Debtor.  Debtor has pledged the Property to secure the Indebtedness in accordance with the Loan Documents.  This notice relates to Debtor's obligations with respect to insuring the Property against damage.  To this end, Debtor must do the following:

(i)      Keep the Property insured against damage in the amount equal to the Indebtedness or as otherwise required by the Loan Documents;

(ii)      Purchase the insurance from an insurer that is authorized to do business in Texas or an eligible surplus lines insurer;

(iii)      Name Lender the person to be paid under the policy in the event of loss; and

(iv)      Deliver to Lender a copy of the policy and proof of the payment of premiums.

Lender may obtain collateral protection insurance on behalf of Debtor at Debtor's expense if Debtor fails to meet any of the foregoing requirements.

(e)     **No Liability; Assignment**.  Lender shall not by the fact of approving, disapproving, accepting, preventing, obtaining or failing to obtain any such insurance, incur any liability for the form or legal sufficiency of insurance contracts, solvency of insurers, or payment of losses, and Debtor hereby expressly assumes full responsibility therefor and all liability, if any, thereunder.  Debtor hereby absolutely assigns and transfers to Lender all of Debtor's right, title and interest in and to any unearned premiums paid on policies and any claims thereunder and Lender shall have the right, but not the obligation, to assign any then existing claims under the same to any purchaser of the Property at any foreclosure sale; provided, however, that so long as no Default exists and is continuing hereunder, Debtor shall have the right under a license granted hereby, and Lender hereby grants to Debtor a license, to exercise rights under said policies and in and to said premiums subject to the provisions of this Agreement.  Said license shall be revoked automatically upon the occurrence and during the continuance of a Default hereunder.  In the event of a foreclosure of the Deed of Trust, or other transfer of title to the Property in extinguishment in whole or in part of the Loan, all right, title and interest of Debtor in and to the insurance policies then in force and all proceeds payable thereunder shall thereupon vest in the purchaser at such foreclosure or Lender or other transferee in the event of such other transfer of title.

(f)     **No Separate Insurance**.  Debtor shall not carry any separate insurance on the Property concurrent in kind or form with any insurance required hereunder or contributing in the event of loss without Lender's prior written consent, and any such policy shall have attached a standard non-contributing mortgagee clause, with loss payable to Lender, and shall otherwise meet all other requirements set forth herein.

(g)     **Casualty Loss**.

(i)     If all or any part of the Property shall be damaged or destroyed by fire or other casualty, Debtor shall give immediate written notice and make a claim to the insurance carrier and Lender. With respect to any such casualty loss for which Debtor has an insurance claim that exceeds **FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)**, Debtor hereby authorizes and empowers Lender, at Lender's option and in Lender's sole discretion as attorney-in-fact for Debtor, to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Lender's expenses incurred in the collection of such proceeds; provided, however, that the foregoing authorization and empowerment of Lender to act as attorney-in-fact for Debtor shall not become effective until the occurrence and during the continuance of a Default or until such time as Debtor fails to diligently pursue the collection of such insurance proceeds in Lender's opinion.  The foregoing appointment is irrevocable, coupled with an interest and continuing so long as Indebtedness remains outstanding, and such rights, powers and privileges shall be exclusive in Lender and its successors and assigns.

(ii)     As sole loss payee on all policies of casualty insurance, Lender shall receive all insurance proceeds from any casualty loss, and shall hold the same in an interest-bearing account pending disposition in accordance with this Section.  Debtor authorizes Lender to deduct from such insurance proceeds received by Lender all of Lender's costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in connection with the collection thereof (the remainder of such insurance proceeds being referred to herein as "*Net Casualty Proceeds*").

(iii)     Lender shall cause the Net Casualty Proceeds from any casualty loss affecting the Property to be disbursed for the cost of reconstruction of the Property if all of the following conditions are satisfied within **NINETY (90)** days after the applicable casualty loss: (1) Debtor satisfies Lender that the reconstruction can be completed within a reasonable period of time after such casualty loss (but in no event later than the Maturity Date (as defined in the Note) and that after giving effect to such reconstruction the Property will be restored to its condition immediately prior to the casualty loss; (2) Debtor satisfies Lender that the Net Casualty Proceeds are sufficient to pay all costs of reconstruction, and if insufficient, Debtor deposits with Lender additional funds to make up such insufficiency; (3) Debtor delivers to Lender all plans and specifications and construction contracts for the work of reconstruction and such plans and specifications and construction contracts are in form and content reasonably acceptable to Lender and with a contractor acceptable to Lender; and (4) Debtor delivers to Lender satisfactory evidence that upon

completion of the reconstruction, the leases of the Property will remain in full force and effect.  The disbursement of Net Casualty Proceeds pursuant to this clause shall be in accordance with customary disbursement procedures and shall not be available during the continuance of a Default. Any Net Casualty Proceeds not required to reconstruct the Property shall be delivered to Debtor after expiration of the lien period for the work of reconstruction (or, at Debtor's option, after delivery of title insurance to Lender over such liens where the lien period has not so expired).  Upon the occurrence and during the continuance of a Default or in the event Debtor is unable to satisfy the conditions set forth in subclauses (1) through (4) hereof by the required date, Lender shall have the right (but not the obligation) to apply all Net Casualty Proceeds held by it to the payment of the Indebtedness. Debtor shall have the obligation to promptly and diligently complete the work of reconstruction necessitated by any casualty loss and restore the Property to the equivalent of its condition immediately prior to such casualty provided the applicable Net Casualty Proceeds are made available to Debtor for such purpose.

(h) **Condemnation and Other Awards**.  Immediately upon receiving written notice of the institution or threatened institution of any proceeding for the condemnation of the Property or any part thereof, Debtor shall notify Lender of such fact.  Debtor shall then file or defend its rights thereunder and prosecute the same with due diligence to its final disposition; provided, however, that Debtor shall not enter into any settlement of such proceeding without the prior approval of Lender.  Lender shall be entitled, at its option, to appear in any such proceeding in its own name, and upon the occurrence and during the continuation of a Default or if Debtor fails to diligently prosecute such proceeding, (i) Lender shall be entitled, at its option, to appear in and prosecute any such proceeding or to make any compromise or settlement in connection with such condemnation on behalf of Debtor, and (ii) Debtor hereby irrevocably constitutes and appoints Lender as its attorney-in-fact, and such appointment is coupled with an interest, to commence, appear in and prosecute such action or proceeding or to make such compromise or settlement in connection with any such condemnation on its behalf.  The foregoing appointment is irrevocable and continuing so long as the Indebtedness remains outstanding, and such rights, powers and privileges shall be exclusive in Lender, its successors and assigns.  If the Property or any material part thereof is taken or materially diminished in value in connection with such condemnation, or if a consent settlement is entered, by or under threat of such proceeding, the award or settlement payable to Debtor by virtue of its interest in the Property, shall be, and by these presents is, assigned, transferred and set over unto Lender.  Any such award or settlement shall be first applied to reimburse Lender for all costs and expenses, including reasonable attorneys' fees, incurred in connection with the collection of such award or settlement.  The balance of such award or settlement (the "_Net Condemnation Proceeds_") shall be paid to Lender for application in the manner set forth in Section 10(g) as if such award or settlement constituted insurance proceeds from a casualty loss; provided, however, that Lender shall have no obligation to make Net Condemnation Proceeds available for construction or reconstruction of the Property unless Lender has determined that the Property as so constructed or reconstructed after giving effect to the condemnation would have a value that is no less than its value would have been had there been no such condemnation.  Debtor shall have the obligation to promptly and diligently complete the work of reconstruction necessitated by any condemnation and restore the Property to the equivalent of its condition immediately prior to such condemnation (or if the initial construction of the Improvements is not substantially complete at the time of such condemnation, continue the construction of the Improvements in accordance with the terms hereof) provided the applicable Net Condemnation Proceeds are made available to Debtor for such purpose.

11. **Rights of Lender**.  Lender shall have the rights contained in this Section at all times that this Agreement is effective.

(a) **Financing Statements**.  Debtor hereby authorizes Lender to file one or more financing or continuation statements, and amendments thereto, relating to the Collateral.  Debtor hereby irrevocably authorizes Lender at any time and from time to time to file in any UCC jurisdiction any initial financing statements and amendments thereto that (i) indicate the Collateral (1) as all assets of Debtor or words of similar effect; regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the UCC, or (2) as being of an equal or lesser scope or with greater detail, and (ii) contain any other information required by Article 9 of the UCC for the sufficiency or filing office acceptance of

any financing statement or amendment. Debtor hereby ratifies any pre-filed financing statement relating to the Collateral made by or on behalf of Lender.

(b)     **Power of Attorney**. Debtor hereby irrevocably appoints Lender as Debtor's attorney-in-fact, such power of attorney being coupled with an interest, with full authority in the place and stead of Debtor and in the name of Debtor or otherwise, from time to time following the occurrence and during the continuation of an Event of Default in Lender's Permitted Discretion, to take any action and to execute any instrument which Lender may deem necessary or appropriate to accomplish the purposes of this Agreement, including without limitation: (i) to obtain and adjust insurance required by Lender hereunder; (ii) to demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of the Collateral; (iii) to receive, endorse and collect any drafts or other instruments, documents and chattel paper in connection with clause (i) or (ii) above; (iv) to file any claims or take any action or institute any proceedings which Lender may deem necessary or appropriate for the collection and/or preservation of the Collateral or otherwise to enforce the rights of Lender with respect to the Collateral; and (v) to act on Debtor's behalf as permitted by any other Loan Document.

(c)     **Performance by Lender**. If any Obligor shall fail to perform any covenant or agreement contained in any of the Loan Documents, then Lender may perform or attempt to perform such covenant or agreement on behalf of such Obligor. In such event, Debtor shall, at the request of Lender, promptly pay to Lender on demand any reasonable amount expended by Lender in connection with such performance or attempted performance, together with interest thereon at the Maximum Rate (as such term is defined in the Note) from and including the date of such expenditure to but excluding the date such expenditure is paid in full. Notwithstanding the foregoing, it is expressly agreed that Lender shall not have any liability or responsibility for the performance of any covenant, agreement, or other obligation of any Obligor under this Agreement or any other Loan Document.

(d)     **Debtor's Receipt of Proceeds**. Upon the occurrence and during the continuation of an Event of Default, all amounts and proceeds (including instruments and writings) received by Debtor in respect of the Collateral shall be received in trust for the benefit of Lender hereunder and, upon the written request of Lender, shall be segregated from other property of Debtor and shall be forthwith delivered to Lender in the same form as so received (with any necessary endorsement) and applied to the Indebtedness in accordance with the Loan Documents.

(e)     **Notification of Account Debtors**. Lender may at its Permitted Discretion from time to time during the continuation of an Event of Default notify any or all obligors under any accounts (i) of Lender's security interest in such accounts or general intangibles and direct such obligors to make payment of all amounts due or to become due to Debtor thereunder directly to Lender, and (ii) to verify the accounts with such obligors. Lender shall have the right, at the expense of Debtor, to enforce collection of any such accounts and to adjust, settle or compromise the amount or payment thereof, in the same manner and to the same extent as Debtor.

12.     **Events of Default**. Each of the following shall constitute an "*Event of Default*" under this Agreement:

(a)     **Payment Default**. The failure, refusal or neglect of Debtor to pay when due any part of the principal of, or interest on the Indebtedness owing to Lender by Debtor or any other indebtedness or obligations due and owing from Debtor to Lender under the Loan Documents from time to time within **FIVE (5)** days after Debtor's receipt of written notice thereof from Lender, provided such notice shall not be required if already given twice within the preceding **TWELVE (12)** month period.

(b)     **Performance or Warranty Default**. Except as otherwise provided in this Agreement, the failure of any Obligor to timely and properly observe, keep or perform any covenant, agreement, warranty or condition required herein or in any of the other Loan Documents or any other agreement with Lender, provided that, if such Default is curable but is not cured within **TEN (10)** calendar days following written notice from Lender to such Obligor, then it shall be an Event of Default, except that, if (i) such curable Default cannot be cured within **TEN (10)** calendar days, (ii) such Obligor has, within such period,

taken such actions as deemed reasonably necessary and appropriate by Lender to cure such curable Default, and (iii) such Obligor shall continue to diligently pursue such actions, then such cure period shall be extended for a period of **FORTY-FIVE (45)** days.

(c)     **Representations**. Any representation contained herein or in any of the other Loan Documents made by an Obligor is false, misleading or erroneous in any material respect when made or when deemed to have been made.

(d)     **Other Debt**. The occurrence of any event which results in the **ACCELERATION** of the maturity of any Debt for borrowed money in an aggregate principal amount in excess of (i) **ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00)** owing by Debtor, or (ii) **TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($200,000.00)** by any other Obligor, in either case, to any third party under any agreement or understanding.

(e)     **Insolvency**. If any Obligor (i) becomes insolvent, or makes a transfer in fraud of creditors, or makes an assignment for the benefit of creditors, or admits in writing its inability to pay its debts as they become due; (ii) generally is not paying its debts as such debts become due; (iii) has a receiver, trustee or custodian appointed for, or take possession of, all or substantially all of its assets, either in a proceeding brought by it or in a proceeding brought against it and such appointment is not discharged or such possession is not terminated within **SIXTY (60)** days after the effective date thereof or it consents to or acquiesces in such appointment or possession; (iv) files a petition for relief under the United States Bankruptcy Code or any other present or future federal or state insolvency, Bankruptcy or similar laws (all of the foregoing hereinafter collectively called "*Applicable Bankruptcy Law*") or an involuntary petition for relief is filed against it under any Applicable Bankruptcy Law and such involuntary petition is not dismissed within **SIXTY (60)** days after the filing thereof, or an order for relief naming it is entered under any Applicable Bankruptcy Law, or any composition, rearrangement, extension, reorganization or other relief of debtors now or hereafter existing is requested or consented to by it; or (v) fails to have discharged within a period of **SIXTY (60)** days any attachment, sequestration or similar writ levied upon any property of it.

(f)     **Judgment**. The entry of any judgment against any Obligor or the issuance or entry of any attachments or other Liens against any of the property of such Obligor for an amount in excess of **ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00)** (individually or in the aggregate) if uninsured, undischarged, unbonded or undismissed on the date on which such judgment would be executed upon.

(g)     **Action Against Collateral**. The Collateral or any portion thereof is taken on execution or other process of law in any action.

(h)     **Change in Control**. (i) Guarantor shall cease to be active in the management of Debtor, or (ii) more than **TWENTY PERCENT (20.00%)** of the record or beneficial ownership of Debtor shall have been transferred, assigned or hypothecated to any Person, when compared to such ownership as of the Effective Date.

(i)     **ERISA Default**. Any of the following events shall occur or exist with respect to Debtor or any ERISA Affiliate: (i) any prohibited transaction involving any plan; (ii) any reportable event with respect to any plan; (iii) the filing under Section 4041 of ERISA of a notice of intent to terminate any plan or the termination of any plan; (iv) any event or circumstance that might constitute grounds entitling the PBGC to institute proceedings under Section 4042 of ERISA for the termination of, or for the appointment of a trustee to administer, any plan, or the institution by the PBGC of any such proceedings; or (v) complete or partial withdrawal under Section 4201 or 4204 of ERISA from a multiemployer plan or the reorganization, insolvency, or termination of any multiemployer plan; and in each case above, such event or condition, together with all other events or conditions, if any, have subjected to or would in the reasonable opinion of Lender subject Debtor to any tax, penalty, or other liability to a plan, a multiemployer plan, the PBGC, or otherwise (or any combination thereof) which in the aggregate exceed or would reasonably be expected to exceed **ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00)**.

(j)      **Death or Incompetence of an Obligor; Dissolution of Certain Person**.  Any Obligor that is (i) a natural Person shall have died or have been declared incompetent by a court of proper jurisdiction, or (ii) not a natural Person shall have been dissolved, liquidated, or merged or consolidated with or into any other Person without the prior written consent of Lender; provided, however, the death or legal incapacity of any Obligor that is a natural person shall not be an Event of Default if, within **FORTY-FIVE (45)** days of the date of such death or incapacity,(1) the representative or legal guardian of such Obligor or Obligor's estate affirms in writing (which instrument shall be in form and substance satisfactory to Lender) (A) the obligations of such Obligor's estate pursuant to the Loan Documents, and (B) that no distributions shall be made from such estate without the prior written consent of Lender, or (2) a substitute guarantor acceptable to Lender in its sole discretion has executed and delivered to Lender a Guaranty of the Indebtedness in form and substance acceptable to Lender.

(k)      **Action of Lien Holder**.  The holder of any Lien or security interest on the Collateral (without hereby implying the consent of Lender to the existence or creation of any such Lien or security interest on the Collateral), declares a default thereunder or institutes foreclosure or other proceedings for the enforcement of its remedies thereunder.

(l)      **Intentionally Deleted**.

(m)      **Material Adverse Effect**.  Any event shall have occurred or is continuing which shall have had a Material Adverse Effect.

(n)      **Encumbrance**.  Without the prior written consent of Lender, Debtor grants any easement or dedication, files any plat, condominium declaration, or restriction, or otherwise encumbers the Property, unless such action is expressly permitted by the Loan Documents.

(o)      **Transfer of the Property**.  Title to all or any part of the Property (other than obsolete or worn personal property replaced by adequate substitutes of equal or greater value than the replaced items when new) shall become vested in any party other than Debtor or a permitted assignee, whether by operation of law or otherwise.

(p)      **Abandonment**.  Debtor abandons or vacates any of the Property.

(q)      **Deterioration**.  Lender reasonably determines that the condition of the Property has materially deteriorated, and Debtor fails to restore said Property to good operating condition within the time periods and in the manner described in Section 12(b).

(r)      **Loan Documents**.  (i) The Loan Documents shall at any time after their execution and delivery and for any reason cease (1) to create a valid and perfected first priority security interest (subject to Permitted Encumbrances) in and to the Collateral; or (2) to be in full force and effect or shall be declared null and void, or (ii) the validity or enforceability of the Loan Documents shall be contested by any Obligor or any other Person party thereto or any Obligor shall deny it has any further liability or obligation under the Loan Documents.

(s)      **Financial Covenants**.  The violation of any financial covenant set forth in Section 8.

Nothing contained in this Agreement shall be construed to limit the events of default enumerated in any of the other Loan Documents and all such events of default shall be cumulative.

13.      **Remedies and Related Rights**.  If an Event of Default shall have occurred and be continuing, and without limiting any other rights and remedies provided herein, under any of the Loan Documents or otherwise available to Lender, Lender may exercise one or more of the rights and remedies provided in this Section.

(a)      **Remedies**.  Upon the occurrence of any one or more of the foregoing Events of Default, the entire unpaid balance of principal of the Note, together with all accrued but unpaid interest thereon, and

all other Indebtedness owing to Lender by Debtor at such time shall, at the option of Lender, become immediately due and payable without further notice, demand, presentation, notice of dishonor, notice of intent to accelerate, notice of acceleration, protest or notice of protest of any kind, all of which are expressly waived by Debtor, the Indebtedness at such time shall, without any action by Lender, become due and payable, without further notice, demand, presentation, notice of dishonor, notice of acceleration, notice of intent to accelerate, protest or notice of protest of any kind, all of which are expressly waived by Debtor. All rights and remedies of Lender set forth in this Agreement and in any of the other Loan Documents may also be exercised by Lender, at its option to be exercised in its sole discretion, upon the occurrence of an Event of Default, and not in substitution or diminution of any rights now or hereafter held by Lender under the terms of any other agreement.

(b)   **Other Remedies**.  Upon the occurrence of any one or more of the foregoing Events of Default, Lender may from time to time at its discretion, without limitation and without notice except as expressly provided in any of the Loan Documents:

(i)   Exercise in respect of the Collateral all the rights and remedies of a secured party under the UCC (whether or not the UCC applies to the affected Collateral);

(ii)   Require Debtor to, and Debtor hereby agrees that it will at its expense and upon request of Lender, assemble the Collateral as directed by Lender and make it available to Lender at a place to be designated by Lender which is reasonably convenient to both parties;

(iii)   Reduce its claim to judgment or foreclose or otherwise enforce, in whole or in part, the security interest granted hereunder by any available judicial procedure;

(iv)   Sell or otherwise dispose of, at its office, on the premises of Debtor or elsewhere, the Collateral, as a unit or in parcels, by public proceedings, and by way of one or more contracts (it being agreed that the sale or other disposition of any part of the Collateral shall not exhaust Lender's power of sale, but sales or other dispositions may be made from time to time until all of the Collateral has been sold or disposed of or until the Indebtedness has been paid and performed in full), and at any such sale or other disposition it shall not be necessary to exhibit any of the Collateral;

(v)   Buy the Collateral, or any portion thereof, at any public sale;

(vi)   Intentionally Deleted.

(vii)   Apply for the appointment of a receiver for the Collateral, and Debtor hereby consents to any such appointment; and

(viii)   At its option, retain the Collateral in satisfaction of the Indebtedness whenever the circumstances are such that Lender is entitled to do so under the UCC or otherwise.

Debtor agrees that in the event Debtor is entitled to receive any notice under the UCC, as it exists in the state governing any such notice, of the sale or other disposition of any Collateral, reasonable notice shall be deemed given when such notice is deposited in a depository receptacle under the care and custody of the United States Postal Service, postage prepaid, at Debtor's address set forth on the signature page hereof, **TEN (10)** days prior to the date of any public sale of any of such Collateral is to be held.  Lender shall not be obligated to make any sale of Collateral regardless of notice of sale having been given.  Lender may adjourn any public sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

(c)   **Application of Proceeds**.  If any Event of Default shall have occurred and is continuing, Lender may at its sole discretion apply or use any cash held by Lender as Collateral, and any cash proceeds received by Lender in respect of any sale or other disposition of, collection from, or other realization upon, all or any part of the Collateral as follows in such order and manner as Lender may elect:

LOAN AND SECURITY AGREEMENT – PAGE 24
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

(i)      to the repayment or reimbursement of the reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Lender in connection with (1) the administration of the Loan Documents, (2) the custody, preservation, use or operation of, or the sale of, collection from, or other realization upon, the Collateral, and (3) the exercise or enforcement of any of the rights and remedies of Lender hereunder;

(ii)     to the payment or other satisfaction of any Liens and other encumbrances upon the Collateral;

(iii)    to the satisfaction of the Indebtedness;

(iv)    by holding such cash and proceeds as Collateral;

(v)     to the payment of any other amounts required by applicable law; and

(vi)    by delivery to Debtor or any other party lawfully entitled to receive such cash or proceeds whether by direction of a court of competent jurisdiction or otherwise.

(d)    **Use and Operation of Collateral**.  Should any Collateral come into the possession of Lender, Lender may use or operate such Collateral for the purpose of preserving it or its value, pursuant to the order of a court of appropriate jurisdiction or in accordance with any other rights held by Lender in respect of such Collateral.  Debtor covenants to promptly reimburse and pay to Lender, at Lender's request, the amount of all  expenses (including the cost of any insurance and payment of taxes or other charges) incurred by Lender in connection with its custody and preservation of the Collateral, shall be payable by Debtor to Lender upon demand and shall become part of the Indebtedness. However, the risk of accidental loss or damage to, or diminution in value of, the Collateral is on Debtor, and Lender shall have no liability whatever for failure to obtain or maintain insurance, nor to determine whether any insurance ever in force is adequate as to amount or as to the risks insured. With respect to the Collateral that is in the possession of Lender, Lender shall have no duty to fix or preserve rights against prior parties to such Collateral and shall never be liable for any failure to use diligence to collect any amount payable in respect of such Collateral, but shall be liable only to account to Debtor for what it may actually collect or receive thereon.

(e)    **Deficiency**.  In the event that the proceeds of any sale of, collection from, or other realization upon, all or any part of the Collateral by Lender are insufficient to pay all amounts to which Lender is legally entitled, each Obligor (unless otherwise provided) shall be liable for the deficiency, together with interest thereon as provided in the Loan Documents.

(f)    **Non-Judicial Remedies**.  In granting to Lender the power to enforce its rights hereunder without prior judicial process or judicial hearing, each Obligor expressly waives, renounces and knowingly relinquishes any legal right which might otherwise require Lender to enforce its rights by judicial process. Each Obligor recognizes and concedes that non-judicial remedies are consistent with the usage of trade, are responsive to commercial necessity and are the result of a bargain at arm's length.

(g)    **Use and Possession of Certain Premises**.  Upon the occurrence of an Event of Default, Lender shall be entitled to occupy and use any premises owned or leased by Debtor where any of the Collateral or any records relating to the Collateral are located until the Indebtedness is paid or the Collateral is removed therefrom, whichever first occurs, without any obligation to pay Debtor for such use and occupancy.

(h)    **Other Recourse**.  Each Obligor waives any right to require Lender to proceed against any third party, exhaust any Collateral or other security for the Indebtedness, or to have any third party joined with Debtor in any suit arising out of the Indebtedness or any of the Loan Documents, or pursue any other remedy available to Lender.  Each Obligor further waives any and all notice of acceptance of this Agreement and of the creation, modification, rearrangement, renewal or extension of the Indebtedness. Each Obligor further waives any defense arising by reason of any disability or other defense of any third

party or by reason of the cessation from any cause whatsoever of the liability of any third party. Until all of the Indebtedness shall have been paid in full, Obligor shall have no right of subrogation and each Obligor waives the right to enforce any remedy which Lender has or may hereafter have against any third party, and waives any benefit of and any right to participate in any other security whatsoever now or hereafter held by Lender. Each Obligor authorizes Lender, and without notice or demand and without any reservation of rights against such Obligor and without affecting such Obligor's liability hereunder or on the Indebtedness to (i) take or hold any other property of any type from any third party as security for the Indebtedness, and exchange, enforce, waive and release any or all of such other property, (ii) apply such other property and direct the order or manner of sale thereof as Lender may in its Permitted Discretion determine, (iii) renew, extend, accelerate, modify, compromise, settle or release any of the Indebtedness or other security for the Indebtedness, (iv) waive, enforce or modify any of the provisions of any of the Loan Documents executed by any third party, and (v) release or substitute any third party.

(i)  **No Waiver; Cumulative Remedies.**  No failure on the part of Lender to exercise and no delay in exercising, and no course of dealing with respect to, any right, power, or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege under this Agreement preclude any other or further exercise thereof or the exercise of any other right, power, or privilege. The rights and remedies provided for in this Agreement and the other Loan Documents are cumulative and not exclusive of any rights and remedies provided by law.

(j)  **Equitable Relief.**  Each Obligor recognizes that in the event Debtor fails to pay, perform, observe, or discharge any or all of the Indebtedness, any remedy at law may prove to be inadequate relief to Lender. Each Obligor therefore agrees that Lender, if Lender so requests, shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages.

(k)  **HVCRE Compliance.**  If at any time, in the reasonable determination of Lender, Debtor fails to be in full compliance with Section 7(hh) hereof, Debtor shall immediately take such actions as may be necessary or desirable to cause Debtor to be in compliance with such section, including without limitation obtaining additional equity. If Debtor fails to take such action or remedy such failure, then, in addition to any other rights and remedies Lender may have, Lender may take such actions as are necessary or desirable to bring Debtor and the Property into compliance with Section 7(hh), including without limitation increasing the interest rate on the Loan and/or reducing the maximum outstanding principal balance of the Loan.

For purposes of this Section, "*Collateral*" means any part of the Property that is covered by the scope of Article 9 of the UCC.

14.  **Cross-Collateralization and Cross-Default.**  Obligor and Lender contemplate that Obligor and Lender have engaged or may, from time to time, engage in various loan transactions and that from time to time other circumstances may arise, in which an Obligor becomes obligated to Lender, including transactions of a type that are very different from the transactions evidenced by the Loan Documents, including by notes, advances, overdrafts, bookkeeping entries, guaranty agreements, deeds of trust, or any other method or means (each a "*Loan Obligation*"). Unless otherwise agreed in writing, Obligor and Lender agree that all such transactions will be secured by the Collateral, and that the Indebtedness arising under this Agreement and the other Loan Documents will be secured by any collateral granted in connection with such Loan Obligation. Repayment of all Indebtedness and performance of all other obligations under this Agreement by an Obligor shall not terminate Lender's security interests in the Collateral, unless Lender executes a written release. Unless otherwise agreed in writing, if any default occurs under any Loan Obligation, then Lender may declare an Event of Default hereunder and an Event of Default hereunder shall be a default under such Loan Obligation. Lender's failure to exercise its right of cross-default shall not constitute a waiver by Lender of such right.

15.  **Indemnity.**  EACH OBLIGOR SHALL INDEMNIFY LENDER AND EACH AFFILIATE THEREOF AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, AND AGENTS (EACH, AN "*INDEMNIFIED PERSON*") FROM, AND HOLD EACH OF THEM HARMLESS AGAINST, ANY AND ALL LOSSES, LIABILITIES, CLAIMS, DAMAGES, PENALTIES, JUDGMENTS, DISBURSEMENTS, COSTS, AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) TO

LOAN AND SECURITY AGREEMENT – PAGE 26
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

WHICH ANY OF THEM MAY BECOME SUBJECT WHICH DIRECTLY OR INDIRECTLY ARISE FROM OR RELATE TO (a) THE NEGOTIATION, EXECUTION, DELIVERY, PERFORMANCE, ADMINISTRATION, OR ENFORCEMENT OF ANY OF THE LOAN DOCUMENTS, (b) ANY OF THE TRANSACTIONS CONTEMPLATED BY THE LOAN DOCUMENTS, (c) ANY BREACH BY ANY OBLIGOR OF ANY REPRESENTATION, WARRANTY, COVENANT, OR OTHER AGREEMENT CONTAINED IN ANY OF THE LOAN DOCUMENTS, (d) THE PRESENCE, RELEASE, THREATENED RELEASE, DISPOSAL, REMOVAL, OR CLEANUP OF ANY HAZARDOUS MATERIAL LOCATED ON, ABOUT, WITHIN, OR AFFECTING ANY OF THE PROPERTIES OR ASSETS OF DEBTOR OR ANY OF ITS SUBSIDIARIES OR ANY OTHER OBLIGATED PARTY, OR (e) ANY INVESTIGATION, LITIGATION, OR OTHER PROCEEDING, INCLUDING, WITHOUT LIMITATION, ANY THREATENED INVESTIGATION, LITIGATION, OR OTHER PROCEEDING, RELATING TO ANY OF THE FOREGOING. WITHOUT LIMITING ANY PROVISION OF THIS AGREEMENT OR OF ANY OTHER LOAN DOCUMENT, IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT EACH INDEMNIFIED PERSON TO BE INDEMNIFIED UNDER THIS SECTION SHALL BE INDEMNIFIED FROM AND HELD HARMLESS AGAINST ANY AND ALL LOSSES, LIABILITIES, CLAIMS, DAMAGES, PENALTIES, JUDGMENTS, DISBURSEMENTS, COSTS, AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) ARISING OUT OF OR RESULTING FROM THE SOLE CONTRIBUTORY OR ORDINARY NEGLIGENCE OF SUCH PERSON. THE INDEMNIFICATION PROVIDED FOR IN THIS SECTION SHALL NOT EXTEND TO LOSSES, LIABILITIES, CLAIMS, DAMAGES, PENALTIES, JUDGMENTS, DISBURSEMENTS, COSTS, AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) ARISING OUT OF OR RESULTING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH PERSON. EACH OBLIGOR AGREES THAT THE PROVISIONS OF THIS SECTION ARE A <u>MATERIAL INDUCEMENT</u> TO LENDER'S AGREEMENT TO ENTER INTO THE TRANSACTIONS CONTEMPLATED BY THE LOAN DOCUMENTS. If any Obligor or any third party ever alleges such gross negligence or willful misconduct by any Indemnified Person, the indemnification provided for in this Section shall nonetheless be paid upon demand, subject to later adjustment or reimbursement, until such time as (a) a court of competent jurisdiction enters a final judgment as to the extent and effect of the alleged gross negligence or willful misconduct, or (b) Lender has expressly agreed in writing with such Obligor that such claim is proximately caused by such Indemnified Person's gross negligence or willful misconduct. The indemnification provided for in this Section shall survive the termination of this Agreement and shall extend and continue to benefit each individual or entity that is or has at any time been an Indemnified Person hereunder.

16.     **Limitation of Liability**. Neither Lender nor any officer, director, employee, attorney, or agent of Lender shall have any liability with respect to, and each Obligor hereby waives, releases, and agrees not to sue any of them upon, any claim for any special, indirect, incidental, or consequential damages suffered or incurred by any Obligor in connection with, arising out of, or in any way related to, this Agreement or any of the other Loan Documents, or any of the transactions contemplated by this Agreement or any of the other Loan Documents. Each Obligor hereby waives, releases, and agrees not to sue Lender or any of Lender's Affiliates, officers, directors, employees, attorneys, or agents for punitive damages in respect of any claim in connection with, arising out of, or in any way related to, this Agreement or any of the other Loan Documents, or any of the transactions contemplated by this Agreement or any of the other Loan Documents. **EACH OBLIGOR AGREES THAT THE PROVISIONS OF THIS SECTION ARE A <u>MATERIAL INDUCEMENT</u> TO LENDER'S AGREEMENT TO ENTER INTO THE TRANSACTIONS CONTEMPLATED BY THE LOAN DOCUMENTS.**

17.     **No Duty**. All attorneys, accountants, appraisers, and other professional Persons and consultants retained by Lender shall have the right to act exclusively in the interest of Lender and shall have no duty of disclosure, duty of loyalty, duty of care, or other duty or obligation of any type or nature whatsoever to any Obligor or any of any Obligor's equity holders or any other Person. Documents in connection with the transactions contemplated hereunder have been prepared by Lender's Counsel. Each Obligor acknowledges and understands that Lender's Counsel is acting solely as counsel to Lender in connection with the transaction contemplated herein, is not representing such Obligor in connection therewith, and has not, in any manner, undertaken to assist or render legal advice to any Obligor with respect to this transaction. Each Obligor has been advised to seek other legal counsel to represent each Obligor's interests in connection with the transactions contemplated herein.

18.     **Lender not Fiduciary**. The relationship between Obligor and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with any Obligor, and no term or condition of any of the Loan Documents shall be construed so as to deem the relationship between any Obligor and Lender to be other than that of debtor and creditor.

19.     **Waiver and Agreement**.  No waiver of any provision in this Agreement or in any of the other Loan Documents and no departure by any Obligor therefrom shall be effective unless the same shall be in writing and signed by Lender, and then shall be effective only in the specific instance and for the purpose for which given and to the extent specified in such writing.  No modification or amendment to this Agreement or to any of the other Loan Documents shall be valid or effective unless the same is signed by the party against whom it is sought to be enforced.

20.     **Benefits**.  This Agreement shall be binding upon and inure to the benefit of Lender and Obligors, and their respective heirs, personal representatives, successors and assigns, provided, however, that no Obligor may, without the prior written consent of Lender, assign any rights, powers, duties or obligations under this Agreement or any of the other Loan Documents.

21.     **Notices**.  All notices or other communications required or permitted to be given pursuant to this Agreement or the other Loan Documents (unless otherwise expressly stated therein) shall be in writing and shall be considered as properly given if (a) mailed by first class United States mail, postage prepaid, registered or certified with return receipt requested, (b) by delivering same in person to the intended addressee, or (c) by delivery to an independent third party commercial delivery service for same day or next day delivery and providing for evidence of receipt at the office of the intended addressee.  Notice so mailed shall be effective upon its deposit with the United States Postal Service or any successor thereto; notice sent by such a commercial delivery service shall be effective upon delivery to such commercial delivery service; notice given by personal delivery shall be effective only if and when received by the addressee; and notice given by other means shall be effective only if and when received at the office or designated place or machine of the intended addressee. For purposes of notice, the addresses of the parties shall be as set forth herein; provided, however, that any party shall have the right to change its address for notice hereunder to any other location within the continental United States by the giving notice to the other parties in the manner set forth herein.

22.     **Construction; Venue; Service of Process**.  **THE LOAN DOCUMENTS HAVE BEEN EXECUTED AND DELIVERED IN THE STATE OF TEXAS, SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, AND SHALL BE PERFORMABLE BY THE PARTIES HERETO IN THE COUNTY IN TEXAS WHERE LENDER'S ADDRESS SET FORTH ON LENDER'S SIGNATURE PAGE HEREOF IS LOCATED (THE "_VENUE SITE_").   ANY ACTION OR PROCEEDING AGAINST ANY PARTY HERETO UNDER OR IN CONNECTION WITH ANY OF THE LOAN DOCUMENTS SHALL BE BROUGHT IN ANY STATE OR FEDERAL COURT WITHIN THE VENUE SITE.   EACH PARTY HERETO IRREVOCABLY (A) SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF SUCH COURTS, AND (B) WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT OR THAT ANY SUCH COURT IS AN INCONVENIENT FORUM.  EACH PARTY HERETO AGREES THAT SERVICE OF PROCESS UPON IT MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, AT ITS ADDRESS SPECIFIED OR DETERMINED IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT.  NOTHING IN ANY OF THE OTHER LOAN DOCUMENTS SHALL AFFECT THE RIGHT OF LENDER TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR SHALL LIMIT THE RIGHT OF LENDER TO BRING ANY ACTION OR PROCEEDING AGAINST ANY OBLIGOR OR WITH RESPECT TO ANY OF ITS PROPERTY IN COURTS IN OTHER JURISDICTIONS.**

23.     **Invalid Provisions**.  If any provision of the Loan Documents is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable and the remaining provisions of the Loan Documents shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance.

24.     **Expenses**.  Debtor shall pay all reasonable costs and expenses (including, without limitation, reasonable attorneys' fees) in connection with (a) the drafting and execution of the Loan Documents and the transactions contemplated therein, (b) any action required in the course of administration of the Indebtedness and obligations evidenced by the Loan Documents, and (c) any action in the enforcement of Lender's rights upon the occurrence of an Event of Default.

25.     **Sale, Pledge or Participation of the Loan**.  Each Obligor agrees that Lender may, at its option, sell, pledge or participate its interests in the Loan and its rights under this Agreement to a financial institution or institutions and, in connection with each such sale, pledge or participation Lender may disclose any financial and other information available to Lender concerning any Obligor to any Person party to such transaction subject to obtaining a confidentiality agreement with each such Person prior to disclosing such Obligor's confidential information.

26.     **Conflicts**.  Except as otherwise expressly provided in the Note, in the event any term or provision of this Agreement is inconsistent with or conflicts with any provision of the other Loan Documents, the terms and provisions contained in this Agreement shall be controlling.

27.     **Counterparts**.  The Loan Documents may be separately executed in any number of counterparts, each of which shall be an original, but all of which, taken together, shall be deemed to constitute one and the same instrument.

28.     **Survival**.  All representations and warranties made in the Loan Documents or in any document, statement, or certificate furnished in connection with this Agreement shall survive the execution and delivery of the Loan Documents, and no investigation by Lender or any closing shall affect the representations and warranties or the right of Lender to rely upon them.

29.     **Construction**.  Each Obligor and Lender acknowledge that they had the opportunity to consult with legal counsel of its own choice and has been afforded an opportunity to review this Agreement and the other Loan Documents with its legal counsel of its own choice and that this Agreement and the other Loan Documents shall be construed as if jointly drafted by each Obligor and Lender.

30.     **Independence of Covenants**.  All covenants hereunder shall be given independent effect so that if a particular action or condition is not permitted by any of such covenants, the fact that it would be permitted by an exception to, or be otherwise within the limitations of, another covenant shall not avoid the occurrence of an Event of Default if such action is taken or such condition exists.

31.     **Waiver Of Jury Trial**.  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EACH OBLIGOR AND LENDER HEREBY IRREVOCABLY AND EXPRESSLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY OR THE ACTIONS OF ANY PARTY IN THE NEGOTIATION, ADMINISTRATION, OR ENFORCEMENT THEREOF.  EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

32.     **Patriot Act Notice**.  Lender hereby notifies each Obligor that pursuant to the requirements of Section 326 of the USA Patriot Act of 2001, 31 U.S.C. § 5318 (the "*Act*"), it is required to obtain, verify and record information that identifies each Obligor, which information includes the name and address of Obligor and other information that will allow Lender to identify each Obligor in accordance with the Act.  In addition, Debtor agrees to (a) ensure that no Person who owns a controlling interest in or otherwise controls Debtor or any Subsidiary of Debtor is or shall be listed on the Specially Designated Nationals and Blocked Person List or other similar lists

LOAN AND SECURITY AGREEMENT – PAGE 29
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

maintained by the OFAC, the Department of the Treasury or included in any Executive Order, (b) not to use or permit the use of proceeds of the Loan to violate any of the foreign asset control regulations of the OFAC or any enabling statute or Executive Order relating thereto, and (c) comply, or cause its Subsidiaries to comply, with the applicable laws.

33.     **Notice of Right to Receive a Copy of Appraisal**.  If the Indebtedness is secured by a Lien in real property, Debtor has a right to receive a copy of the appraisal report used in connection with the Loan.  If Debtor would like to receive a copy, Debtor must contact Lender at the address set forth herein and request a copy of the appraisal report.  Lender must receive such a request from Debtor no later than **NINETY (90)** days after the Effective Date.

34.     **Regulation B—Notice of Joint Intent**.  If Obligor is more than one Person, Federal Regulation B (Equal Credit Opportunity Act) requires Lender to obtain evidence of each Obligor's intention to apply for joint credit.  Each Obligor's signature below shall evidence such intent.  Each Obligor's intent shall apply to future related extensions of joint credit and joint guaranty.

35.     **Notice of Balloon Payment**.  At maturity (whether by acceleration or otherwise), Debtor must repay the entire principal balance of Loan and unpaid interest then due.  Lender is under no obligation to refinance the outstanding principal balance of Loan (if any) at that time.  Debtor will, therefore, be required to make payment out of other assets Debtor may own; or Debtor will have to find a lender willing to lend Debtor the money at prevailing market rates, which may be higher than the interest rate on the outstanding principal balance of the Loan. If Obligors have guaranteed payment of the Loan, Obligors may be required to perform under such guaranty.

36.     **Additional Interest Provision**.  It is expressly stipulated and agreed to be the intent of Debtor and Lender at all times to comply strictly with the applicable law governing the maximum rate or amount of interest payable on the indebtedness evidenced by any Note, any Loan Document, and the Related Indebtedness (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under applicable law).  If the applicable law is ever judicially interpreted so as to render usurious any amount (a) contracted for, charged, taken, reserved or received pursuant to any Note, any of the other Loan Documents or any other communication or writing by or between Debtor and Lender related to the transaction or transactions that are the subject matter of the Loan Documents, (b) contracted for, charged, taken, reserved or received by reason of Lender's exercise of the option to accelerate the maturity of any Note and/or any and all indebtedness paid or payable by Debtor to Lender pursuant to any Loan Document other than any Note (such other indebtedness being referred to in this Section as the "*Related Indebtedness*"), or (c) Debtor will have paid or Lender will have received by reason of any voluntary prepayment by Debtor of any Note and/or the Related Indebtedness, then it is Debtor's and Lender's express intent that all amounts charged in excess of the Maximum Rate shall be automatically canceled, *ab initio*, and all amounts in excess of the Maximum Rate theretofore collected by Lender shall be credited on the principal balance of any Note and/or the Related Indebtedness (or, if any Note and all Related Indebtedness have been or would thereby be paid in full, refunded to Debtor), and the provisions of any Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if any Note or Related Indebtedness has been paid in full before the end of the stated term thereof, then Debtor and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Debtor that interest was received in an amount in excess of the Maximum Rate, either refund such excess interest to Debtor and/or credit such excess interest against such Note and/or any Related Indebtedness then owing by Debtor to Lender.  In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to this Note and/or any of the Related Indebtedness.  Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

37.     **Document Retention Policy**.  Each Obligor expressly acknowledges, understands and agrees that Lender's document retention policy involves the imaging of the Loan Documents and the destruction of the paper originals thereof. In connection therewith, each Obligor hereby waives any and all rights such Obligor has or may

LOAN AND SECURITY AGREEMENT – PAGE 30
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

have to claim, for any and all purposes whatsoever, that the imaged copies of the Loan Documents are not originals thereof.

38.    **Notice of Final Agreement**.  It is the intention of each Obligor and Lender that the following **NOTICE OF FINAL AGREEMENT** be incorporated by reference into each of the Loan Documents (as the same may be amended, modified or restated from time to time).  Each Obligor and Lender warrant and represent that the entire agreement made and existing by or among each Obligor and Lender with respect to the Loan is and shall be contained within the Loan Documents, and that no agreements or promises exist or shall exist by or among, any Obligor and Lender that are not reflected in the Loan Documents.  By execution and delivery of this Agreement, each Obligor acknowledges that such Obligor has received a copy of this **NOTICE OF FINAL AGREEMENT**.

---

### *NOTICE OF FINAL AGREEMENT*

**THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES, AND THE SAME MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

---

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

**AGREED** as of the Effective Date.

*LENDER:*

TEXAS CAPITAL BANK, NATIONAL ASSOCIATION

By: _____
Name:   Cody Cannon
Title:   Senior Vice President

*ADDRESS:*

2350 Lakeside Blvd., Suite 800
Richardson, TX 75082
Attn: Loan Operations

*With copies of notices to "Lender's Counsel":*

**HUSCH BLACKWELL LLP**
1800 Bering Drive, Suite 750
Houston, TX 77057
Attention:      Reuben D. Rosof

*DEBTOR:*

4512 STEFFANI PROPERTY, LLC

By: _____
Name:   Jason M. White
Title:    President

*ADDRESS:*

27440 Waller Spring Creek Road
Hockley, TX 77447

*GUARANTOR:*

_____
ROBERT WHITE

_____
JASON M. WHITE

*ADDRESS:*

27440 Waller Spring Creek Road
Hockley, TX 77447


21861 Old Oak Way
Hockley, TX 77447

LOAN AND SECURITY AGREEMENT – SIGNATURE PAGE
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

Exhibit B-33

EXHIBIT A
TO
LOAN AND SECURITY AGREEMENT

<u>COMPLIANCE CERTIFICATE</u>

DATE:   *July 13, 2018*

RE:   **LOAN AND SECURITY AGREEMENT** (as amended, modified or restated from time to time, the "*Agreement*") dated as of **JULY 13, 2018** among (a) **TEXAS CAPITAL BANK, NATIONAL ASSOCIATION**, a national banking association (together with its successors and assigns, "*Lender*"), (b) **4512 STEFFANI PROPERTY, LLC**, a Texas limited liability company ("*Debtor*"), and (c)(i) **ROBERT WHITE**, an individual residing in the State of Texas ("*R. White*"), and (ii) **JASON M. WHITE**, an individual residing in the State of Texas ("*J. White*," and together with R. White, jointly and severally, "*Guarantor*").

| CHECK ONE | SECTION REFERENCE | SUBJECT PERIOD |
|---|---|---|
|  | Section 9(a) – Annual Financial Statements |  |

This Compliance Certificate is delivered under the Agreement. Capitalized terms used in this Compliance Certificate shall, unless otherwise indicated, have the meanings set forth in the Agreement. Responsible Officer hereby certifies to Lender as of the date hereof that: (a) such Responsible Officer is the *President* of Debtor, and that, as such, Responsible Officer is authorized to execute and deliver this Compliance Certificate to Lender on behalf of Debtor; (b) such Responsible Officer has reviewed and is familiar with the terms of the Agreement and has made, or has caused to be made under such Responsible Officer's supervision, a detailed review of the transactions and condition (financial or otherwise) of Debtor during the Subject Period; (c) during the Subject Period, Debtor performed and observed each covenant and condition of the Loan Documents applicable to it and no Default currently exists or has occurred which has not been cured or waived by Lender (except as may be set forth on <u>Exhibit I</u> attached hereto); (d) the representations and warranties of Debtor contained in the Agreement, and any representations and warranties of Debtor that are contained in any document furnished at any time under or in connection with the Loan Documents, are true and correct on and as of the date hereof, except to the extent that such representations and warranties specifically refer to an earlier date, in which case they are true and correct as of such earlier date; (e) the financial statements of Debtor attached to this Compliance Certificate were prepared in accordance with GAAP, and present, on a consolidated basis, fairly and accurately the financial condition and results of operations of Debtor and its Subsidiaries as of the end of and for the Subject Period; and (f) the financial covenant analyses as set forth on <u>Exhibit II</u> and information set forth below are true and accurate on and as of the date of this Compliance Certificate.

*DEBTOR:*

4512 STEFFANI PROPERTY, LLC

By: *Jason White*
Name: *Jason White*
Title: *President*

**EXHIBIT I**

**DEFAULT**

**EXHIBIT II**

**FINANCIAL COVENANTS**

# PROMISSORY NOTE

**$1,423,750.00**                                                                                          **JULY 13, 2018**

**FOR VALUE RECEIVED, 4512 STEFFANI PROPERTY, LLC**, a Texas limited liability company ("*Debtor*"), unconditionally promises to pay to the order of **TEXAS CAPITAL BANK, NATIONAL ASSOCIATION**, a national banking association (together with its successors and assigns, "*Lender*"), without setoff, at its offices at 2350 Lakeside Boulevard, Suite 800, Richardson, Texas 75082, or at such other place as may be designated by Lender, the principal amount of **ONE MILLION FOUR HUNDRED TWENTY-THREE THOUSAND SEVEN HUNDRED FIFTY AND NO/100 DOLLARS ($1,423,750.00)**, or so much thereof as may be advanced from time to time in immediately available funds, together with interest computed daily on the outstanding principal balance hereunder, at an annual interest rate (the "*Rate*"), and in accordance with the payment schedule indicated below. This **PROMISSORY NOTE** (this "*Note*") is executed pursuant to and evidences the Loan funded by Lender under, and secured in part by, that certain (a) **LOAN AND SECURITY AGREEMENT** dated as of even date herewith (the "*Effective Date*"), between Debtor, Guarantor and Lender (as amended, restated or otherwise modified from time to time, the "*Loan Agreement*") and (b) **DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES, ASSIGNMENT OF RENTS, AND FINANCING STATEMENT** dated as of the Effective Date, executed by Debtor for the benefit of Lender (as amended, restated or otherwise modified from time to time, the "*Deed of Trust*"), to which reference is made for a statement of the collateral, rights and obligations of Debtor and Lender in relation thereto, but neither this reference to the Loan Agreement, the Deed of Trust nor any provision thereof shall affect or impair the absolute and unconditional obligation of Debtor to pay unpaid principal of and interest on this Note when due. Capitalized terms not otherwise defined herein shall have the same meanings as in the Loan Agreement.

1.      **Rate**. Prior to the Maturity Date or an Event of Default, the Rate shall be the **LESSER** of (a) the **MAXIMUM RATE**, or (b) **FOUR AND THREE QUARTERS OF ONE PERCENT (4.75%)**. From and after the Maturity Date, the Rate shall be the Maturity Rate. Notwithstanding any provision of this Note or any other agreement or commitment between Debtor and Lender, whether written or oral, express or implied, Lender shall never be entitled to charge, receive or collect, nor shall amounts received hereunder be credited so that Lender shall be paid, as interest a sum greater than interest at the Maximum Rate. It is the intention of the parties that this Note, and all instruments securing the payment of this Note or executed or delivered in connection therewith, shall comply with applicable law. If Lender ever contracts for, charges, receives or collects anything of value which is deemed to be interest under applicable law, and if the occurrence of any circumstance or contingency, whether acceleration of maturity of this Note, prepayment of this Note, delay in advancing proceeds of this Note or any other event, should cause such interest to exceed the Maximum Rate, any amount which exceeds interest at the Maximum Rate shall be applied to the reduction of the unpaid principal balance of this Note or any other Indebtedness, and if this Note and such other Indebtedness are paid in full, any remaining excess shall be paid to Debtor. In determining whether the interest exceeds interest at the Maximum Rate, the total amount of interest shall be spread, prorated and amortized throughout the entire term of this Note until its payment in full. The term "*Maximum Rate*" as used in this Note means the maximum nonusurious rate of interest per annum permitted by whichever of applicable United States federal law or Texas law permits the higher interest rate, including to the extent permitted by applicable law, any amendments thereof hereafter or any new law hereafter coming into effect to the extent a higher Maximum Rate is permitted thereby. If at any time the Rate shall exceed the Maximum Rate, the Rate shall be automatically limited to the Maximum Rate until the total amount of interest accrued hereunder equals the amount of interest which would have accrued if there had been no limitation to the Maximum Rate. To the extent, if any, that Chapter 303 of the Texas Finance Code, as amended (the "*Act*"), is relevant to Lender for purposes of determining the Maximum Rate, the parties elect to determine the Maximum Rate under the Act pursuant to the "weekly ceiling" from time to time in effect, as referred to and defined in §303.001-303.016 of the Act; subject, however, to any right Lender subsequently may have under applicable law to change the method of determining the Maximum Rate.

2.      **Accrual Method**. Interest on the Indebtedness evidenced by this Note shall be computed on the basis of a **THREE HUNDRED SIXTY (360)** day year and shall accrue on the actual number of days elapsed for any whole or partial month in which interest is being calculated. In computing the number of days during which interest accrues, the day on which funds are initially advanced shall be included regardless of the time of day such

PROMISSORY NOTE – PAGE 1
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC
6634767-v2

advance is made, and the day on which funds are repaid shall be included unless repayment is credited prior to the close of business on the Business Day received as provided herein.

3.    **Payment Schedule**.  Except as expressly provided herein to the contrary, all payments on this Note shall be applied in the following order of priority: (a) the payment or reimbursement of any expenses, costs or obligations (other than the outstanding principal balance hereof and interest hereon) for which either Debtor shall be obligated or Lender shall be entitled pursuant to the provisions of this Note or the other Loan Documents, (b) the payment of accrued but unpaid interest hereon, and (c) the payment of all or any portion of the principal balance hereof then outstanding hereunder, in the direct order of maturity.  If an Event of Default exists, then Lender may, at the sole option of Lender, apply any such payments, at any time and from time to time, to any of the items specified in clauses (a), (b) or (c) above without regard to the order of priority otherwise specified herein and any application to the outstanding principal balance hereof may be made in either direct or inverse order of maturity.  If any payment of principal or interest on this Note shall become due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in computing interest in connection with such payment.  The outstanding principal balance of this Note and accrued and unpaid interest thereon shall be due and payable as follows:

(a)    **ONE HUNDRED NINETEEN (119)** consecutive monthly payments of principal and interest in an amount sufficient to fully amortize the Loan over a period of **THREE HUNDRED (300)** months, commencing on **AUGUST 13, 2018** and continuing on the **SAME** day of each calendar month thereafter (or if no corresponding date shall exist in any calendar month, on the **LAST** day of such calendar month); and

(b)    **ONE (1)** final payment of the outstanding principal balance of this Note, including all accrued and unpaid interest, on the **EARLIEST** of (i) the acceleration of the Indebtedness pursuant to the terms of the Loan Documents; or (ii) **JULY 13, 2028** (the **EARLIEST** of such dates being the "*Maturity Date*").

Amounts repaid may not be re-borrowed.  Lender shall incur no liability for its refusal to advance funds based upon its determination that any conditions of such further advances have not been met.  Lender's records of the amounts borrowed and accrued and unpaid interest thereon from time to time shall be conclusive proof thereof absent manifest error.

4.    **Delinquency Charge**.  In the event any installment owing under this Note, or any part thereof, remains unpaid for **FIFTEEN (15)** or more days past the due date thereof as provided above, Debtor shall pay to Lender, in addition to any other amounts to which Lender may be entitled hereunder, a reasonable late payment fee equal to **FIVE PERCENT (5.00%)** of the amount of said installment, which amount is stipulated by Debtor to be reasonable in order to compensate Lender for its additional costs incurred as a result of having to attend to such delinquency.  This late charge should be paid only once as to such amount as is due and owing, but promptly, as to each respective late payment.  It is further agreed that the imposition of any such late payment fee shall in no way prejudice or limit Lender's rights or remedies against Debtor under this Note or any of the other Loan Documents.  In the event any check or other payment item used to make a payment to Lender is dishonored for any reason, Debtor shall pay to Lender, in addition to any other amounts to which Lender may be entitled hereunder, a reasonable processing fee of **THIRTY AND NO/100 DOLLARS ($30.00)** (or the maximum amount provided from time to time in Section 3.506(b) of the Texas Business and Commerce Code).  This processing fee should be paid once with respect to each dishonor of a check or other payment item.  It is further agreed that the imposition of any such processing fee shall in no way prejudice or limit Lender's rights or remedies against Debtor under this Note or any of the other Loan Documents.

5.    **Waivers, Consents and Covenants**.  **DEBTOR, ANY INDORSER OR GUARANTOR HEREOF, OR ANY OTHER PARTY HERETO (INDIVIDUALLY AN "*OBLIGOR*" AND COLLECTIVELY "*OBLIGORS*") AND EACH OF THEM JOINTLY AND SEVERALLY: (A) WAIVES PRESENTMENT, DEMAND, PROTEST, NOTICE OF DEMAND, NOTICE OF INTENT TO ACCELERATE, NOTICE OF ACCELERATION OF MATURITY, NOTICE OF PROTEST, NOTICE OF NONPAYMENT, NOTICE OF DISHONOR, AND ANY OTHER NOTICE REQUIRED TO BE GIVEN UNDER THE LAW TO ANY OBLIGOR IN CONNECTION WITH THE DELIVERY, ACCEPTANCE,**

PERFORMANCE, DEFAULT OR ENFORCEMENT OF THIS NOTE, ANY INDORSEMENT OR GUARANTY OF THIS NOTE, OR ANY OTHER DOCUMENTS EXECUTED IN CONNECTION WITH THIS NOTE OR ANY OTHER LOAN DOCUMENTS NOW OR HEREAFTER EXECUTED IN CONNECTION WITH ANY OBLIGATION OF DEBTOR TO LENDER; (B) CONSENTS TO ALL DELAYS, EXTENSIONS, RENEWALS OR OTHER MODIFICATIONS OF THIS NOTE OR THE LOAN DOCUMENTS AS MAY BE AGREED IN WRITING BY DEBTOR AND LENDER, OR WAIVERS OF ANY TERM HEREOF OR OF THE LOAN DOCUMENTS, OR RELEASE OR DISCHARGE BY LENDER OF ANY OBLIGORS, OR RELEASE, SUBSTITUTION OR EXCHANGE OF ANY SECURITY FOR THE PAYMENT HEREOF, OR THE FAILURE TO ACT ON THE PART OF LENDER, OR ANY INDULGENCE SHOWN BY LENDER (WITHOUT NOTICE TO OR FURTHER ASSENT FROM ANY OBLIGORS); (C) AGREES THAT NO SUCH ACTION, FAILURE TO ACT OR FAILURE TO EXERCISE ANY RIGHT OR REMEDY BY LENDER SHALL IN ANY WAY AFFECT OR IMPAIR THE OBLIGATIONS OF ANY OBLIGORS OR BE CONSTRUED AS A WAIVER BY LENDER OF, OR OTHERWISE AFFECT, ANY OF LENDER'S RIGHTS UNDER THIS NOTE, UNDER ANY INDORSEMENT OR GUARANTY OF THIS NOTE OR UNDER ANY OF THE LOAN DOCUMENTS; AND (D) AGREES TO PAY, ON DEMAND, ALL REASONABLE COSTS AND EXPENSES OF COLLECTION OR DEFENSE OF THIS NOTE OR OF ANY INDORSEMENT OR GUARANTY HEREOF AND/OR THE ENFORCEMENT OR DEFENSE OF LENDER'S RIGHTS WITH RESPECT TO, OR THE ADMINISTRATION, SUPERVISION, PRESERVATION, OR PROTECTION OF, OR REALIZATION UPON, ANY PROPERTY SECURING PAYMENT HEREOF, INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEY'S FEES, INCLUDING FEES RELATED TO ANY SUIT, MEDIATION OR ARBITRATION PROCEEDING, OUT OF COURT PAYMENT AGREEMENT, TRIAL, APPEAL, BANKRUPTCY PROCEEDINGS OR OTHER PROCEEDING, IN SUCH AMOUNT AS MAY BE DETERMINED REASONABLE BY ANY ARBITRATOR OR COURT, WHICHEVER IS APPLICABLE.

6.   **Prepayments**.  Prepayments may be made in whole or in part at any time without premium or penalty.

7.   **Remedies Upon Default**.  Whenever there is a continuing Event of Default the entire balance outstanding hereunder and all other obligations of any Obligor to Lender (however acquired or evidenced) shall, at the option of Lender, become immediately due and payable and any obligation of Lender to permit further borrowing under this Note shall immediately cease and terminate.  During a continuing Event of Default, or from and after the Maturity Date (whether by acceleration or otherwise), the Rate on the unpaid principal balance of this Note shall be increased at Lender's discretion up to the **LESSER** of (i) **EIGHTEEN PERCENT (18.00%)**, or (ii) the **MAXIMUM RATE** (the "*Maturity Rate*").  The provisions herein for a Maturity Rate (a) shall not be deemed to extend the time for any payment hereunder or to constitute a "grace period" giving Obligors a right to cure any default, and (b) shall be deemed the contract rate of interest applicable to the outstanding principal balance of the Note from and after the occurrence of one of the events set forth in this Section.  At Lender's option, any accrued and unpaid interest, fees or charges may, for purposes of computing and accruing interest on a daily basis after the due date of this Note or any installment thereof, be deemed to be a part of the principal balance, and interest shall accrue on a daily compounded basis after such date at the Maturity Rate provided in this Note until the entire outstanding balance of principal and interest is paid in full.  During a continuing Event of Default, Lender is hereby authorized at any time, at its option and without notice or demand, to set off and charge against any deposit accounts of any Obligor (as well as any money, instruments, securities, documents, chattel paper, credits, claims, demands, income and any other property, rights and interests of any Obligor), which at any time shall come into the possession or custody or under the control of Lender or any of its agents, affiliates or correspondents, any and all obligations due hereunder.  Additionally, Lender shall have all rights and remedies available under each of the Loan Documents, as well as all rights and remedies available at law or in equity.

8.   **Waiver**.  The failure at any time of Lender to exercise any of its options or any other rights hereunder shall not constitute a waiver thereof, nor shall it be a bar to the exercise of any of its options or rights at a later date.  All rights and remedies of Lender shall be cumulative and may be pursued singly, successively or together, at the option of Lender.  The acceptance by Lender of any partial payment shall not constitute a waiver of any default or of any of Lender's rights under this Note.  No waiver of any of its rights hereunder, and no modification or amendment of this Note, shall be deemed to be made by Lender unless the same shall be in writing, duly signed on behalf of Lender; each such waiver shall apply only with respect to the specific instance involved,

PROMISSORY NOTE – PAGE 3
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC
6634767-v2

and shall in no way impair the rights of Lender or the obligations of Obligors to Lender in any other respect at any other time.

9. **Applicable Law**. Debtor agrees that this Note shall be deemed to have been made in the State of Texas at Lender's address indicated at the beginning of this Note and shall be governed by, and construed in accordance with, the laws of the State of Texas and is performable in the City and County of Texas indicated at the beginning of this Note.

10. **Partial Invalidity**. The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein and the invalidity or unenforceability of any provision of this Note or of the Loan Documents to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

11. **Binding Effect**. This Note shall be binding upon and inure to the benefit of Obligors and Lender and their respective successors, assigns, heirs and personal representatives, provided, however, that no obligations of Obligors hereunder can be assigned without prior written consent of Lender.

12. **Controlling Document**. To the extent that this Note conflicts with or is in any way incompatible with any other document related specifically to the loan evidenced by this Note, this Note shall control over any other such document, and if this Note does not address an issue, then each other such document shall control to the extent that it deals most specifically with an issue.

13. **Commercial Purpose**. **DEBTOR REPRESENTS TO LENDER THAT THE PROCEEDS OF THIS LOAN ARE TO BE USED PRIMARILY FOR BUSINESS, COMMERCIAL OR AGRICULTURAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. DEBTOR ACKNOWLEDGES HAVING READ AND UNDERSTOOD, AND AGREES TO BE BOUND BY, ALL TERMS AND CONDITIONS OF THIS NOTE.**

14. **Collection**. If this Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceeding at law or in equity or in bankruptcy, receivership or other court proceedings, Debtor agrees to pay all costs of collection, including, but not limited to, court costs and reasonable attorneys' fees.

15. **Time is of the Essence**. Time is of the essence with respect to all provisions of this Note and the other Loan Documents.

16. **Notice of Balloon Payment**. At maturity (whether by acceleration or otherwise), Debtor must repay the entire principal balance of this Note and unpaid interest then due. Lender is under no obligation to refinance the outstanding principal balance of this Note (if any) at that time. Debtor will, therefore, be required to make payment out of other assets Debtor may own; or Debtor will have to find a lender willing to lend Debtor the money at prevailing market rates, which may be higher than the interest rate on the outstanding principal balance of this Note. If Obligors have guaranteed payment of this Note, Obligors may be required to perform under such guaranty.

17. **Statement of Unpaid Balance**. At any time and from time to time, Debtor will furnish promptly, upon the request of Lender, a written statement or affidavit, in form satisfactory to Lender, stating the unpaid balance of the Loan evidenced by this Note and that there are no offsets or defenses against full payment of the Loan evidenced by this Note and the terms hereof, or if there are any such offsets or defenses, specifying them.

18. **Waiver of Jury Trial**. **TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EACH OBLIGOR AND LENDER HEREBY IRREVOCABLY AND EXPRESSLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY OR THE ACTIONS OF LENDER IN THE NEGOTIATION, ADMINISTRATION, OR ENFORCEMENT THEREOF. EACH OBLIGOR (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR**

PROMISSORY NOTE – PAGE 4
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC
6634767-v2

ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT DEBTOR HAS BEEN INDUCED TO EXECUTE THIS NOTE AND THE OTHER LOAN DOCUMENTS BY, AMONG OTHER THINGS, THE WAIVERS AND CERTIFICATIONS IN THIS SECTION.

---

### *NOTICE OF FINAL AGREEMENT*

THIS NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES, AND THE SAME MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

---

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.*
*SIGNATURE PAGE FOLLOWS.*

**EXECUTED** as of the Effective Date.

*DEBTOR:*                                            *ADDRESS:*

4512 STEFFANI PROPERTY, LLC                          27440 Waller Spring Creek Road
                                                     Hockley, TX 77447

By: _____
Name:   Jason M. White
Title:     President

PROMISSORY NOTE – SIGNATURE PAGE
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC
6634767-v2

**EXECUTED** as of the Effective Date.

*DEBTOR:*

4512 STEFFANI PROPERTY, LLC

By: _____
Name:   Jason M. White
Title:    President

*ADDRESS:*

27440 Waller Spring Creek Road
Hockley, TX 77447

ESCROW WAIVER DISCLOSURE – SIGNATURE PAGE
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

The undersigned hereby certifies that the foregoing is a true and correct copy of the original.
Alamo Title Company

By: _____

*AFTER RECORDING RETURN TO:*

**TEXAS CAPITAL BANK, NATIONAL ASSOCIATION**
2350 Lakeside Boulevard, Suite 800
Richardson, Texas 75082
Attention:    Loan Operations

---

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

---

## DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES, ASSIGNMENT OF RENTS, AND FINANCING STATEMENT

THIS **DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES, ASSIGNMENT OF RENTS, AND FINANCING STATEMENT** (as amended, modified or restated from time to time, this "*Deed of Trust*") is made on the date stated below by Debtor in favor of Trustee, for the benefit of Lender, who are identified and whose addresses are stated below.  By signing this Deed of Trust, Debtor agrees to the terms and conditions and makes the covenants stated in this Deed of Trust.

| | |
|---|---|
| **"EFFECTIVE DATE":** | **JULY 13, 2018** |
| **"DEBTOR":** | **4512 STEFFANI PROPERTY, LLC,** a Texas limited liability company 27440 Waller Spring Creek Road Hockley, TX 77447 |
| **"LENDER":** | **TEXAS CAPITAL BANK, NATIONAL ASSOCIATION,** a national banking association 2350 Lakeside Boulevard, Suite 800 Richardson, Texas 75082 Attention:          Loan Operations |
| **"TRUSTEE":** | **JOHN D. HUDGENS** 2350 Lakeside Boulevard, Suite 800 Richardson, Texas 75082 |
| **"NOTE":** | That certain **PROMISSORY NOTE** dated as of the Effective Date, in the original principal amount of **ONE MILLION FOUR HUNDRED TWENTY-THREE THOUSAND SEVEN HUNDRED FIFTY AND NO/100 DOLLARS ($1,423,750.00),** executed by Debtor and payable to Lender in accordance with the terms and conditions stated therein (as the same may be amended, modified or restated from time to time, the "*Note*"). |
| **"LAND":** | The land described in <u>Exhibit A</u> attached hereto and made a part hereof for all purposes. |

DEED OF TRUST – PAGE 1
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC
DAL-6634772-1

# ARTICLE I
# SECURITY

**1.01    CONVEYANCE IN TRUST.** For value received, the receipt and sufficiency of which Debtor acknowledges, and to secure the payment of the Indebtedness described in <u>Section 2.01</u> and performance of the covenants and agreements of Debtor stated in this Deed of Trust and in the Loan Documents, Debtor conveys the Property described in <u>Section 1.02</u>, including without limitation, the Land, to the Trustee in trust, with power of sale, **TO HAVE AND TO HOLD** the Property, together with the rights, privileges, and appurtenances thereto belonging unto the Trustee and the Trustee's substitutes or successors forever. Debtor binds itself and its heirs, executors, administrators, personal representatives, successors, and assigns to **WARRANT AND FOREVER DEFEND** the Property unto the Trustee, and the Trustee's substitutes or successors and assigns, against the claim or claims of all persons claiming or to claim the same or any part thereof.

**1.02    PROPERTY.** The Property covered by this Deed of Trust includes the Land and the following items described in this <u>Section 1.02</u>, whether now owned or hereafter acquired by Debtor, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by this Deed of Trust, and all rights, hereditaments and appurtenances pertaining thereto, all of which are referred to as the "*Property*":

(a)    Any and all buildings, improvements (including, but not limited to, roads, curbs, gutters, public utilities, and drainage systems), and tenements now or hereafter attached to or placed, erected, constructed, or developed on the Land (the "*Improvements*");

(b)    All of Debtor's equipment, fixtures, furnishings, inventory, and articles of personal property (the "*Personalty*") now or hereafter attached to or used in or about the Improvements or that are necessary or useful for the complete and comfortable use and occupancy of the Improvements for the purposes for which they were or are to be attached, placed, erected, constructed or developed, or which Personalty is or may be used in or related to the planning, development, financing or operation of the Improvements, and all renewals of or replacements or substitutions for any of the foregoing, whether or not the same are or shall be attached to the Land or Improvements;

(c)    All water and water rights, timber, crops, and mineral interest pertaining to the Land;

(d)    All building materials and related equipment now or hereafter delivered to and intended to be installed in or on the Land or the Improvements, and all other building materials, regardless of location, intended to be installed in or on the Land or the Improvements;

(e)    All plans and specifications for the Improvements and for any future development of or construction on the Land and all contracts and subcontracts relating to the construction of the Improvements on the Land;

(f)    All rights (but not Debtor's obligations) under any contracts relating to the Land, the Improvements or the Personalty, including, without limitation, all sales and professional contracts;

(g)    All deposits (including tenant security deposits), bank accounts now or hereafter held with Lender, funds, deeds of trust, notes or chattel paper arising from or by virtue of any transactions related to the Land, the Improvements or the Personalty;

(h)    All rights (but not Debtor's obligations) under any documents, contract rights, accounts, commitments, construction contracts (and all payment and performance bonds, statutory or otherwise, issued by any surety in connection with any such construction contracts, and the proceeds of such bonds), architectural contracts, engineering contracts, and general intangibles (including without limitation trademarks, trade names, and symbols) arising from or by virtue of any transactions related to the Land, the Improvements, or the Personalty;

(i)    All permits, licenses, franchises, certificates, and other rights and privileges now owned or held or hereafter obtained in connection with the Land, the Improvements, or the Personalty;

DEED OF TRUST – PAGE 2
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

(j)        All development rights, utility commitments, water and wastewater taps, living unit equivalents, capital improvement project contracts, utility construction agreements with any governmental authority, including municipal utility districts, or with any utility companies (and all refunds and reimbursements thereunder) relating to the Land or the Improvements;

(k)        All proceeds arising from or by virtue of the sale, lease or other disposition of the Land, the Improvements, or the Personalty;

(l)        All proceeds (including premium refunds) of each policy of insurance relating to the Land, the Improvements, or the Personalty;

(m)        All proceeds from the taking of any of the Land, the Improvements, the Personalty or any rights appurtenant thereto by right of eminent domain or by private or other purchase in lieu thereof, including change of grade of streets, curb cuts or other rights of access, for any public or quasi-public use under any law;

(n)        All right, title, and interest in and to all streets, roads, public places, easements, and rights-of-way, existing or proposed, public or private, adjacent to or used in connection with, belonging or pertaining to the Land;

(o)        All of the Leases, rents, royalties, bonuses, issues, profits, revenues, or other benefits of the Land, the Improvements, or the Personalty, including without limitation cash or securities deposited pursuant to Leases to secure performance by the tenants of their obligations thereunder;

(p)        All of Debtor's consumer goods located in, on, or about the Land or the Improvements or used in connection with the use or operation thereof; however, neither the term "consumer goods" nor the term "Personalty" includes clothing, furniture, appliances, linens, china, crockery, kitchenware, or personal effects used primarily for personal, family, or household purposes;

(q)        All other interest of every kind and character that Debtor now has or at any time hereafter acquires in and to the Land, Improvements, and Personalty and all property that is used or useful in connection therewith, including rights of ingress and egress and all reversionary rights or interests of Debtor with respect to such property and all of Debtor's rights (but not Debtor's obligations) under any covenants, conditions, and restrictions for the Land, as the same may be amended from time to time, including Debtor's rights, title, and interests thereunder as declarant or developer, if applicable; and

(r)        All products and proceeds of the Personalty described in this Section 1.02 (the Personalty and other personal property described in this Section 1.02 being sometimes collectively referred to as the "*Personal Property*").

## ARTICLE II
## INDEBTEDNESS AND PAYMENTS

2.01    **INDEBTEDNESS**.  The indebtedness secured by this Deed of Trust (the "*Indebtedness*") shall mean and include the following:

(a)        The Indebtedness (as defined in the Loan Agreement) including any and all sums becoming due and payable pursuant to the Note;

(b)        Any and all other sums becoming due and payable by Debtor to Lender as a result of advancements made by Lender pursuant to the terms and conditions of this Deed of Trust or any other Loan Documents securing or executed in connection with or otherwise relating to the Note, including without limitation the repayment of any future advances made by Lender to Debtor as provided in paragraph (c) below and the repayment of any sums advanced for the protection of Lender's security pursuant to this Deed of Trust;

(c)        Debtor and Lender contemplate that Lender will, from time to time, engage in various transactions and that from time to time other circumstances may arise, in which Debtor becomes obligated to Lender.  Debtor

DEED OF TRUST – PAGE 3
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

understands that some of those transactions and circumstances may be of a type that is very different from the loan transaction evidenced in part by the Note and the circumstances connected therewith. Debtor desires and intends that Lender engage in all such transactions, and deal generally with Debtor with the assurance that any and all indebtedness and obligations now owed, and that may hereafter become owing, to Lender from Debtor, will be secured by the liens arising hereunder. Therefore, the conveyance made by this Deed of Trust, in addition to being made to secure payment of the Note, is also made in trust to secure and enforce the payment of all other indebtedness and obligations of Debtor to Lender whether presently existing, or in any manner or means hereafter incurred by Debtor, and evidenced in any manner whatsoever, either by notes, advances, overdrafts, bookkeeping entries, guaranty agreements, liens or security interest, deeds of trust, or any other method or means including any renewal and extension of the Note, or of any part of any present or future indebtedness or other obligations, of Debtor and including any further loans and advances made by Lender to Debtor. The fact of repayment of all Indebtedness, and performance of all other obligations, of Debtor, to Lender shall not terminate the lien arising hereunder unless the same be released by Lender at the request of Debtor; but otherwise it shall remain in full force and effect to secure all future advances, indebtedness and other obligations, regardless of any additional security that may be taken as to any past or future indebtedness or other obligations. In no event shall this conveyance secure payment of any installment loan or any open-end line of credit established under the Texas Finance Code; and

(d)      Any and all renewals, extensions, replacements, rearrangements, substitutions, or modifications of the Indebtedness, or any part of the Indebtedness.

**2.02     OTHER LOAN DOCUMENTS**. The term "*Loan Documents*" as used herein means this Deed of Trust, the Note, any guaranty and the other agreements, instruments and documents evidencing, securing, governing, guaranteeing or pertaining to the Note, including, but not limited to, that certain **LOAN AND SECURITY AGREEMENT** dated as of even date herewith between Debtor and Lender (as amended, modified or restated from time to time, the "*Loan Agreement*"). This Deed of Trust shall also secure the performance of all obligations and covenants of Debtor under this Deed of Trust and the other Loan Documents.

**2.03     PAYMENT OF PRINCIPAL AND INTEREST**. Debtor shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, and prepayment and late charges provided in the Note and all other sums secured by this Deed of Trust.

**2.04     APPLICATION OF PAYMENTS**. Unless applicable law provides otherwise, all payments received by Lender from Debtor under the Note or this Deed of Trust shall be applied by Lender in the following order of priority:  (a) amounts payable to Lender by Debtor under this Deed of Trust; (b) sums payable to Lender under the Note, to be applied to principal or interest as provided in any other Loan Document, or if no such provision, as Lender may determine in its discretion; and (c) any other sums secured by this Deed of Trust in such order as Lender, at Lender's option, may determine.

**2.05     GUARANTOR**. The term "*Guarantor*" shall include any person, company, or entity obligated to pay or guaranteeing collection of all or any portion of the Indebtedness, directly, or indirectly.

**2.06     SUBROGATION TO EXISTING LIENS; VENDOR'S LIEN**. To the extent that proceeds of the Note are used to pay indebtedness secured by any outstanding lien, security interest, charge or prior encumbrance against the Property, such proceeds have been advanced by Lender at Debtor's request, and Lender shall be subrogated to any and all rights, security interests and liens owned by any owner or holder of such outstanding liens, security interests, charges or encumbrances, however remote, irrespective of whether said liens, security interests, charges or encumbrances are released, and all of the same are recognized as valid and subsisting and are renewed and continued and merged herein to secure the secured indebtedness, but the terms and provisions of this Deed of Trust shall govern and control the manner and terms of enforcement of the liens, security interests, charges and encumbrances to which Lender is subrogated hereunder. It is expressly understood that, in consideration of the payment of such indebtedness by Lender, Debtor hereby waives and releases all demands and causes of action for offsets and payments in connection with the said indebtedness. If all or any portion of the proceeds of the Indebtedness evidenced by the Note or of any other secured indebtedness has been advanced for the purpose of paying the purchase price for all or a part of the Property, no vendor's lien is waived; and Lender shall have, and is hereby granted, a vendor's lien on the Property as cumulative additional security for the secured

indebtedness. Lender may foreclose under this Deed of Trust or under the vendor's lien without waiving the other or may foreclose under both.

## ARTICLE III
## SECURITY AGREEMENT

**3.01    UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.**  This Deed of Trust is also intended to be a security agreement between Debtor, as debtor, and Lender, as secured party, pursuant to the UCC for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the UCC, and Debtor hereby grants Lender a security interest in all such items. Debtor shall pay all costs of filing any financing statement and any extensions, renewals, amendments, and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Debtor shall not create or suffer to be created pursuant to the UCC any other security interest in said items, including replacements and additions thereto. Upon the occurrence of an Event of Default, including the covenants to pay when due all sums secured by this Deed of Trust, Lender shall have the remedies of a secured party under the UCC and, at Lender's option, may also invoke the remedies provided in this Deed of Trust as to such items. In exercising any remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the UCC or of the remedies provided in this Deed of Trust.

**3.02    NOTICES OF CHANGES.**  Debtor shall give advance notice in writing to Lender of any proposed change in Debtor's name or jurisdiction in which Debtor is organized, and shall execute and deliver to Lender, prior to or concurrently with the occurrence of any such change, all additional financing statements that Lender may require to establish and maintain the validity and priority of Lender's security interest with respect to any of the Property.

**3.03    FIXTURES.**  Some of the items of the Property are goods that are or are to become fixtures related to the Land. Debtor and Lender intend that, as to those goods, this Deed of Trust shall be effective as a financing statement filed as a fixture filing from the date of its filing for record in the real estate records of the county in which the Property is situated. Information concerning the security interest created by this Deed of Trust may be obtained from Lender, as secured party, at Lender's address stated above. The mailing address of the Debtor, as debtor, is as stated above.

## ARTICLE IV
## ASSIGNMENT OF LEASES

**4.01    ASSIGNMENT OF LEASES.**  Debtor assigns to Lender, and grants to Lender a security interest in, all of Debtor's rights, but not Debtor's obligations, under existing and future leases, including subleases, and any and all extensions, renewals, modifications, and replacements of such leases, upon any part of the Property (the "_Leases_"). Debtor also assigns to Lender all guaranties of tenant's performance under the Leases. So long as no Event of Default is continuing, Debtor shall have the right, without joinder of Lender, to enforce the Leases.

**4.02    WARRANTIES CONCERNING LEASES AND RENTS.**  Debtor represents and warrants that:

(a)    Debtor has good title to the Leases hereby assigned and authority to assign them, and no other person or entity has any right, title or interest therein;

(b)    All existing Leases are valid, unmodified and in full force and effect, except as indicated herein and no default exists thereunder;

(c)    Unless otherwise provided herein, no Rents or other sums owing under the Leases have been or will be assigned, mortgaged or pledged;

DEED OF TRUST – PAGE 5
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

(d)      No Rents have been or will be anticipated, waived, released, discounted, set off or compromised; and

(e)      Except as indicated in the Leases, Debtor has not received any funds or deposits from any tenant that has not already been applied to the payment of accrued Rents.

**4.03    DEBTOR'S COVENANTS OF PERFORMANCE.** Debtor covenants to:

(a)      Perform all of its obligations under the Leases and give prompt notice to Lender of any failure to do so;

(b)      Give immediate notice to Lender of any notice Debtor receives from any tenant or subtenant under any Leases, specifying any claimed default by any party under such Leases;

(c)      Enforce the tenant's obligations under the Leases;

(d)      Defend, at Debtor's expense, any proceeding pertaining to the Leases, including, if Lender so requests, any such proceeding to which Lender is a party; and

(e)      Neither create nor permit any encumbrance upon Debtor's interest as landlord of the leases, except this Deed of Trust and any other encumbrances permitted by this Deed of Trust.

**4.04    PRIOR APPROVAL FOR ACTIONS AFFECTING LEASES.** Debtor shall not, without the prior written consent of Lender (which consent shall not be unreasonably withheld):

(a)      Receive or collect Rents under any Lease more than one month in advance;

(b)      Encumber or assign future Rents;

(c)      Waive or release any obligation of any tenant under the Leases;

(d)      Cancel, terminate or materially modify any of the Leases, cause, permit or accept any cancellation, termination or surrender of any of the Leases, or commence any proceedings for dispossession of any tenant under any of the Leases, except upon default by the tenant thereunder;

(e)      Renew or extend any of the Leases, except pursuant to terms in existing Leases;

(f)      Permit any assignment of the Leases, unless the assignee has a net worth substantially equal to or greater than the assigning tenant thereunder; or

(g)      Enter into any Leases after the date hereof.

**4.05    ATTORNMENT OF TENANTS.** All future Leases of the Property shall specifically provide: (a) that such Leases are subordinate to this Deed of Trust; (b) that the tenant attorns to Lender, such attornment to be effective upon Lender's acquisition of title to the Property; (c) that the tenant agrees to execute such further evidences of attornment as Lender may from time to time request; (d) that the attornment of the tenant shall not be terminated by foreclosure; and (e) that Lender may, at Lender's option, accept or reject such attornments.

**4.06    SETTLEMENT FOR TERMINATION.** Debtor agrees that no settlement for damages for termination of any of the Leases under the Federal Bankruptcy Code, or under any other federal, state, or local statute, shall be made without the prior written consent of Lender, and any check in payment of such damages shall be made payable to both Debtor and Lender. Debtor hereby assigns any such payment to Lender, to be applied to the Indebtedness as Lender may elect, and Debtor agrees to endorse any check for payment to the order of Lender.

**4.07    LENDER IN POSSESSION.**  Lender's acceptance of this assignment shall not, prior to entry upon and taking possession of the Property by Lender, be deemed to constitute Lender a mortgagee in possession, nor obligate Lender to appear in or defend any proceeding relating to any of the Leases or to the Property, take any action hereunder, expend any money, incur any expenses, or perform any obligation or liability under the Leases, or assume any obligation for any deposits delivered to Debtor by any tenant and not delivered to Lender.  Lender shall not be liable for any injury or damage to person or property in or about the Property.

**4.08    APPOINTMENT OF ATTORNEY.**  Debtor hereby appoints Lender its attorney-in-fact, coupled with an interest, empowering Lender to subordinate any Leases to this Deed of Trust.

**4.09    INDEMNIFICATION; HOLD HARMLESS.**  Debtor hereby indemnifies and holds Lender harmless from all liability, damage, or expense incurred by Lender from any claims under the Leases, including without limitation any claims by Debtor with respect to Rents paid directly to Lender after an Event of Default and claims by tenants for security deposits or for rental payments more than one (1) month in advance and not delivered to Lender.  All amounts indemnified against hereunder, including reasonable attorneys' fees, if paid by Lender shall bear interest at the Maximum Lawful Rate, shall be payable to Debtor immediately without demand, and shall be secured by this Deed of Trust.

**4.10    RECORDS.**  Upon request by Lender, Debtor shall deliver to Lender executed originals or copies of all Leases and copies of all records relating thereto.

**4.11    MERGER.**  There shall be no merger of the leasehold estates, created by the Leases, with the fee estate of the Land without the prior written consent of Lender.

**4.12    RIGHT TO RELY.**  Debtor authorizes and directs the tenants under the Leases to pay Rents to Lender upon written demand by Lender, but only during the continuance of an Event of Default, without further consent of Debtor and regardless of whether Lender has taken possession of any other portion of the Property, and the tenants may rely upon any written statement by Lender to the tenants.

**ARTICLE V**
**ASSIGNMENT OF RENTS**

**5.01    ASSIGNMENT OF RENTS.**  As part of the consideration for the Indebtedness, and for other valuable consideration, the receipt and sufficiency of which Debtor acknowledges, Debtor hereby assigns and transfers to Lender all rents, issues, income, receipts, and profits from the Property, and all security deposits and other security therefor, and any other property defined as "rents" under Chapter 64 of the Texas Property Code (collectively, the "*Rents*"), including those now due, or to become due by virtue of any Lease or other agreement for the occupancy or use of all or part of the Property, regardless of to whom the Rents are payable.  Debtor authorizes Lender or Lender's agents to collect the Rents and directs each tenant of the Property to pay such Rents to Lender or Lender's agents; provided, however, that prior to the occurrence of, and after the curing of, an Event of Default, Debtor shall collect and receive all Rents as trustee for the benefit of Lender and Debtor, to apply the Rents so collected to the sums secured by this Deed of Trust in the order provided in Section 2.04 with the balance, so long as no such Event of Default has occurred, or to the extent an Event of Default has occurred, such Event of Default has been cured, to the account of Debtor.

**5.02    EVENT OF DEFAULT.**  Upon the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by a court-appointed receiver, Lender shall immediately be entitled to possession of all the Rents specified in this Article V as the same become due and payable, including without limitation Rents then due and unpaid, and all such Rents shall immediately upon delivery of such notice be held by Debtor as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Debtor of the breach by Debtor shall contain a statement that Lender exercises its rights to such Rents.  Debtor agrees that, commencing upon delivery of such written notice of an Event of Default by Lender to Debtor and continuing until such time as the Event of Default is cured, each tenant of the Property shall make such Rents payable to and pay such Rents to Lender or Lender's agents on Lender's written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of any tenant to inquire further as to the existence of an Event of Default.

    **5.03**    **DEBTOR'S COVENANTS.**  Debtor covenants that Debtor has not executed any prior assignment of the Rents or any portion thereof, that Debtor has not performed, and will not perform, any acts and has not executed, and will not execute, any Deed of Trust which would prevent Lender from exercising its rights under this Article V and that at the time of execution of this Deed of Trust there has been no anticipation or prepayment of any of the Rents for more than **THIRTY (30)** days prior to the due dates of such Rents. Debtor covenants that Debtor will not hereafter collect or accept payment of any Rents more than **THIRTY (30)** days prior to the due dates of such Rents without prior written consent of Lender. Debtor further covenants that Debtor will execute and deliver to Lender such further assignments of Rents as Lender may from time to time request.

    **5.04**    **APPOINTMENT OF RECEIVER; POSSESSION OF THE PROPERTY.**  Upon the occurrence of an Event of Default that has not yet been cured, Lender may in person, by agent or by a court-appointed receiver, regardless of the adequacy of Lender's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof, including without limitation the execution, cancellation or modification of Leases, the collection of Rents, the making of repairs to the Property, and the execution or termination of contracts providing for the management or maintenance of the Property, all on such terms as are deemed best to protect the security of this Deed of Trust. In the event Lender elects to seek the appointment of a receiver for the Property upon the occurrence of an Event of Default, Debtor consents to the appointment of such receiver until such time as said Event of Default is cured. Lender or the receiver shall be entitled to receive a reasonable fee for so managing the Property.

    **5.05**    **APPLICATION OF RENTS.**  All Rents collected subsequent to and during the occurrence of a continuing Event of Default shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the Rents, including without limitation attorneys' fees, receiver's fees, premiums on receiver's bonds, costs of repairs to the Property, premiums on insurance policies, taxes, assessments, and other charges on the Property, and to the costs of discharging any obligation or liability of Debtor as landlord of the Property, and then to the sums secured by this Deed of Trust. Lender or the receiver shall have access to the books and records used in the operation and maintenance of the Property and shall be liable to account only for those Rents actually received. Lender shall not be liable to Debtor, anyone claiming under or through Debtor or anyone having an interest in the Property by reason of anything done or left undone by Lender under this Article V.

    **5.06**    **INSUFFICIENT RENTS.**  If Rents are not sufficient to meet the costs, if any, of taking control of and managing the Property and collecting the Rents, any reasonable and necessary funds expended by Lender for such purposes shall become Indebtedness of Debtor to Lender secured by this Deed of Trust. Unless Lender and Debtor agree in writing to other terms of payment, such amounts shall be payable upon notice from Lender to Debtor requesting payment thereof and shall bear interest from the date of disbursement at the rate stated in the Note, unless payment of such interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest non-usurious rate which may be collected from Debtor under applicable law.

    **5.07**    **NO WAIVER; TERM.**  Any entering upon and taking and maintaining of control of the Property by Lender or the receiver and any application of Rents as provided herein shall not cure or waive any default hereunder or invalidate any other right or remedy of Lender under applicable law or provided herein. This assignment of the Rents shall terminate at such time as this Deed of Trust ceases to secure the Indebtedness held by Lender.

**ARTICLE VI**
**DEBTOR'S REPRESENTATIONS, WARRANTIES, COVENANTS, AND AGREEMENTS**

    Debtor covenants, warrants, represents to and agrees with Lender as follows:

    **6.01**    **PAYMENT AND PERFORMANCE.**  Debtor shall make all payments on the Indebtedness when due and shall punctually and properly perform all of Debtor's covenants, obligations and liabilities under this Deed of Trust and the other Loan Documents.

    **6.02**    **TITLE TO PROPERTY AND LIENS OF THIS DEED OF TRUST.**  Debtor has good and indefeasible title to the Land and the Improvements and good and marketable title to the Personal Property, free and clear of any liens, charges, encumbrances, security interests, and adverse claims whatsoever, other than the

Permitted Encumbrances. If the interest of Lender in the Property or any part thereof shall be endangered or shall be attacked, directly or indirectly, Debtor authorizes Lender, at Debtor's expense, to take all necessary and proper steps for the defense of such interest, including the employment of attorneys, the prosecution or defense of litigation, and the compromise or discharge of claims made against such interest.

      **6.03    TITLE INSURANCE**. Debtor shall, at its sole cost and expense, obtain and maintain mortgagee title insurance (in the form of a commitment, binder, or policy as Lender may require) in form acceptable to Lender in an amount equal to the amount of the Note.

      **6.04    INSURANCE**. Debtor shall promptly obtain and deliver to Lender insurance policies with premiums paid providing extended coverage for all Improvements and other Property against damage by fire and lightning and against such other risks as Lender may require (including liability insurance in an amount acceptable to Lender in its Permitted Discretion), all in amounts approved by Lender not less than **ONE HUNDRED PERCENT (100.00%)** of full replacement cost of all Improvements located on the Property, and in any event not less than the amount of the Indebtedness, and with provision that (a) each of said policies shall not be terminated, reduced or limited regardless of any breach of the representations and agreements set forth therein, and (b) no such policy shall be canceled, endorsed or amended to any material extent unless the issuer thereof shall have first given Lender at least **THIRTY (30)** days' prior written notice. In case Debtor fails to furnish such policies, Lender, at Lender's option, may procure such insurance at Debtor's expense. All renewal and substitute policies of insurance shall be delivered to the office of Lender, premiums paid, at least **TEN (10)** days before expiration of the insurance protection to be replaced by such renewal or substituted policies. In case of loss, Lender, at Lender's option, shall be entitled to receive and retain the proceeds of the insurance policies, applying the same toward payment of the Indebtedness, taxes or other sums due and owing by Debtor in connection with the Property in such manner as Lender may elect, or at Lender's option, Lender may pay the same over wholly or in part to Debtor for the repair of said Improvements or for the erection of new Improvements in their place, or for any other purpose satisfactory to Lender, but Lender shall not be obligated to see to the proper application of any amounts so paid to Debtor. If Lender elects to allow such payments to Debtor, disbursement shall be on such terms subject to such conditions as Lender may specify. Regardless of whether any insurance proceeds are sufficient to pay the costs of repair and restoration of the Property, provided that Lender has paid such proceeds to Debtor, Debtor shall promptly commence and carry out the repair, replacement, restoration and rebuilding of any and all of the Improvements damaged or destroyed so as to return same, to the extent practicable, to the same condition as immediately prior to such damage to or destruction thereof. Debtor shall not permit or carry on any activity within or relating to the Property that is prohibited by the terms of any insurance policy covering any part of the Property or which permits cancellation of or increase in the premium payable for any insurance policy covering any part of the Property. Furthermore, for any portion of the Property situated in an area having special flood hazards (as defined in the Flood Disaster Protection Act of 1973, as amended from time to time, or any similar legislation), Debtor shall provide flood insurance satisfactory to Lender in an amount equal to the replacement cost of the Improvements or the maximum amount of flood insurance available, whichever is the lesser.

      **6.05    TAXES AND ASSESSMENTS**. Debtor shall pay all taxes and assessments against or affecting the Property as the same become due and payable, and, upon request by Lender, Debtor shall deliver to Lender such evidence of the payment thereof as Lender may require. If Debtor fails to do so, Lender may pay them, together with all costs and penalties thereon, at Debtor's expense; provided, however, that Debtor may in good faith, in lieu of paying such taxes and assessments as they become due and payable, by appropriate proceedings, contest their validity. Pending such contest, Debtor shall not be deemed in default under this Deed of Trust because of such nonpayment if: (a) prior to delinquency of the asserted tax or assessment, Debtor furnishes Lender an indemnity bond secured by a deposit in cash or other security acceptable to Lender, or with a surety acceptable to Lender, in the amount of the tax or assessment being contested by Debtor plus a reasonable additional sum to pay all costs, interest and penalties that may be imposed or incurred in connection therewith, conditioned that such tax or assessment, with interest, cost and penalties, be paid as herein stipulated; and (b) Debtor promptly pays any amount adjudged by a court of competent jurisdiction to be due with all costs, penalties and interest thereon, on or before the date such judgment becomes final. In any event, the tax, assessment, penalties, interest, and costs shall be paid prior to the date on which any writ or order is issued under which the Property or any part of the Property may be sold in satisfaction thereof.

**6.06    TAX AND INSURANCE ESCROW.**  During the existence of an Event of Default, Debtor agrees to establish reserve accounts for real estate taxes, insurance premiums, and other impositions as may be reasonably requested by Lender from time to time.

**6.07    CONDEMNATION.**

(a)    Debtor assigns to Lender all judgments, decrees, and awards for injury or damage, direct or consequential, to the Property, and all awards pursuant to proceedings for condemnation or other taking, whether direct or indirect, of the Property or any part of the Property.  Lender may apply any condemnation proceeds to the Indebtedness in such manner as Lender may elect.  Debtor shall promptly notify Lender of any action or proceeding (or threatened action or proceeding) relating to any condemnation or other taking, whether direct or indirect, of all or any part of the Property.  Debtor shall file or defend its claim under any such action and prosecute the same with due diligence to its final disposition and shall cause any awards or settlements to be paid over to Lender for disposition pursuant to the terms of this Deed of Trust.  The proceeds of any award, payment, or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender to the extent necessary to pay the Indebtedness.

(b)    Debtor authorizes Lender to apply such awards, payments, proceeds, or damages, after the deduction of Lender's reasonable expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property, or to payment of the sums secured by this Deed of Trust, whether or not then due, in the order of application set forth in Section 2.04, with the balance, if any, to Debtor.

(c)    In the event Lender, as a result of any such judgment, decree, or award, reasonably believes that the payment or performance of any obligation secured by this Deed of Trust is materially impaired, Lender may, upon providing Debtor with written notice, declare all of the Indebtedness immediately due and payable.

**6.08    TAXES ON NOTE OR DEED OF TRUST.**  If at any time any law shall be enacted imposing or authorizing the imposition of any tax upon this Deed of Trust, or upon any rights, title, liens, or security interests created by this Deed of Trust, or upon the Note, or any part of the Indebtedness, Debtor shall promptly pay all such taxes; provided that, if it is unlawful for Debtor to pay such taxes, Debtor shall prepay the Note in full without penalty within **THIRTY (30)** days after demand therefor by Lender.

**6.09    STATEMENTS BY DEBTOR.**  At the request of Lender, Debtor shall furnish promptly a written statement or affidavit, in such form as may be required by Lender, stating the unpaid balance of the Note, the date to which interest has been paid and that there are no offsets or defenses against full payment of the Note and performance of the terms of the Loan Documents, or, if there are such offsets or defenses, specifying them.

**6.10    REPAIR, WASTE, ALTERATIONS, ETC.**  Debtor shall keep every part of the Property in good operating order, repair, and condition and shall not commit or permit any waste thereof.  Debtor shall make promptly all repairs, renewals, and replacements necessary to such end.  Debtor shall discharge all claims for labor performed and material furnished therefor, and shall not suffer any lien of mechanics or materialmen to attach to any part of the Property.  Debtor shall have the right to contest in good faith the validity of any such mechanic's or materialman's lien, provided Debtor shall first furnish Lender a bond or other security satisfactory to Lender in such amount as Lender shall reasonably require, but not more than **ONE HUNDRED TWENTY PERCENT (120.00%)** of the amount of the claim, and provided further that Debtor shall thereafter diligently proceed to cause such lien to be removed and discharged.  If Debtor shall fail to discharge any such lien, then, in addition to any other right or remedy of Lender, Lender may, but shall not be obligated to, discharge the lien, either by paying the amount claimed to be due, or by procuring the discharge of such lien by depositing in court a bond for the amount claimed, or otherwise giving security for such claim, or by taking such action as may be prescribed by law.  Debtor shall guard every part of the Property from removal, destruction, and damage, and shall not do or suffer to be done any act whereby the value of any part of the property may be lessened.  Debtor or any tenant or other person shall not materially alter the Property without the prior written consent of Lender.

**6.11    NO DRILLING OR EXPLORATION.**  Without the prior written consent of Lender, there shall be no drilling or exploring for or extraction, removal, or production of minerals from the surface or subsurface of the

Land. The term "minerals" as used in this Deed of Trust shall include without limitation oil, gas, casinghead gas, coal, lignite, hydrocarbons, methane, carbon dioxide, helium, uranium and all other natural elements, compounds and substances, including sand and gravel.

**6.12    COMPLIANCE WITH LAWS.**  Debtor, the Property, and Debtor's use of the Property shall comply with all laws, rules, ordinances, regulations, covenants conditions, restrictions, orders and decrees of any governmental authority or court applicable to Debtor or the Property and its use, and Debtor shall pay all fees or charges of any kind in connection therewith. Debtor shall not initiate, participate in, or acquiesce in a change in the zoning classification of the Property without Lender's prior written consent.

**6.13    CERTAIN REPORTS AND INFORMATION.**  Debtor shall promptly deliver such information concerning Debtor, any Guarantor, and the Property as Lender may request.

**6.14    HOLD HARMLESS.**  Debtor shall defend, at Debtor's own cost and expense, and hold Lender harmless from, any proceeding or claim in any way relating to the Property or the Loan Documents, including, without limitation, *the ordinary negligence of Lender*; provided, however, the foregoing obligations shall not apply to the extent such proceedings or claims arise from or are caused by Lender's gross negligence or willful misconduct. All costs and expenses incurred by Lender in protecting its interest under this Deed of Trust, including all court costs and reasonable attorneys' fees and expenses, shall be borne by Debtor. The provisions of this Section shall survive the payment in full of the Indebtedness and the release of this Deed of Trust as to events occurring and causes of action arising before such payment and release.

**6.15    FURTHER ASSURANCES.**  Debtor, upon the request of Lender, shall execute, acknowledge, deliver, and record such further instruments and do such further acts as may be necessary, desirable, or proper to carry out the purposes of this Deed of Trust or the other Loan Documents and to subject to the liens and security interests created by this Deed of Trust or the other Loan Documents any Property intended to be covered by this Deed of Trust and the other Loan Documents pursuant to their terms, including without limitation any renewals, additions, substitutions, replacements, improvements, or appurtenances to the Property.

**6.16    RECORDING AND FILING.**  Debtor shall cause this Deed of Trust and the other recordable Loan Documents and all amendments, supplements, extensions, and substitutions thereof to be recorded, filed, re-recorded, and refiled in such manner and in such places as Lender shall reasonably request. Debtor shall pay all such recording, filing, re-recording, and re-filing fees, title insurance premiums, and other charges.

**6.17    PAYMENT OF DEBTS.**  Debtor shall promptly pay when due all obligations regarding the ownership and operation of the Property, except any such obligations which are being diligently contested in good faith by appropriate proceedings and as to which Debtor, if requested by Lender, shall have furnished to Lender security satisfactory to Lender.

**6.18    INSPECTION.**  Lender may make or cause to be made reasonable entries upon, and inspections of, the Property, in accordance with the Loan Agreement.

**6.19    PROTECTION OF LENDER'S SECURITY.**

(a)    If Debtor fails to perform the covenants and agreements contained in this Deed of Trust, or any action or proceeding is commenced which affects the Property or title thereto or the interest of Lender therein, including without limitation eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, Lender, at Lender's option may make such appearances, disburse such sums and take such action as Lender reasonably deems necessary, in its sole discretion, to protect Lender's interest, including without limitation, (i) disbursement of reasonable attorneys' fees, (ii) entry upon the Property to make necessary repairs, and (iii) procurement of satisfactory insurance as provided herein.

(b)    Any amounts disbursed by Lender pursuant to this Section with interest thereon, shall become additional indebtedness of Debtor secured by this Deed of Trust. Unless Debtor and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement

at the rate stated in the Note unless collection from Debtor of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest non-usurious rate which may be collected from Debtor under applicable law.  Debtor covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the Indebtedness.  Nothing contained in this Section shall require Lender to incur any expense or take any action under this Deed of Trust.

      **6.20**    **SUBORDINATE DEED OF TRUST**.  Debtor shall not, without the prior written consent of Lender, grant any lien, security interest, or other encumbrance (a "*Subordinate Deed of Trust*") covering any of the Property.  If Lender consents to a Subordinate Deed of Trust or if the foregoing prohibition is determined by a court of competent jurisdiction to be unenforceable, any such Subordinate Deed of Trust shall contain express covenants to the effect that:

          (a)    The Subordinate Deed of Trust is unconditionally subordinate to this Deed of Trust;

          (b)    If any action (whether judicial or pursuant to a power of sale) shall be instituted to foreclose or otherwise enforce the Subordinate Deed of Trust, no tenant of any of the Leases shall be named as a party defendant, and no action shall be taken that would terminate any occupancy or tenancy without the prior written consent of Lender;

          (c)    Rents, if collected by or for the holder of the Subordinate Deed of Trust, shall be applied first to the payment of the Indebtedness then due and expenses incurred in the ownership, operation, and maintenance of the Property in such order as Lender may determine, prior to being applied to any indebtedness secured by the Subordinate Deed of Trust; and

          (d)    Written notice of default under the Subordinate Deed of Trust and written notice of the commencement of any action (whether judicial or pursuant to a power of sale) to foreclose or otherwise enforce the Subordinate Deed of Trust shall be given to Lender with or immediately after the occurrence of any such default or commencement.

      **6.21**    **LIENS**.  Debtor shall promptly discharge any lien which has, or may have, priority over or equality with, the lien of this Deed of Trust, and Debtor shall pay, when due, the claims of any person supplying labor or materials to or in connection with the Property.  Without Lender's prior written permission, Debtor shall not allow any lien inferior to this Deed of Trust to be perfected against the Property.

      **6.22**    **BUSINESS USE**.  Debtor warrants and represents to Lender that the proceeds of the Note will be used solely for business or commercial purposes, and in no way will the proceeds be used for personal, family or household purposes.

      **6.23**    **NON-HOMESTEAD**.  Debtor warrants and represents to Lender that the Property is not the homestead of Debtor or any other person.  Debtor has no present intent to occupy in the future or use or claim in the future the Property as its homestead.

      **6.24**    **APPRAISAL**.  Lender may at its option obtain at Debtor's expense an appraisal of the Property or any part thereof by a third-party appraiser selected and instructed by Lender.  Such appraisal shall be obtained as often as once per calendar year (unless an Event of Default has occurred and is continuing, then from time to time as deemed necessary by Lender) or as required by any law or regulation applicable to Lender or loans of the type evidenced by the Note.  Each such appraiser and appraisal shall be satisfactory to Lender.  The costs of each such appraisal obtained pursuant to this Section shall be payable by Debtor to Lender on demand (which obligation Debtor hereby promises to pay) and shall be a part of an obligation of Debtor to Lender secured by this Deed of Trust, unless prohibited by applicable law.  Debtor agrees to cooperate fully with Lender, Lender's agents, and any appraiser selected by Lender in connection with any appraisal desired or required pursuant to this Section.

## ARTICLE VII
## EVENTS OF DEFAULT

The occurrence of an Event of Default under the Loan Agreement shall be an Event of Default hereunder.

## ARTICLE VIII
## DEFAULT AND REMEDIES

**8.01    ACCELERATION AND WAIVER OF NOTICES.**  Upon the occurrence of an Event of Default, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law or provided herein.  Debtor acknowledges that the power of sale granted to Lender may be exercised by Lender without prior judicial hearing.  Debtor and each Guarantor (by the execution and delivery of Guarantor's guaranty), surety, and endorser of all or any part of the Indebtedness expressly waive all presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, notices of intention to demand payment, demands for payment, protests, and notices of protest.

**8.02    NOTICE OF SALE.**  Notice of sale of all or part of the Property by the Trustee shall be given by posting written notice thereof at the courthouse door (or other area in the courthouse as may be designated for such public notices) of the county in which the sale is to be made, and by filing a copy of the notice in the office of the county clerk of the county in which the sale is to be made, at least **TWENTY-ONE (21)** days preceding the date of the sale, and if the Property to be sold is in more than one county a notice shall be posted at the courthouse door (or other area in the courthouse as may be designated for such public notices) and filed with the county clerk of each county in which the Property to be sold is situated or as otherwise required by the Texas Property Code.  If the Property to be sold is in more than one county, the notice shall designate the county in which the Property is to be sold.  In addition, Lender shall, at least **TWENTY-ONE (21)** days preceding the date of sale, serve written notice of the proposed sale by certified mail on Debtor and each person obligated to pay the Indebtedness secured hereby according to the Lender's records.  Service of such notice shall be completed upon deposit of the notice, enclosed in a postpaid wrapper, properly addressed to such person at the most recent address as shown by the records of Lender, in a post office or official depository under the care and custody of the United States postal service.  The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be *prima facie* evidence of the fact of service.  Any notice that is required or permitted to be given to Debtor may be addressed to Debtor at Debtor's address as stated above.  Any notice that is to be given by certified mail to any other person may, if no address for such other person is shown by records of Lender, be addressed to such other person at the address of Debtor as is shown by the records of Lender.  Notwithstanding the foregoing provisions of this Section notice of such sale given in accordance with the requirements of the applicable laws of the State of Texas in effect at the time of such sale shall constitute sufficient notice of such sale.  The Trustee or his successor or substitute may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Trustee, including the posting of notices and the conduct of sale, but in the name and on behalf of Trustee, his successor or substitute Trustee thereafter appointed may complete the sale and the conveyance of the Property pursuant thereto as if such notice had been given by the successor or substitute Trustee conducting the sale.

**8.03    TRUSTEE'S SALE.**  Lender may require the Trustee to sell all or part of the Property, at public auction, to the highest bidder, for cash, at the county courthouse of the county in Texas in which the Property or any part thereof is situated, or if the Property is located in more than one county such sale or sales may be made at the courthouse in any county in which the Property is situated.  All sales shall take place at such area of the courthouse as shall be properly designated from time to time by the commissioners court (or, if not so designated by the commissioners court, as such other area in the courthouse as may be provided in the notice of sale hereinafter described) of the specified county, between the hours of 10:00 o'clock a.m. and 4:00 o'clock p.m. (the commencement of such sale to occur within three hours following the time designated in the above described notice of sale as the earliest time at which such sale shall occur, if required by applicable law) on the first Tuesday of any month, after giving notice of the time, place and terms of said sale (including the earliest time at which such sale shall occur) and of the Property to be sold in the manner hereinafter described.  To the extent permitted by applicable law, any sale may be adjourned by announcement at the time and place appointed for such sale without further notice except as may be required by law.  Trustee may sell all or any portion of the Property, together or in lots or parcels.  In no event shall Trustee be required to exhibit, present or display at any such sale any of the

DEED OF TRUST – PAGE 13
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

Personal Property to be sold at such sale, Lender may bid and become the purchaser of all or any part of the Property at any trustee's or foreclosure sale hereunder, and the amount of Lender's successful bid may be credited on the Indebtedness. In the event any sale hereunder is not completed or is defective in the opinion of Lender, such sale shall not exhaust the power of sale hereunder, and Lender shall have the right to cause a subsequent sale or sales to be made hereunder.

      **8.04    PARTIAL SALES.** The sale by Trustee of less than the whole of the Property shall not exhaust the power of sale herein granted, and Trustee is specifically empowered to make successive sales under such power until the whole of the Property shall be sold; and if the proceeds of such sale of less than the whole of the Property shall be less than the aggregate of the Indebtedness and the expenses thereof, this Deed of Trust and the lien, security interest and assignment hereof shall remain in full force and effect as to the unsold portion of the Property just as though no sale had been made; provided, however, that Debtor shall never have any right to require the sale of less than the whole of the Property, but Lender shall have the right, at its sole election, to request Trustee to sell less than the whole of the Property. If there is a default on the payment of any installment on the Note or any portion of the Indebtedness, and Lender elects not to accelerate the unpaid balance of the Note or Indebtedness, Lender shall have the option to proceed with foreclosure in satisfaction of such unpaid installment or other amount either through judicial proceedings or by directing Trustee to proceed as if under a full foreclosure, conducting the sale as herein provided without declaring the entire Indebtedness due. It is agreed that such sale, if so made, shall not in any manner affect the unmatured part of the Indebtedness, but as to such unmatured part this Deed of Trust shall remain in full force and effect as though no sale had been made under the provisions of this Section. Several sales may be made hereunder without exhausting the right of sale for any unmatured part of the Indebtedness.

      **8.05    FORECLOSURE OF ALL PROPERTY.** The Land, Improvements, and Personal Property may be sold in one or more public sales pursuant to the Texas Property Code and the UCC. Debtor shall assemble the Personal Property and make it available to Lender upon Lender's written request. Debtor and all persons obligated to pay the Indebtedness agree that notice of sale of the Property provided pursuant to Section 8.02 above and pursuant to the Texas Property Code is and shall constitute commercially reasonable notice of the sale of the Property or any part of the Property. Lender shall also be entitled to foreclose its security interests against the Personal Property in accordance with any other rights and remedies Lender may have as a secured party under the UCC.

      **8.06    TRUSTEE'S DEED.** Trustee shall deliver to the purchaser a Trustee's deed and such other assignments and documents of transfer and sale as Trustee may deem necessary conveying the Property so sold in fee simple with covenants of general warranty. Debtor covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. At any such sale (a) Debtor hereby agrees, in its behalf and in behalf of Debtor's heirs, executors, administrators, successors, personal representatives and assigns, that any and all recitals made in any deed of conveyance given by Trustee with respect to the identity of Lender, the occurrence or existence of any default, the acceleration of the maturity of any of the Indebtedness, the request to sell, the notice of sale, the giving of notice to all persons legally entitled thereto, the time, the place, terms and manner of sale, and receipt, distribution and application of the money realized therefrom, or the due and proper appointment of a substitute Trustee, and, without being limited by the foregoing, with respect to any other act or thing having been duly done by Lender or by Trustee hereunder, shall be taken by all courts of law and equity as *prima facie* evidence that the statements or recitals state facts and are without further question to be so accepted, and Debtor hereby ratifies and confirms every act that Trustee or any substitute Trustee hereunder may lawfully do in the premises by virtue hereof, and (b) the purchaser may disaffirm any easement granted, subdivision plat filed, or rental, lease or other contract made in violation of any provision or this Deed of Trust, and may take immediate possession of the Property free from, and despite the terms of, such grant of easement, subdivision plat, or rental, lease or other contract.

      **8.07    PROCEEDS OF SALE.** Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including but not limited to, reasonable Trustee's fees and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust in such order as Lender, in Lender's sole discretion, directs; and (c) the excess, if any, to the person or persons legally entitled thereto.

      **8.08    POSSESSION AFTER SALE.** Debtor or any person holding possession of the Property through Debtor shall immediately surrender possession of the Property to the purchaser at such sale upon the purchaser's

DEED OF TRUST – PAGE 14
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

written demand. If possession is not surrendered upon the purchaser's written demand, Debtor or such person shall be a tenant at sufferance and may be removed by writ of possession or by an action for forcible entry and detainer.

**8.09    COSTS AND EXPENSES.**  Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing such remedies, including but not limited to, reasonable attorneys' fees and costs of documentary evidence, abstracts, and title reports.

**8.10    SUBSTITUTE TRUSTEE.**  Lender, at Lender's option, with or without cause, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee shall succeed to all title, power, and duties conferred upon the Trustee by this Deed of Trust and by applicable law.

**8.11    REMEDIES CUMULATIVE.**  Each remedy provided in this Deed of Trust is distinct and cumulative to all other rights or remedies under this Deed of Trust or afforded by law or equity, and may by exercised concurrently, independently, or successively, in any order whatsoever.

**8.12    FORBEARANCE BY LENDER NOT A WAIVER.**  Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of any sum secured by this Deed of Trust after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the Indebtedness, nor shall Lender's receipts of any awards, proceeds or damages under this Deed of Trust operate to cure or waive Debtor's default in payment of sums secured by this Deed of Trust.

**8.13    INTENTIONALLY DELETED.**

**8.14    WAIVER OF MARSHALLING.**  Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Debtor, any party who consents to this Deed of Trust, and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice of this Deed of Trust and Lender's rights and interests under this Deed of Trust, hereby waive any and all right to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided by this Deed of Trust.

## ARTICLE IX
### ENVIRONMENTAL, HEALTH, AND SAFETY MATTERS

**9.01    DEFINITIONS.**  For the purposes of this Deed of Trust, Debtor, Lender, and Trustee agree that, unless the context otherwise specifies or requires, the following terms shall have the following meanings:

(a)    "*Environmental Claim*" means any investigative, enforcement, cleanup, removal, containment, remedial, or other governmental or regulatory action at any time threatened, instituted, or completed pursuant to any Governmental Requirements against Debtor or against or with respect to the Property or its use, and any claim threatened or made by any person against Debtor or against or with respect to the Property or its use relating to damage, contribution, cost recovery, compensation, or injury resulting from any alleged breach or violation of any Governmental Requirements.

(b)    "*Environmental Condition*" means any condition, circumstances, or matter related to or connected with the Property or Debtor's ownership and use of the Property which is covered by any Governmental Requirements.

(c)    "*Governmental Requirements*" means any and all laws, statutes, ordinances, rules regulations, orders, or determinations of any governmental authority, whether federal, state, county, city, or otherwise pertaining to health, safety, or the environment in effect in any and all jurisdictions in which Debtor conducts business or

DEED OF TRUST – PAGE 15
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

where the Property is located, including without limitation: (i) the Resource Conservation and Recovery Act of 1976 (42 U.S.C. § 6901 *et seq.*) as amended from time to time including without limitation as amended by the Used Oil Recycling Act of 1980, the Solid Waste Disposal Act Amendments of 1980, and the Hazardous and Solid Waste Amendments of 1984 ("*RCRA*"), and regulations promulgated thereunder; (ii) the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601 *et seq.*) as amended from time to time, including without limitation as amended by the Superfund Amendments and Reauthorization Act of 1986 ("*CERCLA*"), and regulations promulgated thereunder; (iii) the Toxic Substances Control Act (15 U.S.C. § 2601 *et seq.*), as amended from time to time; (iv) the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*) as amended from time to time ("*ADA*"), and all regulations and guidelines promulgated pursuant to the ADA, and all other similar laws, including without limitation the Architectural Barriers Act of 1968, the Texas Architectural Barriers Statute of 1978, and the Fair Housing Amendments Act of 1958, and all as amended from time to time and including all regulations promulgated pursuant to any one or more of them; (v) the Endangered Species Act (15 U.S.C. § 1531 *et seq.*) as amended from time to time; (vi) laws, statutes, ordinances, rules, regulations, orders, or determinations relating to wetlands, including without limitation those set forth in the Clean Water Act (33 U.S.C. § 1251 *et seq.*) as amended from time to time; (vii) the Texas Water Code, as amended from time to time; and (viii) the Texas Solid Waste Disposal Act (Tex. Health & Safety Code Ann. § 361.001-361.345), as amended from time to time.

(d)     "*Hazardous Materials*" means (i) any "hazardous waste" as defined by RCRA, and regulations promulgated thereunder; (ii) any "hazardous substance" as defined by CERCLA, and regulations promulgated thereunder; (iii) any toxic substance as defined under or regulated by the Toxic Substances Control Act; (iv) asbestos, polychlorinated biphenyls, radon, or explosive or radioactive materials; (v) underground and above ground storage tanks, whether empty, filled or partially filled with any substance, including without limitation any petroleum product or any other "hazardous substance;" (vi) any substance the presence of which on the Property is prohibited by any Governmental Requirements; and (vii) any other substance which by any Governmental Requirement requires special handling or notification of any federal, state, or local governmental entity in its collection, storage, treatment, or disposal.

(e)     "*Hazardous Materials Contamination*" means the contamination (whether presently existing or hereafter occurring) of any improvements, facilities, soil, groundwater, air, or other elements on or of the Property by Hazardous Materials, or the contamination of the buildings, facilities, soil, groundwater, air, or other elements on or of any other property as a result of Hazardous Materials at any time (whether before or after the date of this Deed of Trust) emanating from the Property.

**9.02     REPRESENTATIONS AND WARRANTIES.**  Debtor represents and warrants to Lender that:

(a)     Debtor has obtained all necessary permits, licenses, and authorizations for the Property and Debtor's use of the Property, including without limitation all necessary permits, licenses, and authorizations for Debtor's intended development of the Property, construction of the Improvements, or any other improvements to or construction on the Property, if applicable; and

(b)     The Property is in compliance with all Governmental Requirements, and Debtor's intended use of the Property will comply with all Governmental Requirements; and

(c)     Not in limitation of the foregoing, that: (i) no Hazardous Materials are now located on the Property, and neither Debtor nor, to the best of Debtor's knowledge and belief after due inquiry, any other person has ever caused or permitted any Hazardous Materials to be placed, held, located, or disposed of on, under, or at the Property or any part thereof; (ii) no part of the Property is being used or to the best of Debtor's knowledge and belief after due inquiry, has been used at any previous time for the disposal, storage, treatment, processing, or other handling of Hazardous Materials, nor is any part of the Property affected by any Hazardous Materials Contamination; (iii) to the best of Debtor's knowledge and belief after due inquiry, no property adjoining the Property is being used, or has ever been used at any previous time, for the disposal, storage, treatment, processing, or other handling of Hazardous Materials, nor is any other property adjoining the Property affected by Hazardous Materials Contamination; (iv) to the best of Debtor's knowledge and belief after due inquiry, no investigation, administrative order, consent order and agreement, litigation, or settlement with respect to Hazardous Materials or Hazardous Materials Contamination is proposed, threatened, anticipated or in existence with respect to the Property;

and (v) to the best of Debtor's knowledge and belief after due inquiry, the Property is not currently on and has never been on any federal or state "Superfund" or "Superlien" list.

**9.03    DEBTOR'S COVENANTS.**  Debtor agrees to (a) give notice to Lender immediately upon Debtor's acquiring knowledge of the presence of any Hazardous Materials on the Property or of any Hazardous Materials Contamination with a full description thereof; (b) give notice to Lender immediately upon Debtor's acquiring knowledge of any Environmental Claim; (c) comply at all times with any Governmental Requirements applicable to the Property; (d) require all employees, agents, or representatives of Debtor, all tenants and their agents and employees, and all contractors, subcontractors, suppliers, or other persons performing or involved in the construction or maintenance of the Property and Improvements to comply at all times with all Governmental Requirements; (e) provide Lender with satisfactory evidence of such compliance with Governmental Requirements; and (f) provide Lender, within **THIRTY (30)** days after demand by Lender, with a bond, letter of credit, or similar financial assurance evidencing to Lender's satisfaction that the necessary funds are available to pay the cost of complying with any Governmental Requirements, including without limitation removal, treatment and disposal of Hazardous Materials on the Property or Hazardous Materials Contamination to the Property and discharge of any assessments or liens which may be established on or against the Property as a result thereof.

**9.04    SITE ASSESSMENTS.**  Lender (by its officers, employees, and agents) at any time and from time to time, either prior to or after the occurrence of an Event of Default, may contract for the services of persons (the "*Site Reviewers*") to perform site assessments ("*Site Assessments*") on the Property for the purpose of determining whether there exists on the Property any Environmental Condition which could reasonably be expected to result in a violation of any Governmental Requirements or in an Environmental Claim.  The Site Assessments may be performed at any time for good cause and upon reasonable notice to Debtor, and under reasonable conditions established by Debtor which do not impede the performance of the Site Assessments.  The Site Reviewers are authorized to enter upon the Property for such purposes.  The Site Reviewers are further authorized to perform both above and below the ground testing for environmental damage or the presence of Hazardous Materials on the Property and such other tests on the Property as may be necessary to conduct the Site Assessments in the reasonable opinion of the Site Reviewers.  Debtor will supply to the Site Reviewers such historical and operational information regarding the Property as may be reasonably requested by the Site Reviewers to facilitate the Site Assessments and will make available for meetings with the Site Reviewers appropriate personnel having knowledge of such matters.  On request, Lender shall make the results of such Site Assessments fully available to Debtor, which (prior to an Event of Default hereunder) may, at Debtor's election, participate under reasonable procedures in the direction of such Site Assessments and the description of tasks of the Site Reviewers.  The cost of performing such Site Assessments shall be paid by Debtor upon demand of Lender and any such obligations shall be Indebtedness secured by this Deed of Trust.

**9.05    INDEMNIFICATION.    DEBTOR, FOR VALUABLE CONSIDERATION WHICH DEBTOR ACKNOWLEDGES RECEIVING, SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS LENDER AND TRUSTEE FROM AND AGAINST ANY AND ALL LIABILITIES (INCLUDING STRICT LIABILITY AND *INCLUDING, WITH REGARD TO SITE ASSESSMENTS, LENDER'S OWN NEGLIGENCE*), ACTIONS, DEMAND, PENALTIES, LOSSES, COSTS, OR EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS' FEES AND EXPENSES, AND REMEDIAL COSTS), SUITS, COSTS OF ANY SETTLEMENT OR JUDGMENT AND CLAIMS OF ANY AND EVERY KIND WHATSOEVER WHICH MAY NOW OR IN THE FUTURE (WHETHER BEFORE OR AFTER THE RELEASE OF THIS DEED OF TRUST) BE PAID, INCURRED, OR SUFFERED BY OR ASSERTED AGAINST LENDER OR TRUSTEE BY ANY PERSON OR ENTITY OR GOVERNMENTAL AGENCY FOR, WITH RESPECT TO, OR AS A DIRECT OR INDIRECT RESULT OF A VIOLATION OR BREACH OF ANY GOVERNMENTAL REQUIREMENTS OR ANY ENVIRONMENTAL CLAIM, REGARDLESS OF WHETHER OR NOT CAUSED BY OR WITHIN THE CONTROL OF DEBTOR, LENDER OR TRUSTEE, EXCEPT TO THE EXTENT CAUSED BY LENDER'S OR TRUSTEE'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.    THE REPRESENTATIONS, COVENANTS, WARRANTIES, AND INDEMNIFICATION CONTAINED IN THIS <u>ARTICLE IX</u> SHALL SURVIVE THE RELEASE OF THIS DEED OF TRUST.**

**9.06    LENDER'S RIGHTS.**  Lender shall have the right, but not the obligation, prior or subsequent to an Event of Default, without in any way limiting Lender's other rights and remedies under this Deed of Trust, to

DEED OF TRUST – PAGE 17
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

enter onto the Property or to take such other actions as it deems necessary or advisable to clean up, remove, resolve, or minimize the impact of, or otherwise deal with, any Environmental Condition on the Property following receipt of any notice from any person or entity asserting the existence of any Environmental Condition pertaining to the Property or any part thereof which if true, could result in an order, suit, imposition of a lien on the Property, or other action and/or which, in Lender's sole opinion, could jeopardize Lender's security under this Deed of Trust.  All reasonable costs and expenses paid or incurred by Lender in the exercise of any such rights shall be Indebtedness secured by this Deed of Trust and shall be payable by Debtor upon demand.

**9.07**    **NO WAIVER**.  Notwithstanding any provision in this Article IX or elsewhere in this Deed of Trust, or any rights or remedies granted by this Deed of Trust, Lender does not waive and expressly reserves all rights and benefits now or hereafter accruing to or available to Lender under the 'security interest exception' set forth in 40 C.F.R. § 300.1100.  No action taken by Lender pursuant to this Deed of Trust or any other Loan Document shall be deemed or construed to be a waiver or relinquishment of any rights or benefits under the "secured creditor exemption" or "secured party exemption" under CERCLA.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.01**    **RELEASE**.  Upon payment of all sums and the performance of all obligations secured by this Deed of Trust, Lender shall release this Deed of Trust.  Debtor shall pay Lender's reasonable costs incurred in releasing this Deed of Trust.

**10.02**    **DEBTOR AND LIEN NOT RELEASED**.  From time to time, Lender may, at Lender's option, without giving notice to or obtaining the consent of Debtor, Debtor's successors or assigns or any junior lienholder or Guarantor, without liability on Lender's part and notwithstanding the existence of an Event of Default, extend the time for payment of the Indebtedness or any part thereof, reduce the payments thereon, release anyone liable on any of the Indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of the Indebtedness, release from the liens of this Deed of Trust any part of the Property, take or release other or additional security, reconvey any part of the Property, consent to any map or plan of the Property, consent to the granting of any easement, join in any extension or subordination agreement, and agree in writing with Debtor to modify the rate of interest or period of amortization of the Note or change the amount of the installments payable thereunder.  Any actions taken by Lender pursuant to the terms of this Section shall not affect the obligation of Debtor or Debtor's successors or assigns to pay the sums secured by this Deed of Trust and to observe the covenants of Debtor contained herein, shall not affect the guaranty of any person, corporation, partnership, or other entity for payment of the Indebtedness or any part thereof, and shall not affect the liens or priority of liens of this Deed of Trust on the Property.  Debtor shall pay Lender a reasonable charge, together with such title insurance premiums and attorneys' fees as may be incurred at Lender's option, for any such action if taken at Debtor's request.

**10.03**    **POWER OF ATTORNEY**.  Debtor hereby irrevocably appoints Lender as Debtor's attorney-in-fact, such power of attorney being coupled with an interest, with full authority in the place and stead of Debtor and in the name of Debtor or otherwise, from time to time following the occurrence and during the continuation of an Event of Default in Lender's reasonable discretion, to take any action and to execute any instrument which Lender may deem necessary or appropriate to enforce the rights of Lender with respect to the Property.

**10.04**    **NOTICE**.  All notices or other communications required or permitted to be given pursuant to this Deed of Trust shall be in writing and shall be considered as properly given if (i) mailed by first class United States mail, postage prepaid, registered or certified with return receipt requested, (ii) by delivering same in person to the intended addressee, or (iii) by delivery to an independent third party commercial delivery service for same day or next day delivery and providing for evidence of receipt at the office of the intended addressee.  Notice so mailed shall be effective upon its deposit with the United States Postal Service or any successor thereto; notice sent by such a commercial delivery service shall be effective upon delivery to such commercial delivery service; notice given by personal delivery shall be effective only if and when received by the addressee; and notice given by other means shall be effective only if and when received at the office or designated place or machine of the intended addressee.  For purposes of notice, the addresses of the parties shall be as set forth herein; provided, however, that either party

DEED OF TRUST – PAGE 18
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

shall have the right to change its address for notice hereunder to any other location within the continental United States by the giving notice to the other party in the manner set forth herein.

**10.05    SUCCESSORS AND ASSIGNS BOUND.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Debtor.

**10.06    JOINT AND SEVERAL LIABILITY.** All covenants and agreements of Debtor (if more than one) shall be joint and several.

**10.07    AGENTS.** In exercising any rights hereunder or taking any actions provided for herein, Lender may act through its employees, agents or independent contractors as authorized by Lender.

**10.08    GOVERNING LAW.   THIS DEED OF TRUST SHALL BE GOVERNED BY THE APPLICABLE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES OF AMERICA APPLICABLE TO TRANSACTIONS IN THE STATE OF TEXAS.**

**10.09    SEVERABILITY.** In the event that any provision of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provisions, and to this end the provisions of this Deed of Trust and the Note are declared to be severable.

**10.10    USURY DISCLAIMER.** The term "*Maximum Lawful Rate*" means the maximum rate of interest and the term Maximum Lawful Amount means the maximum amount of interest that is permissible under applicable state or federal law for the type of loan evidenced by the Note and the other Loan Documents. Lender does not intend to contract for, charge or receive more than the Maximum Lawful Rate or Maximum Lawful Amount permitted by applicable state or federal law, and to prevent such an occurrence Lender and Debtor agree that all amounts of interest, whenever contracted for, charged or received by Lender, with respect to the loan of money evidenced by the Note or with respect to any other amount payable under this Deed of Trust or any of the other Loan Documents, shall be spread, prorated or allocated over the full period of time the Note is unpaid, including the period of any renewal or extension of the Note. If demand for payment of the Note is made by Lender prior to the full stated term, the total amount of interest contracted for, charged or received to the time of such demand shall be spread, prorated or allocated along with any interest thereafter accruing over the full period of time that the Note thereafter remains unpaid for the purpose of determining if such Interest exceeds the Maximum Lawful Amount. At maturity (including maturity due to Lender's acceleration of the Note) or on earlier final payment of the Note, Lender shall compute the total amount of interest that has been contracted for, charged or received by Lender or payable by Debtor under the Note and compare such amount to the Maximum Lawful Amount that could have been contracted for, charged or received by Lender. If such computation reflects that the total amount of interest that has been contracted for, charged or received by Lender or payable by Debtor exceeds the Maximum Lawful Amount, then Lender shall apply such excess to the reduction of the principal balance and not to the payment of interest; or if such excess interest exceeds the unpaid principal balance, such excess shall be refunded to Debtor. This provision concerning the crediting or refund or excess Interest shall control and take precedence over other agreements between Debtor and Lender so that under no circumstances shall the total interest contracted for, charged or received by Lender exceed the Maximum Lawful Amount.

**10.11    PARTIAL INVALIDITY.** In the event any portion of the sums intended to be secured by this Deed of Trust cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**10.12    CAPTIONS.** The captions and headings of the Articles and Sections of this Deed of Trust are for convenience only and are not to be used to interpret or define the terms and provisions of this Deed of Trust.

**10.13    DEFINITIONS.** Capitalized terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Loan Agreement.

10.14   **WAIVER OF JURY TRIAL. DEBTOR AND LENDER EACH WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (i) UNDER THIS DEED OF TRUST OR ANY RELATED DOCUMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR ANY RELATED DOCUMENT OR (ii) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION HEREWITH, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. DEBTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER OR ANY OTHER PERSON INDEMNIFIED UNDER THIS DEED OF TRUST ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.**

10.15   **PATRIOT ACT NOTICE. LENDER HEREBY NOTIFIES DEBTOR AND EACH GUARANTOR THAT PURSUANT TO THE REQUIREMENTS OF THE USA PATRIOT ACT, 31 U.S.C. § 5318 (THE "_ACT_"), IT IS REQUIRED TO OBTAIN, VERIFY AND RECORD INFORMATION THAT IDENTIFIES DEBTOR AND EACH GUARANTOR, WHICH INFORMATION INCLUDES THE NAME AND ADDRESS OF DEBTOR AND EACH GUARANTOR AND OTHER INFORMATION THAT WILL ALLOW SUCH LENDER TO IDENTIFY DEBTOR AND EACH GUARANTOR IN ACCORDANCE WITH THE ACT.**

10.16   **FACT ACT CERTIFICATION.** Debtor hereby acknowledges that Lender may report information about the Indebtedness of Debtor to credit bureaus. Late payments, missed payments or other defaults on the Indebtedness may be reflected in Debtor's credit report.

10.17   **INCORPORATION OF NOTICE OF FINAL AGREEMENT**. It is the intention of Debtor, Guarantor and Lender that the following **NOTICE OF FINAL AGREEMENT** be incorporated by reference into each of the Loan Documents (as the same may be amended, modified or restated from time to time). Debtor, Guarantor and Lender warrant and represent that the entire agreement made and existing by or among Debtor, Guarantor and Lender with respect to the Indebtedness is and shall be contained within the Loan Documents, and that no agreements or promises exist or shall exist by or among, Debtor, Guarantor and Lender that are not reflected in the Loan Documents.

---

### _NOTICE OF FINAL AGREEMENT_

THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES, AND THE SAME MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

---

### _NOTICE OF INDEMNIFICATION_

DEBTOR HEREBY ACKNOWLEDGES AND AGREES THAT THIS DEED OF TRUST CONTAINS CERTAIN INDEMNIFICATION PROVISIONS (INCLUDING, WITHOUT LIMITATION, THOSE CONTAINED IN SECTIONS 4.09 AND 9.05 HEREOF) WHICH, IN CERTAIN CIRCUMSTANCES, COULD INCLUDE AN INDEMNIFICATION BY DEBTOR OF LENDER FROM CLAIMS OR LOSSES ARISING AS A RESULT OF LENDER'S OWN NEGLIGENCE.

---

_REMAINDER OF PAGE INTENTIONALLY LEFT BLANK._
_SIGNATURE PAGE FOLLOWS._

EXECUTED as of the date of the acknowledgement below, but to be effective as of the Effective Date.

*DEBTOR:*

4512 STEFFANI PROPERTY, LLC

By: 
Name:   Jason M. White
Title:    President

---

STATE OF TEXAS   Harris   §
COUNTY OF   §

    This instrument was acknowledged before me on July 13, 2018, by JASON M. WHITE, PRESIDENT of 4512 STEFFANI PROPERTY, LLC, a Texas limited liability company, on behalf of said entity.

> LAURIE GRAEF
> Notary Public, State of Texas
> Comm. Expires 12-10-2021
> Notary ID 3236279

Notary Public, State of Texas

---

*DOCUMENT PREPARED BY:*

HUSCH BLACKWELL LLP
1800 Bering Drive, Suite 750
Houston, TX 77057
Attention:       Reuben D. Rosof

**EXHIBIT A**
**LEGAL DESCRIPTION**

Restricted Reserve "A", Block One (1), of Watson Warehouse, a subdivision in Harris County, Texas, according to map or plat thereof filed for record under Film Code No. 654270 of the Map Records of Harris County, Texas.

*AFTER RECORDING RETURN TO:*

**TEXAS CAPITAL BANK, NATIONAL ASSOCIATION**
2350 Lakeside Boulevard, Suite 800
Richardson, Texas 75082
Attention:   Loan Operations

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**SUBORDINATION, NONDISTURBANCE AND
ATTORNMENT AGREEMENT**
(this "*Agreement*")

| | |
|---|---|
| **EFFECTIVE DATE:** | **JULY 13, 2018** |
| **LENDER:** | **TEXAS CAPITAL BANK, NATIONAL ASSOCIATION,**<br>a national banking association<br>2350 Lakeside Boulevard, Suite 800<br>Richardson, Texas 75082<br>Attention:         Loan Operations |
| **LANDLORD:** | **4512 STEFFANI PROPERTY, LLC,**<br>a Texas limited liability company<br>27440 Waller Spring Creek Road<br>Hockley, TX 77447<br>Attention:       Jason M. White |
| **TENANT:** | **WATSON VALVE SERVICES, INC.,**<br>a Texas corporation<br>4525 Gessner Road<br>Houston, TX 77041<br>Attention:       John M. Watson |

**RECITALS:**

**WHEREAS**, it is contemplated that Lender will lend money to Landlord, and as security therefor, Landlord will grant Lender a first mortgage lien (the "*Mortgage*") on the real property described on Exhibit A attached hereto and all of the buildings and improvements thereon (collectively, the "*Property*"); and

**WHEREAS**, Tenant is a party to that certain **COMMERCIAL LEASE AGREEMENT** (as amended, modified and supplemented from time to time, the "*Lease*") dated  *July 13, 2018* , by and between the Landlord, as the landlord, and Tenant, as the tenant, covering that portion of the Property described in the Lease (hereinafter called the "*Leased Premises*"); and

**WHEREAS**, Landlord, Tenant and Lender desire to confirm and agree upon certain of their rights and obligations with respect to the Lease and the Mortgage;

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements herein contained, Landlord, Tenant and Lender hereby agree and covenant as follows:

SUBORDINATION, NONDISTURBANCE AND ATTORNMENT AGREEMENT – PAGE 1
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

1.    **Subordination**.  The Lease shall at all times be subject and subordinate in each and every respect to the Mortgage and to any and all increases, renewals, modifications, extensions, substitutions, replacements and/or consolidations of the Mortgage.

2.    **Nondisturbance**.  So long as Tenant is not in default (beyond any period given Tenant in the Lease to cure such default) in the payment of rent or in the performance of any of the terms, covenants or conditions of the Lease on Tenant's part to be performed: (i) Tenant's possession of the Leased Premises and Tenant's rights and privileges under the Lease, or any extensions or renewals thereof, or expansions into additional space within the Property which may be effected in accordance with the terms of the Lease, shall not be diminished or interfered with by Lender in the exercise of any of its rights under the Mortgage; (ii) Tenant's occupancy of the Leased Premises or any such expansion space shall not be disturbed by Lender in the exercise of any of its rights under the Mortgage during the term of the Lease or any such extensions or renewals thereof; and (iii) Lender will not join Tenant as a party defendant in any action or proceeding for the purpose of terminating Tenant's interest and estate under the Lease because of any default under the Mortgage.

3.    **Attornment**.  In the event any proceedings are brought for the foreclosure of the Mortgage or if the Property is sold pursuant to a trustee's sale under the Mortgage, or upon a transfer of the Property by conveyance in lieu of foreclosure, Tenant shall attorn to the purchaser upon any such foreclosure sale or trustee's sale or transfer in lieu thereof and shall recognize such purchaser as the landlord under the Lease.  Such attornment shall be effective and self-operative without the execution of any further instrument on the part of any of the parties hereto. Tenant agrees, however, to execute and deliver at any time and from time to time, upon the request of Lender, any instrument or certificate which, in the reasonable judgment of Lender, may be necessary or appropriate in any such foreclosure proceeding or otherwise to evidence such attornment.  Tenant hereby irrevocably appoints Lender and any other or future holders of the indebtedness or other obligations secured by the Mortgage or any such purchaser, jointly and severally, the agent and attorney in fact of Tenant to execute and deliver for and on behalf of Tenant any such instrument or certificate.  In the event of any such attornment, Tenant further waives the provisions of any statute or rule of law, now or hereafter in effect, which may give or purport to give Tenant any right to terminate or otherwise adversely affect the Lease and the obligations of Tenant thereunder as a result of any such foreclosure proceeding, trustee's sale or conveyance in lieu thereof.

4.    **Foreclosure and Sale**.  If Lender shall succeed to the interest of Landlord under the Lease in any manner, or if any purchaser acquires the Leased Premises upon any foreclosure of the Mortgage or any trustee's sale under the Mortgage, Lender or such purchaser, as the case may be, shall have the same remedies by entry, action or otherwise in the event of any default by Tenant (beyond any period given to Tenant in the Lease to cure such default) in the payment of rent or additional rent or in the performance of any of the terms, covenants and conditions of the Lease on Tenant's part to be performed that Landlord had or would have had if Lender or such purchaser had not succeeded to the interest of Landlord.  From and after attornment by Tenant, Lender or such purchaser shall be bound to Tenant under all of the terms, covenants, and conditions of the Lease, and Tenant shall, from and after the succession to the interest of Landlord under the Lease by Lender or such purchaser, have the same remedies against Lender or such purchaser for the breach of an agreement contained in the Lease that Tenant might have had under the Lease against Landlord if Lender or such purchaser had not succeeded to the interest of Landlord; provided further, however, that Lender or such purchaser shall not in any event be:

        (a)    liable for any act or omission of any prior landlord (including Landlord); or

        (b)    subject to any offsets or defenses which Tenant might have against any prior landlord (including Landlord); or

        (c)    bound by any rent or additional rent which Tenant might have paid for more than the current month to any prior landlord (including Landlord), or by any security deposit, cleaning deposit or other prepaid charge which Tenant might have paid in advance to any prior landlord (including Landlord), unless actually received by Lender or such purchaser; or

        (d)    bound by or liable for any obligation of the landlord to pay any sums of money to or for the benefit of or on behalf of Tenant for concessions or inducements granted to Tenant by any prior landlord (including Landlord) except as expressly set forth in the Lease; or

(e)     bound by any amendment or modification of the Lease made without its consent.

5.     **Acknowledgment and Agreement by Tenant**.  Tenant acknowledges and agrees that:

(a)     Lender, in making any disbursements to Landlord, is under no obligation or duty to oversee or direct the application of the proceeds of such disbursements, and such proceeds may be used by Landlord for purposes other than improvement of the Property.

(b)     From and after the date hereof, in the event of any act or omission by Landlord which would give Tenant the right, either immediately or after the lapse of time, to cease paying rent or terminate the Lease or to claim a partial or total eviction, Tenant will not exercise any such right:

(i)     until it has given written notice of such act or omission to Lender; and

(ii)     if Landlord shall have failed to cure such default within the time provided for in the Lease, then the Lender shall have an additional **THIRTY (30)** days within which to cure such default or if such default cannot be cured within that time, then such additional time as may be necessary to cure such default shall be deemed granted to Lender if within such **THIRTY (30)** days Lender has commenced and is diligently pursuing the remedies necessary to cure such default (including, but not limited to, commencement of foreclosure proceedings, if necessary to effect such cure), in which event the Lease shall not be terminated while such remedies are being so diligently pursued.

(c)     It has notice that the Lease and the rent and all other sums due thereunder are to be or have been assigned to Lender as security for the loan secured by the Mortgage.  In the event that Lender notifies Tenant of a default under the Mortgage and demands that Tenant pay its rent and all other sums due under the Lease to Lender, Tenant shall honor such demand and pay its rent and all other sums due under the Lease directly to Lender or as otherwise required pursuant to such notice.

(d)     It shall send a copy of any notice or statement claiming a default by Landlord under the Lease to Lender at the same time such notice or statement is sent to Landlord.

(e)     This Agreement satisfies any condition or requirements in the Lease relating to the granting of a non-disturbance agreement.

6.     **Acknowledgment and Agreement by Landlord**.  Landlord, as landlord under the Lease and mortgagor or grantor under the Mortgage, acknowledges and agrees for itself and its successors and assigns, that:

(a)     This Agreement does not: (i) constitute a waiver by Lender of any of its rights under the Mortgage; and/or (ii) in any way release Landlord from its obligations to comply with the terms, provisions, conditions, covenants, agreements and clauses of the Mortgage;

(b)     The provisions of the Mortgage remain in full force and effect and must be complied with by Landlord; and

(c)     In the event of a default under the Mortgage, Tenant may pay all rent and all other sums due under the Lease to Lender as provided in this Agreement.

7.     **Notice**.  All notices to be delivered hereunder to Lender shall be deemed to have been duly given if mailed under United States registered or certified mail, with return receipt requested, postage prepaid to Lender at the address set forth above (or at such other address as shall be given in writing by Lender to Tenant) and shall be deemed complete upon any such mailing.

8.     **Miscellaneous**.

SUBORDINATION, NONDISTURBANCE AND ATTORNMENT AGREEMENT – PAGE 3
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

(a)     The Mortgage, the other Loan Documents (as defined in the Mortgage) and this Agreement supersede any inconsistent provision of the Lease.

(b)     Lender shall have no obligations nor incur any liability with respect to any warranties of any nature whatsoever, whether pursuant to the Lease or otherwise, including, without limitation, any warranties respecting use, compliance with zoning, Landlord's title, Landlord's authority, habitability, fitness for purpose or possession.

(c)     This Agreement shall inure to the benefit of the parties hereto, their respective successors and permitted assigns; provided, however, that in the event of the assignment or transfer of the interest of Lender, all obligations and liabilities of Lender under this Agreement shall terminate, and thereupon all such obligations and liabilities shall be the responsibility of the party to whom Lender's interest is assigned or transferred.

(d)     This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

9.     **Condition Precedent to Effectiveness**.  Notwithstanding anything to the contrary contained in this Agreement, this Agreement shall be binding on the parties hereto only if Lender advances a loan to Landlord that is secured by the Mortgage.

*REMAINDER OF PAGE LEFT INTENTIONALLY BLANK*

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the Effective Date.

*LENDER:*

TEXAS CAPITAL BANK, NATIONAL ASSOCIATION

By: _____

Name:   Cody Cannon

Title:   Senior Vice President

---

STATE OF _Texas_ §

COUNTY OF _Harris_ §

This instrument was acknowledged before me on this _13_ day of _July_, 2018, by CODY CANNON, SENIOR VICE PRESIDENT of TEXAS CAPITAL BANK, NATIONAL ASSOCIATION, a national banking association, on behalf of said bank.

[SEAL]   LAURIE GRAEF
Notary Public, State of Texas
Comm. Expires 12-10-2021
Notary ID 3236279

_____
Notary Public, State of Texas

---

*SIGNATURES CONTINUED ON THE FOLLOWING PAGE*

SUBORDINATION, NONDISTURBANCE AND ATTORNMENT AGREEMENT – SIGNATURE PAGE
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

*TENANT:*

WATSON VALVE SERVICES, INC.

By: _____

Name:   John M. Watson

Title:   Chief Executive Officer

---

STATE OF _____   §

COUNTY OF _____   §

    This instrument was acknowledged before me on _July 13_, 2018, by JOHN M. WATSON, CHIEF EXECUTIVE OFFICER of WATSON VALVE SERVICES, INC., a Texas corporation, on behalf of said entity.

LAURIE GRAEF
Notary Public, State of Texas
Comm. Expires 12-10-2021
Notary ID 3236279

_____
Notary Public, State of Texas

---

*SIGNATURES CONTINUED ON THE FOLLOWING PAGE*

SUBORDINATION, NONDISTURBANCE AND ATTORNMENT AGREEMENT – SIGNATURE PAGE
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

**LANDLORD:**

4512 STEFFANI PROPERTY, LLC

By: _____

Name:   Jason M. White

Title:    President

---

STATE OF TEXAS _Harris_                          §

COUNTY OF _____                 §

    This instrument was acknowledged before me on _July 13_, 2018, by JASON M. WHITE, PRESIDENT of 4512 STEFFANI PROPERTY, LLC, a Texas limited liability company, on behalf of said entity.

> LAURIE GRAEF
> [SEAL] Notary Public, State of Texas
> Comm. Expires 12-10-2021
> Notary ID 3236279

_____
Notary Public, State of Texas

---

SUBORDINATION, NONDISTURBANCE AND ATTORNMENT AGREEMENT – SIGNATURE PAGE
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC

**EXHIBIT A**

**DESCRIPTION OF REAL PROPERTY**

Restricted Reserve "A", Block One (1), of Watson Warehouse, a subdivision in Harris County, Texas, according to map or plat thereof filed for record under Film Code No. 654270 of the Map Records of Harris County, Texas.

SUBORDINATION, NONDISTURBANCE AND ATTORNMENT AGREEMENT – EXHIBIT A
TEXAS CAPITAL BANK – 4512 STEFFANI PROPERTY, LLC