**THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **WATSON VALVE SERVICES, INC.,** | § | **CASE NO. 20-30968** |
| | § | |
| Debtor. | § | **(Chapter 11)** |

---

| | | |
|---|---|---|
| **MASSIEL NUNEZ, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF GILBERTO MENDOZA CRUZ, DECEASED, AND AS NEXT OF FRIEND TO I.M. AND A.M. (MINORS),** | § § § § § | |
| | § | |
| Plaintiffs, | § | **ADVERSARY NO. _____** |
| | § | |
| vs. | § | |
| | § | |
| **ARC SPECIALTIES, INC., AUTOMATION PLUS, INC., AUTOMATION PROCESS, INC., FIRESTONE CRYOGENICS, INC., FIRESTONE CRYOGENIC EQUIPMENT, INC., TELEDYNE TECHNOLOGIES, INC. F/K/A DETCON INC., TELEDYNE EXPLORATION COMPANY, DETCON, INC. D/B/A/ OLDHAM, TELEDYNE DETCON, INC., 3M COMPANY, TRCC, LLC, DATAONLINE, LLC AND INDUSTRIAL SCIENTIFIC CORPORATION,** | § § § § § § § § § § § § § § | |
| | § | |
| Defendants. | § | |

## NOTICE OF REMOVAL

Watson Valve Services, Inc. (the "Debtor") files this Notice of Removal of the state court

action styled, *Massiel Nunez, Individually, as Personal Representative of the Estate of Gilberto*

*Mendoza Cruz, Deceased, and as Next Friend to I.M. and A.M. (Minors) v. ARC Specialties,*

*Inc., Automation Plus, Inc., Automation Process, Inc., Firestone Cryogenics, Inc., Firestone*

*Cryogenic Equipment, Inc., Teledyne Technologies, Inc., f/k/a Detcon Inc., Teledyne Exploration Company, Detcon, Inc. d/b/a/ Oldham, Teledyne Detcon, Inc., 3M Company, TRCC, LLC, DataOnline, LLC and Industrial Scientific Corporation,* Cause No. 2020-40011, in the 151st Judicial District Court of Harris County, Texas (the "State Court Action").

## I.     Procedural Background and Nature of Suit

1.      On July 7, 2020, Massiel Nunez, Individually, as Personal Representative of the Estate of Gilberto Mendoza Cruz, Deceased, and as Next Friend to I.M. and A.M. (Minors) (collectively "Plaintiffs") filed an Original Petition, Request for Disclosure and Rule 193.7 Notice against ARC Specialties, Inc., Automation Plus, Inc., Automation Process, Inc., Firestone Cryogenics, Inc., Firestone Cryogenic Equipment, Inc., Teledyne Technologies, Inc., f/k/a Detcon Inc., Teledyne Exploration Company, Detcon, Inc. d/b/a/ Oldham, Teledyne Detcon, Inc., 3M company, TRCC, LLC, DataOnline, LLC and Industrial Scientific Corporation.

2.      In their Original Petition, Plaintiffs assert negligence, gross negligence, and product liability claims against the named defendants.

3.      On August 6, 2020 3M Company filed its Original Third Party Petition, naming Watson Grinding and Manufacturing Co. and Watson Valve Services, Inc.

4.      On February 6, 2020, the Debtor filed its voluntary petition under Chapter 11 of title 11 of the United States Code, commencing the bankruptcy case captioned *In re Watson Valve Services, Inc.*, Case No. 20-30968, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Chapter 11 Bankruptcy Case").

## II.   <u>Basis for Removal</u>

5.     This Notice of Removal is filed pursuant to 28 U.S.C. § 1452, Bankruptcy Rule 9027, and Local Bankruptcy Rules 9027-1, 9027-2, 9027-3, and the *General Order of Reference* entered by the District Court of this District on March 10, 2005.

6.     This Notice of Removal has been timely filed pursuant to Bankruptcy Rule 9027(a)(3). *In re R.E. Loans, LLC*, No. 11-35865, 2012 WL 3262767, at *2 (Bankr. S.D. Tex. Aug. 8, 2012) and the Bankruptcy Court's May 8, 2020 Order (I) Modifying the Automatic Stay, (II) Setting the Deadline for Filing Notices of Removal. *See* Doc. No. 174.

7.     Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

8.     Cases subject to jurisdiction are removable under the authority of 28 U.S.C. § 1452(a) ("A party may remove any claim or cause of action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title"). The State Court Action, including all claims and causes of action asserted therein, is a civil action other than a proceeding before the United States Tax Court. The State Court Action is not a civil action by a government unit to enforce such government unit's police or regulatory power.

9.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) (federal district courts have "original jurisdiction of all civil proceedings . . . arising in or related to cases under title 11"). The State Court Action "arises in" or, alternatively, is "related to" a Title 11 case, *i.e.* the Debtor's Chapter 11 Bankruptcy Case. In this circuit, "related to" proceedings include any case whose outcome "could *conceivably* have any effect on the administration of the estate." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (emphasis added); *In re Baudoin*, 981 F.2d 736, 740 (5th Cir. 1993).

10.     The resolution of this State Court Action will have a direct impact on the bankruptcy estate of the Debtor.   The State Court Action is related to the Debtor's Chapter 11 Bankruptcy Case because the outcome of State Court Action could conceivably change the Debtor's rights, liabilities, or options in a way that would have an effect upon the handling and administration of the bankruptcy estate.

11.     Thus, the claims asserted in the State Court Action are claims that arise in or are otherwise related to the Debtor's Chapter 11 Case pursuant to 28 U.S.C. § 1334(b), and removal to this Court is proper pursuant to 28 U.S.C. § 1452(a).

### III.     Core or Non-Core Bankruptcy Jurisdiction

12.     This action involves the administration of the Debtor's estate and is a proceeding affecting the adjustment of the debtor-creditor relationship; it is, therefore, a core proceeding under 28 U.S.C. § 157(b)(2)(A). The claims and causes of action in the State Court Action have a clear and direct impact on the interests and property of the Debtor's estate under 11 U.S.C. § 541.

13.     Upon removal of the State Court Action, the Debtor consents to the entry of final orders or judgment by this Court.

### IV.     Parties and Notice

14.     Pursuant to 28 U.S.C. § 1452(a), Federal Bankruptcy Rule 9027(b), and Local Rule 9027-1, all adverse parties are being provided with a copy of this Notice of Removal and a copy of this Notice of Removal is being filed with the clerk of the 151st Judicial District Court of Harris County, Texas.

15.     In accordance with Local Rule 9027-1(a), the names and addresses of the parties and counsel in the State Court Action, who have or will be served with the notice, are as follows:

Chance A. McMillan
Wayne D. Collins
Mathew Mendoza
**MCMILLAN FIRM, P.L.L.C.**
440 Louisiana Street, Suite 1200
Houston, Texas 77002
Telephone:  281-888-2131
Facsimile:  832-831-2175
cam@mcmillanfirm.com
wdc@mcmillanfirm.com
mem@mcmillanfirm.com
filing@mcmillanfirm.com

AND

Hilda Sibrian
**THE LAW OFFICES OF HILDA SIBRIAN, P.C.**
846 North Loop
Houston, Texas 77009
Telephone: 713-863-1515
Facsimile: 713-863-7444
hilda@sibrianlaw.com

**ATTORNEYS FOR PLAINTIFFS**

Damon J. Brinson
**BOWMAN AND BROOKE, LLP**
2901 Via Fortuna Drive, Suite 500
Austin, Texas 78746
Telephone: (512) 874-3800
Facsimile: (512) 874-3801
Damon.Brinson@bowmanandbrooke.com

Katherine M. Handy
**BOWMAN AND BROOKE, LLP**
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
Telephone: (972) 616-1700
Facsimile: (972) 616-1701
Katherine.Handy@bowmanandbrooke.com

**ATTORNEYS FOR DEFENDANT 3M COMPANY**

Matthew S. Okin
James W. Bartlett, Jr.
Edward A. Clarkson, III
**OKIN ADAMS LLP**
1113 Vine St. Suite 240
Houston, Texas 77002
Direct: (713) 255-8851
Main: (713) 228-4100
Facsimile: (888) 865-2118
mokin@okinadams.com
jbartlett@okinadams.com
eclarkson@okinadams.com

**COUNSEL FOR ROBERT E. OGLE, CHAPTER 11 TRUSTEE OF THE ESTATE OF WATSON VALVE SERVICES, INC.**

Ernest P. Gieger, Jr.
Brendan P. Doherty
**GIEGER, LABORDE & LAPEROUSE L.L.C.**
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
egieger@glllaw.com
bdoherty@glllaw.com

**ATTORNEYS FOR WATSON VALVE SERVICES, INC.**

John V. McCoy
Michael I. Ramirez
**MCCOY LEAVITT LASKEY, LLC**
N19 W24200 Riverwood Drive, Suite 125
Waukesha, Wisconsin 53188
(262) 522-7000
(262) 552-7020
jmccoy@mlllaw.com
mramirez@mlllaw.com

**COUNSEL FOR WATSON GRINDING & MANUFACTURING CO.**

Erin E. Jones
Ruth Van Meter
Jacqueline Q. Pham
**JONES MURRAY & BEATTY, LLP**
4119 Montrose Blvd, Suite 230
Houston, Texas 77006
Telephone: 832-529-1999
Facsimile: 832-529-5513
erin@jmbllp.com
ruth@jmbllp.com
jackie@jmbllp.com

**SPECIAL COUNSEL FOR JANET S. NORTHRUP, CHAPTER 11 TRUSTEE OF THE ESTATE OF WATSON GRINDING & MANUFACTURING CO.**

Wayne Kitchens
Heather McIntyre
**HUGHESWATTERSASKANASE, LLP**
Total Plaza
1201 Louisiana, 28th Floor
Houston, Texas 77002
Telephone: (713) 759-0818
Facsimile: (713) 759-6834
wkitchens@hwa.com
hmcintyre@hwa.com

**COUNSEL FOR JANET S. NORTHRUP, CHAPTER 11 TRUSTEE OF THE ESTATE OF WATSON GRINDING AND MANUFACTURING CO.**

## V.      Process and Pleadings

16.     Pursuant to Bankruptcy Rule 9027(a)(1) and Local Bankruptcy Rule 9027-1(b), true and correct copies of all process and pleadings filed in the State Court Action (as set forth in the attached Exhibit "A") have been provided.

17.     In the State Court Action, citations were issued as to all Defendants. Citations do not appear to have been served on parties as yet.

18.     In accordance with Bankruptcy Rule 9027(c), the Debtor will promptly file a notice of the filing of this Notice of Removal in the State Court Action.

WHEREFORE, the Debtor notifies the United States Bankruptcy Court for the Southern District of Texas, Houston Division, that the State Court Action is hereby removed in its entirety to this Court pursuant to 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027.


[Signature block on next page]

Dated: August 7, 2020

Respectfully submitted,

**OKIN ADAMS LLP**

By: */s/ James W. Bartlett*
Matthew S. Okin
Texas State Bar No. 00784695
James W. Bartlett, Jr.
Texas State Bar No. 00795238
Edward A. Clarkson, III
Texas Bar No. 24059118
1113 Vine St. Suite 240
Houston, Texas 77002
Direct: (713) 255-8851
Main: (713) 228-4100
Fax: (888) 865-2118
mokin@okinadams.com
jbartlett@okinadams.com
eclarkson@okinadams.com

**COUNSEL FOR ROBERT E. OGLE, CHAPTER 11 TRUSTEE OF THE ESTATE OF WATSON VALVE SERVICES, INC.**

– AND –

By:  */s/ Brendan P. Doherty*
Ernest P. Gieger
Texas Bar No. 24054169
Email: egieger@glllaw.com
Brendan P. Doherty
Texas Bar No. 24075923
Email: bdoherty@glllaw.com
GIEGER, LABORDE & LAPEROUSE, LLC
5151 San Felipe, Suite 750
Houston, Texas 77056
Telephone: (832) 255-6000
Facsimile: (832) 255-6001

**ATTORNEYS FOR WATSON VALVE SERVICES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 7, 2020, a true and correct copy of the foregoing Notice of Removal was served via ECF/PACER to all parties registered to receive such service and/or via First Class mail to all known counsel of record.

   */s/ Brendan P. Doherty*
Brendan P. Doherty

7/7/2020 9:05 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 44293871
By: Patricia Jones
Filed: 7/6/2020 10:41 PM

CAUSE NO. _____

| | | |
|---|---|---|
| MASSIEL NUNEZ, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF GILBERTO MENDOZA CRUZ, DECEASED, AND AS NEXT OF FRIEND TO I.M. AND A.M. (MINORS) | § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § § | |
| vs. | § § | HARRIS COUNTY, TEXAS |
| ARC SPECIALTIES, INC., AUTOMATION PLUS, INC., AUTOMATION PROCESS, INC., FIRESTONE CRYOGENICS, INC., FIRESTONE CRYOGENIC EQUIPMENT, INC., TELEDYNE TECHNOLOGIES, INC. F/K/A DETCON INC., TELEDYNE EXPLORATION COMPANY, DETCON, INC. D/B/A OLDHAM, TELEDYNE DETCON, INC., 3M COMPANY, TRCC, LLC, DATAONLINE, LLC AND INDUSTRIAL SCIENTIFIC CORPORATION | § § § § § § § § § § § § § § § § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION, REQUEST FOR DISCLOSURE, AND RULE 193.7 NOTICE

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Massiel Nunez, Individually, as Personal Representative of the Estate of Gilberto Mendoza Cruz, Deceased, and As Next of Friend to I.M. and A.M. (minors)(collectively "Plaintiffs"), and file this Original Petition against, ARC Specialties, Inc., Automation Plus, Inc., Automation Process, Inc., Firestone Cryogenic, Inc., Firestone Cryogenic Equipment, Inc., Teledyne Technologies, Inc. f/k/a Detcon Inc., Teledyne Exploration Company, Detcon, Inc. d/b/a Oldham, Teledyne Detcon, Inc., 3M Company,

TRCC, LLC, DataOnline, LLC and Industrial Scientific Corporation (collectively "Defendants"), and would respectfully show this Court the following:

## I.
## DISCOVERY LEVEL

1.     Plaintiffs intend to conduct discovery under Level II of the Texas Rules of Civil Procedure 190.4.

## II.
## REQUEST FOR DISCLOSURE

2.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request Defendants to disclose, within 50 days of the service of this request, the information and materials described in Rule 194.2 of the Texas Rules of Civil Procedure. Plaintiffs specifically request the responding party to produce responsive documents at the undersigned law office within 50 days of the service of this request.

## III.
## PARTIES

3.     Plaintiff, Massiel Nunez, individually, as personal representative of the Estate of Gilberto Mendoza Cruz, deceased, and as next of friend to Ivan Mendoza an Alejandra Mendoza, minors, is a resident of Harris County, Texas. Massiel Nunez and Gilberto Mendoza Cruz are the natural mother and father of I.M. and A.M., respectively.

4.     Defendant ARC Specialties, Inc. ("ARC") is domestic for-profit corporation doing business in the State of Texas with its principal place of business located in Harris County, Texas. This defendant may be served through its registered agent - L. Don Knight – at 8100 Washington, Suite 1000, Houston, Texas 77007, and/or wherever he may be found.

5.     Defendant Automation Plus, Inc. ("Automation Plus") (collectively referred to as the "Automation Defendants" with Automation Process, Inc.) is a domestic for-profit

corporation doing business in the State of Texas with its principal place of business located in Harris County, Texas. This defendant may be served through its registered agent – Frank Lomelo - at 8930 Lawndale St., Suite E, Houston, Texas 77012, and/or wherever he may be found.

6.      Defendant Automation Process, Inc. ("Automation Process") (collectively referred to as the "Automation Defendants" with Automation Plus, Inc.) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business located in Harris County, Texas. This defendant may be served through its registered agent – Business Filings, Inc. – which is located at 701 Brazos St., Ste. 720, Austin, Texas 78701.

7.      Defendant Firestone Cryogenics, Inc. ("Firestone") (collectively referred to as the "Firestone Defendants" with Firestone Cryogenic Equipment, Inc.) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in Conroe, Texas. This defendant may be served through its registered agent – Linda Plummer - at 12446 Cutten Road, Houston, Texas 77066, and/or wherever she may be found.

8.      Defendant Firestone Cryogenic Equipment, Inc. ("Firestone Equipment") (collectively referred to as the "Firestone Defendants" with Firestone Cryogenics, Inc.) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in Conroe, Texas. This defendant may be served through its registered agent – Linda Plummer - at 12446 Cutten Road, Houston, Texas 77066, and/or wherever she may be found.

Unofficial Copy Office of Marilyn Burgess District Clerk

9.      Defendant Teledyne Technologies, Inc. f/k/a Detcon, Inc. ("Teledyne Technologies") (referred to as the "Teledyne Defendants" with Teledyne Exploration Company and Teledyne Detcon, Inc.) is a foreign for-profit corporation doing business in the State of Texas with its principal place of business in Thousand Oaks, California. This defendant may be served through its registered agent – Cogency Global, Inc. - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

10.     Defendant Teledyne Exploration Company ("Teledyne") (referred to as the "Teledyne Defendants" with Teledyne Technologies, Inc. f/k/a Detcon, Inc. and Teledyne Detcon, Inc.) is a foreign for-profit corporation doing business in the State of Texas with its principal place of business in Pittsburgh, Pennsylvania. This defendant may be served through its registered agent – CT Corp. System – which is located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

11.     Defendant Teledyne Detcon, Inc. ("Teledyne Detcon") (referred to as the "Teledyne Defendants" with Teledyne Technologies, Inc. f/k/a Detcon, Inc. and Teledyne Exploration Company) is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in Harris County, Texas. This defendant may be served through its registered agent – Cogency Global, Inc.  - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

12.     Defendant Detcon, Inc. d/b/a Oldham ("Detcon") is a domestic for-profit corporation doing business in the State of Texas with its principal place of business in Harris County, Texas. This defendant may be served through its registered agent – Cogency Global, Inc. - which is located at 1601 Elm St., Suite 4360, Dallas, Texas 75201.

13.     Defendant TRCC, LLC ("TRCC") is a domestic limited liability corporation doing business in the State of Texas with its principal place of business in Harris County, Texas. This defendant may be served through its registered agent – Nader Salim - at 3303 Falling Brook Court, Sugar Land, Texas 77479, and/or wherever he may be found.

14.     Defendant DataOnline, LLC ("DataOnline") is a foreign limited liability company doing business in the State of Texas with its principal place of business in New Jersey. This defendant may be served through its registered agent – Lloyd M. Eddings - at 3142 Waldrop Dr., Dallas, Texas 75229, and/or wherever he may be found.

15.     Defendant 3M Company ("3M") is a foreign for-profit corporation doing business in the State of Texas with its principal place of business in Minnesota. This Defendant may be served through its registered agent - Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company - which is located at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

16.     Defendant Industrial Scientific Corporation ("Industrial") is a foreign-for-profit corporation doing business in the State of Texas with its principal place of business in Pennsylvania.  This Defendant may be served through its registered agent – CT Corp. System – which is located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

## IV.
## JURISDICTION & VENUE

17.     This Court has jurisdiction over Defendants because Defendants have in the past and continue to do busines in the State of Texas, have continuing contacts with the State, and are amenable to service in the State. The amount in controversy is in excess of $75,000.00. This Court has jurisdiction over all parties as set out in the following paragraphs.

18.     Venue is proper in Harris County, Texas pursuant to Texas Civil Practice and Remedies Code section 15.002(a)(1) and (a)(3), because it is the county where a substantial part of the events giving rise to this case occurred and because it is the principal place of business and location of the Firestone Defendants and Defendant ARC.

## V.
## THE INCIDENT

19.     Watson Grinding and Manufacturing Co. and Watson Valve Services, Inc. ("Watson") are local companies with their facilities located at 4525 Gessner Road, Houston, Harris County, Texas 77041 ("Watson Facility"). Watson manufactures and services valves and pump components for the chemical, offshore, and aerospace industries.

20.     The Watson Facility was comprised of several structures and was constructed between Gessner Road and Seffani Lane. Pertinent to the issues in this case, located on the property was a 2000 gallon storage tank that housed propylene. The propylene tank supplied propylene to the "Coating Building" at Watson Facility through a piping system. Propylene is an extremely flammable gas that becomes explosive when mixed with air.

21.     The Coating Building, the seat of this explosion, should have been equipped with several iTrans sensors to monitor and detect flammable gas leaks. Unfortunately, the sensors in the Coating Building were installed at least four feet above the floor of the spray rooms at a height that is usually designed to detect a flammable gas that is lighter than air, such as hydrogen. Propylene is heavier than air. Upon detection of a leak in a spray room, a properly designed and maintained system is supposed to do, at a minimum, two things: (1) sound an audible alarm that would alert not only individuals present at Watson Facility, but also in the surrounding community; and (2) automatically cut off the

6

supply of propylene to the piping system by way of the shut off valve at a location upstream of a spray room.  Neither of these things happen and tragedy followed.

22.     In the early morning hours of January 24, 2020, without warning, a massive explosion rocked the city of Houston. The explosion was so violent that the Houston Chief of Police, Art Acevedo, labeled the site and surrounding areas a "disaster area."   The explosion damaged hundreds of nearby commercial buildings and residential homes and resulted in Plaintiffs' personal injuries and property damages. On February 5, 2020, Gilberto Mendoza Cruz died of injuries sustained in the explosion.

### VI.
### FAILED AND/OR ABSENT SAFEGUARDS

23.     Propylene was quickly identified as the chemical involved in the explosion because telemetry readings from the propylene tank at issue indicated a significant loss of propylene, suggestive of a leak, from January 23, 2020 to January 24, 2020. During the 24-hour cycle beginning on January 23, 2020 at 00:53:54, the tank experienced a precipitous drop in levels from 67% to 38% at the time of the next reading on 00:53:54 on January 24, 2020. The next warning code showed a tank level reading of 20% at 4:26:39 on January 24, 2020. Despite the dangerous condition created by the leaking propylene, no evidence exists that any alarms sounded before the explosion to warn anyone of the leak.

24.     Safeguards should have prevented and/or warned about the uncontrolled and unregulated leak of propylene at the Watson Facility. Each of the Defendants listed in this lawsuit were involved in the failure of these safeguards, which caused and/or contributed to the explosion and its widespread destruction. These include, but are not limited to, the design and installation of the propylene system, the inspection, maintenance, service and

repair of the system and its sensors and the failure of the monitors and alarms to warn of the leak once it existed.

25.     The Automation Defendants designed and installed the propylene system and its sensors.  They also serviced and maintained the system over the years after it was initially installed.

26.     The Firestone Defendants installed and tested the piping for the propylene system at the Watson Facility.

27.     The Teledyne Defendants, Defendant Detcon, and Defendant 3M performed inspection, maintenance, testing and repair work on the propylene system and sensors in the spray rooms that are were supposed to sound an alarm in the event oxygen levels are too low or combustible levels of gas are too high.  Evidence suggests that these Defendants worked on the system within six (6) months of the explosion and knew there were no sensors in certain spray rooms relevant to this lawsuit. The gas monitors in question that failed to identify the propylene leak and to issue an alarm were designed and manufactured by Defendant 3M and Defendant Industrial. Additionally, Defendant 3M and Defendant Industrial targeted Texas for the sale of these gas monitors by advertising, marketing, selling, and shipping the gas monitors to Texas and Watson.

28.     Defendant ARC serviced and maintained the control panels in the spray rooms, which were part of the warning system that failed to function properly on the date of the incident.  Defendant TRCC and its principal, Nader Salim, were the Watson safety, environmental and quality consultant at the time of the incident.  Wesroc, which is a division of Defendant DataOnline, manufactured and sold the telemetry equipment for the propylene tank and was hired to monitor the propylene levels in the tank.

# VII.
## CAUSES OF ACTION AGAINST THE
## AUTOMATION DEFENDANTS

### A. NEGLIGENCE

29. Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Automation Defendants committed acts and omissions, which collectively and separately constituted negligence. The Automation Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The Automation Defendants breached that duty in one or more of the following ways:

    a. Failing to properly design and install the propylene system, including its monitors and sensors;

    b. Failing to properly service, inspect, maintain, and repair the propylene system, sensors and its piping to prevent, identify, and warn about leaks;

    c. Failing to recognize and remediate hazards with an extreme degree of risk; and

    d. Other acts or omissions deemed negligent.

### B. GROSS NEGLIGENCE

30. Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of the Automation Defendants constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. The Automation Defendants' acts and/or omissions, when viewed objectively from the Automation Defendants' standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Automation Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of

Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## VIII.
## CAUSES OF ACTION AGAINST THE FIRESTONE DEFENDANTS

### A. NEGLIGENCE

31.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Firestone Defendants committed acts and omissions, which collectively and separately constituted negligence. The Firestone Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. The Firestone Defendants breached that duty in one or more of the following ways:

      a. Failing to properly install the piping for the propylene system, including its insulation;

      b. Failing to properly service, inspect, maintain, and repair the piping for the propylene system to prevent leaks;

      c. Failing to recognize and remediate hazards with an extreme degree of risk; and

      d. Other acts or omissions deemed negligent.

### B. GROSS NEGLIGENCE

32.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of the Firestone Defendants constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. The Firestone Defendant's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk,

considering the probability and magnitude of the potential harm to others. The Firestone Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## IX.
## CAUSES OF ACTION AGAINST THE
## THE TELEDYNE DEFENDANTS, DEFENDANT DETCON AND 3M

### A. NEGLIGENCE

33.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, the Teledyne Defendants, Defendant Detcon, and Defendant 3M committed acts and omissions, which collectively and separately constituted negligence. These Defendants had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. These Defendants breached that duty in one or more of the following ways:

    a.  Failing to properly service, inspect, maintain, test and repair the propylene system and its piping, sensors and alarms to prevent leaks, identify leaks and in the event of a leak to issue warnings and shut down the system;

    b.  Failing to recognize and remediate hazards with an extreme degree of risk; and

    c.  Other acts or omissions deemed negligent.

### B. PRODUCTS LIABILITY—DESIGN DEFECT

34.     Incorporating by reference the above paragraphs, gas monitors that were installed to detect propylene levels at the premises were originally designed, manufactured, sold, installed and maintained by the Teledyne Defendants, Defendant Detcon, and Defendant 3M. At the time the monitors were sold, these Defendants were in the business of

designing, manufacturing, selling, and/or otherwise placing monitors, such as the monitors in question, in the stream of commerce.

35.    At the time the subject monitors were designed, manufactured and sold by Defendants, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the monitors were a direct and proximate cause of the damages to Plaintiffs.

36.    The defects regarding the monitors include but are not limited to the ability to turn off the alarm, which is supposed to sound and shut down the flow of propylene in the event of a leak. Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the monitors utility.   Specifically, Defendants could have designed the monitors so that the alarm could not be turned off and disabled.

37.    Such alternative designs for the above identified defects were available in the market and were technologically and economically feasible at the time the monitors were designed and manufactured and would not have impaired the utility of the subject gas monitors.

38.    At the time of the incident made the basis of this lawsuit, the subject monitors were in the same or substantially similar condition as they were at the time when they left Defendants control and were placed into the stream of commerce.

39.    No mandatory safety standard or regulation adopted and promulgated by the federal government or an agency of the federal government was applicable to the subject monitors at the time they were manufactured that governed any product risk that caused

the accident and/or injuries to Plaintiffs. To the extent Defendants attempt, pursuant to § 82.008 of the Texas Civil Practice & Remedies Code, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk of accident and/or injuries that occurred in this accident and/or Defendants withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

40.     As a direct and proximate result of the failure of Defendants to properly design, test and sell deliver the subject monitors, Plaintiffs suffered severe personal injuries and damages.

## C. Gross Negligence

41.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of the Teledyne Defendants, Defendant Detcon, and Defendant 3M constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. The Teledyne Defendants, Defendants ARC, Defendant Detcon, and Defendant 3M's acts and/or omissions, when viewed objectively from their standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## X.
## CAUSES OF ACTION AGAINST
## DEFENDANT INDUSTRIAL

### A. Products Liability—Design Defect

42.     Incorporating by reference the above paragraphs, gas monitors that were installed to detect propylene levels at the premises were originally designed, manufactured, and sold by Defendant Industrial. At the time the monitors were sold, Defendant Industrial was in the business of designing, manufacturing, selling, and/or otherwise placing monitors, such as the monitors in question, in the stream of commerce.

43.     At the time the subject monitors were designed, manufactured, and sold by Defendant Industrial, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the monitors were a direct and proximate cause of the damages to Plaintiffs.

44.     The defects regarding the monitors include but are not limited to the ability to turn off the alarm, which is supposed to sound and shut down the flow of propylene in the event of a leak.  Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the monitors utility.  Specifically, Defendant Industrial could have designed the monitors so that the alarm could not be turned off and disabled.

45.     Such alternative designs for the above identified defects were available in the market and were technologically and economically feasible at the time the monitors were designed and manufactured and would not have impaired the utility of the subject gas monitors.

46.     At the time of the incident made the basis of this lawsuit, the subject monitors were in the same or substantially similar condition as they were at the time when they left Defendant Industrial's control and were placed into the stream of commerce.

47.    No mandatory safety standard or regulation adopted and promulgated by the federal government or an agency of the federal government was applicable to the subject monitors at the time they were manufactured that governed any product risk that caused the accident and/or injuries to Plaintiffs. To the extent Defendant Industrial attempts, pursuant to § 82.008 of the Texas Civil Practice & Remedies Code, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk of accident and/or injuries that occurred in this accident and/or Defendant Industrial withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

48.    As a direct and proximate result of the failure of Defendants to properly design, test and sell deliver the subject monitors, Plaintiffs suffered severe personal injuries and damages.

### B. GROSS NEGLIGENCE

49.    Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Defendant Industrial constitute gross negligence and is the proximate cause of Plaintiffs' injuries and damages. Defendant Industrial's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant Industrial had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

**XI.**
**CAUSES OF ACTION AGAINST**
**DEFENDANT ARC**

**A. NEGLIGENCE**

50.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant ARC committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

    a. Failing to properly service, inspect, maintain, test and repair the propylene system and its piping, sensors and alarms to prevent leaks, identify leaks and in the event of a leak to issue warnings and shut down the system;

    b. Failing to recognize and remediate hazards with an extreme degree of risk; and

    c. Other acts or omissions deemed negligent.

**B. GROSS NEGLIGENCE**

51.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Defendant ARC constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. Defendant ARC's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant ARC had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a

proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## XII.
## CAUSES OF ACTION AGAINST
## DEFENDANT TRCC

### A. NEGLIGENCE

52.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant TRCC committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

> a. Failing to properly service, inspect, maintain, test and repair the propylene system and its piping, sensors and alarms to prevent leaks, identify leaks and in the event of a leak to issue warnings and shut down the system;
>
> b. Failing to recognize and remediate hazards with an extreme degree of risk; and
>
> c. Other acts or omissions deemed negligent.

### B. GROSS NEGLIGENCE

53.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Defendant TRCC constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. Defendant TRCC's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant TRCC had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety and

welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

### XIII.
### CAUSES OF ACTION AGAINST DEFENDANT DATAONLINE

**A. NEGLIGENCE**

54.     Incorporating by reference the above paragraphs, at the time and on the occasion in question, Defendant DataOnline committed acts and omissions, which collectively and separately constituted negligence. This Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any entity of ordinary prudence under the same or similar circumstances. This Defendant breached that duty in one or more of the following ways:

     a. Failing to properly monitor telemetry readings from the subject tank;

     b. Failure to properly identify, notify and warn others regarding the propylene leak; and

     c. Other acts or omissions deemed negligent.

**B. GROSS NEGLIGENCE**

55.     Incorporating by reference the above paragraphs, Plaintiffs allege that all acts, conduct, and/or omissions on the part of Defendant DataOnline constitute gross negligence and are the proximate cause of Plaintiffs' injuries and damages. Defendant DataOnline's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendant DataOnline had actual, subjective awareness of the risk, but proceeded with conscious

indifference to the rights, safety and welfare of Plaintiffs with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiffs' injuries and damages. Therefore, Plaintiffs are entitled to punitive and/or exemplary damages.

## XIV.
## RESPONDEAT SUPERIOR

56.     Defendants are liable for the torts committed by its employees during the course and scope of their employment. At all times relevant, Defendants' employees were acting with Defendants' permission and were in the course and scope of their employment for Defendants.  Defendants' employees while acting within the course and scope of their employment, in furtherance of Defendants' businesses, and had a general duty to exercise reasonable care in performing their work. Defendants' employee, however, failed to exercise the requisite standard of care, were negligent, and were grossly negligent under the circumstances. As a result, Defendants are liable for injuries sustained by Plaintiffs.

## XV.
## WRONGFUL DEATH DAMAGES

57.     Because of the wrongful conduct of Defendants, and their agents and employees described above, caused the death of the Gilberto Mendoza Cruz, and because Mr. Cruz would have a cause of action against Defendants for his injuries had he lived, Plaintiffs, Massiel Nunez, I.M. (minor), and A.M. (minor) have a cause of action against to recover damages for the wrongful death of Gilberto Mendoza Cruz pursuant to TEX. CIV. PRAC. & REM. CODE §§ 71.002 and 71.003. These damages include: past and future pecuniary loss; past and future loss of companionship and society; past and future mental anguish; loss of inheritance; court costs; exemplary damages; prejudgment and post judgment

interest; and any and all other damages, both in general and special, at law and in equity, to which Plaintiffs may be justly entitled.

## XVI.
## SURVIVAL DAMAGES

58.     As a result of the wrongful conduct of Defendants as described above, Gilberto Mendoza Cruz suffered physical pain and mental anguish prior to his death. Additionally, his Estate incurred medical and funeral expenses, for which Defendants should be held liable. The Personal Representative of Mr. Cruz's Estate, Massiel Nunez, asserts the above-pled causes of actions against Defendants on behalf of Mr. Cruz's Estate pursuant to TEX. CIV. PRAC. & REM. CODE § 71.021. Thus, this survival action is brought for the following damages sustained by Gilberto Mendoza Cruz, which survives his untimely death: past physical pain and anguish; funeral expenses; medical expenses; court costs; exemplary damages; prejudgment and post judgment interest; and any and all other damages, both in general and special, at law and in equity, to which Plaintiffs may be justly entitled

## XVII.
## EXEMPLARY DAMAGES

59.     Plaintiffs incorporate all prior paragraphs in this pleading. Defendants had a duty and responsibility to act (or not act) in ways that involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others and of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or wellbeing of others. Tex. Civ. Prac. Rem. Code §41.001(11). Thus, Plaintiffs seek exemplary damages.

## XVIII.
## MASSIEL NUNEZ'S INDIVIDUAL DAMAGES AND
## DAMAGES OF I.M. AND A.M. (MINORS)

60.    As a result of Defendants' actions and/or inactions, Plaintiff Massiel Nunez, individually, and as next of friend of I.M. and A.M. (minors) bring this lawsuit for the following damages:

  a.  Past and future physical pain and suffering;

  b.  Past and future mental anguish;

  c.  Past and future medical expenses;

  d.  Past and future lost wages and loss of earning capacity;

  e.  Property damage;

  f.  Court costs;

  g.  Exemplary damages; and

  h.  Any and all other damages, both general and special, at law and in equity, to which Plaintiffs may be justly entitled.

61.    Plaintiffs also seek both prejudgment and post judgment interest as allowed by law, for all costs of court, actual damages, and all other relief, both at law and in equity, to which Plaintiffs may be entitled.

## XIX.
## PRESERVATION OF EVIDENCE

62.    Plaintiffs hereby requests and demands that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident that made the basis of this lawsuit, including but not limited to any type of recordings; photographs; videotapes; audiotapes; business and medical records; estimates; invoices; checks; measurements; correspondence; memoranda; files; facsimiles; email; voice mail; text messages; cellular

telephone records; calendar entries; and any electronic images, data, or information related to Defendants, the referenced incident, or any damages resulting therefrom. Failure to maintain such items will constitute spoliation of the evidence.

## XX.
## RULE 193.7 NOTICE

63.     Pursuant to 193.7 of the Texas Rules of Civil Procedure, Plaintiffs hereby give actual notice to Defendants that any and all documents produced may be used against the Defendants producing the documents at any pretrial proceedings and/or trial of this matter without the necessity of authenticating documents.

## XXI.
## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that upon final trial by a jury, which was previously demanded, Plaintiffs are entitled to have judgment against Defendants, jointly and severally, and requests the Court award money damages as listed above, in such amounts that the jury may deem appropriate and are allowable by law, along with any and all other relief the Court may deem appropriate.

Respectfully submitted,

**MᴄMɪʟʟᴀɴ Fɪʀᴍ, P.L.L.C.**

By: _____
Chance A. McMillan
Bar No. 24078981
cam@mcmillanfirm.com
Wayne D. Collins
Bar No.: 00796384
wdc@mcmillanfirm.com
Mathew Mendoza
Bar No.: 24109548
mem@mcmillanfirm.com
440 Louisiana Street, Suite 1200
Houston, Texas 77002-1691
Tel: (281) 888-2131
Fax: (832) 831-2175
Email: filing@mcmillanfirm.com

AND

**/s/ Hilda Sibrian**

_____
Hilda Sibrian, Attorney
Bar No.: 24043920
The Law Offices of Hilda Sibrian, P.C.
846 North Loop
Houston, Texas 77009
Tel: 713-863-1515
Fax: 713-863-7444
Mobile: 713-705-3530
Email: hilda@sibrianlaw.com

*ATTORNEYS FOR PLAINTIFFS*